Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
AARON SENNE, individually and  )
on behalf of all those similary)
situated; et al.,              )
                               )
          Plaintiffs,          )
                               )
  VS.                          )      NO. C 14-00608 RS
                               )
OFFICE OF THE COMMISSIONER OF  )
BASEBALL, an unincorporated    )
association doing business as  )
Major League Baseball; et al., )
                               )
                               )
          Defendants.          )
_____)
```

San Francisco, California
Thursday, October 9, 2014

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For Plaintiffs:

PEARSON, SIMON & WARSHAW LLP
44 Montgomery Street - Suite 2450
San Francisco, CA 94104
BY:  **BRUCE L. SIMON, ATTORNEY AT LAW**

PEARSON, SIMON & WARSHAW LLP
15165 Ventura Boulevard - Suite 400
Sherman Oaks, California  91403
BY:  **BOBBY POUYA, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:     Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                 Official Reporter

1   **APPEARANCES**:   (CONTINUED)

2   For Plaintiffs:

3                        KOREIN TILLERY LLC
                         505 N. 7th Street - Suite 3600
                         St. Louis, Missouri  63101
4               BY:  **GARRETT BROSHUIS, ATTORNEY AT LAW**
                     **GIUSEPPE S. GARDINA, ATTORNEY AT LAW**
5

6   For Marti Plaintiffs:
                         LAW OFFICES OF SAMUEL KORNHAUSER
                         155 Jackson Street - Suite 1807
7                        San Francisco, California  94111
                BY:  **SAMUEL KORNHAUSER, ATTORNEY AT LAW**
8

9   For All Defendants except Baltimore:
                         PROSKAUER ROSE LLP
                         Eleven Times Square
10                       New York, New York  10036
                BY:  **ELISE M. BLOOM, ATTORNEY AT LAW**
11                   **ADAM M. LUPION, ATTORNEY AT LAW**

12                       SHAW VALENZA LLP
                         300 Montgomery Street - Suite 788
13                       San Francisco, California  94105
                BY:  **D. GREGORY VALENZA, ATTORNEY AT LAW**
14
    For Defendants Baltimore Orioles, Inc., and Baltimore Orioles,
15  L.P.:
                         RIFKIN, WEINER, LIVINGSTON, LEVITAN
16                         SILVER LLC
                         7979 Old Georgetown Rd. - Suite 400
17                       Bethesda, Maryland  20814
                BY:  **M. CELESTE BRUCE, ATTORNEY AT LAW**
18

19

20

21

22

23

24

25

1   **Thursday - October 9, 2014**                    **11:34 a.m.**

2                   **P R O C E E D I N G S**

3                       **---000---**

4        **THE CLERK:**  Calling Case C 14-608, Senne versus Office

5   of the Commissioner of Baseball.

6      Counsel, please come forward and state your appearances.

7        **MR. SIMON:**  Good morning, Your Honor.  Bruce Simon,

8   Pearson, Simon & Warshaw, on behalf of plaintiff Senne and the

9   other 31 Minor League ballplayers that are plaintiffs in the

10  Senne case.

11       **THE COURT:**  Good morning.

12       **MR. BROSHUIS:**  Good morning, Your Honor.  Garrett

13  Broshuis also on behalf of the Senne plaintiffs, all 32 of

14  them.

15       **THE COURT:**  Good morning.

16       **MR. GIARDINA:**  Good morning, Your Honor.  Giuseppe

17  Giardina from Korein & Tillery on behalf of the Senne

18  plaintiffs.

19       **THE COURT:**  Good morning.

20       **MR. POUYA:**  Good morning, Your Honor.  Bobby Pouya,

21  Pearson, Simon & Warshaw, on behalf of the Senne plaintiffs.

22       **THE COURT:**  Good morning.

23       **MR. KORNHAUSER:**  Good morning, Your Honor.  Samuel

24  Kornhauser on behalf of the Marti plaintiffs.

25       **THE COURT:**  Good morning.

1          **MS. BLOOM:**  Good morning, Your Honor.  Elise Bloom,

2   Proskauer Rose, on behalf of the defendants except for

3   Baltimore.

4          **THE COURT:**  Good morning.

5          **MR. LUPION:**  Good morning, Your Honor.  Adam Lupion

6   also from Proskauer Rose on behalf of those same defendants.

7          **THE COURT:**  Good morning.

8          **MS. BRUCE:**  Good morning, Judge.  I am on behalf of

9   Baltimore, Celeste Bruce, and both the Baltimore Orioles in the

10  partnership and Baltimore Orioles, Inc.

11         **THE COURT:**  Good morning.

12         **MR. VALENZA:**  Good morning, Your Honor.  Greg Valenza,

13  Shaw Valenza, for the defendants except for Baltimore.

14         **THE COURT:**  Good morning.

15         **MR. VALENZA:**  Thank you.

16         **THE COURT:**  So we have this morning a motion to

17  consolidate, a request to appoint interim lead counsel.

18  Perhaps we can start with whoever wants to volunteer --

19  Mr. Simon is there so I guess he's the volunteer -- to sort of

20  give me your sense of what needs to be -- what issues need to

21  be decided today and just generally where things stand.

22         **MR. SIMON:**  Sure.  Well, Your Honor, you know that the

23  case was pending for many months in front of Judge Spero before

24  a declination was filed very late in the game by other counsel.

25         **THE COURT:**  By the way, if I can stop you there for a

1   moment, I very much encourage -- I know I certainly can't

2   require consent, but I want to just remind everyone that even

3   if there had been an initial decision by one party or the other

4   not to consent, they should consider that question again.  I

5   mean, there's nobody better than Judge Spero, quite frankly,

6   and it would go back to Judge Spero.  So I would encourage

7   people to consider that; but, again, I can't require it.

8       So go ahead.

9       **MR. SIMON:**  I understand that, Your Honor.  And we had

10  basically organized the case, all of our clients, 32

11  Minor League Baseball players, all of the teams, the Major

12  League Baseball, the Commissioner, all parties had consented to

13  Judge Spero, and we had started to litigate heavily.

14     We had the jurisdictional venue motions teed up.  They

15  were ready to go into discovery.  We had a discovery hearing in

16  front of him.  You've seen the case management order.  It was

17  extensive.  It went all the way through trial.

18     And all of this was done by the two firms that are

19  presented to you, our firm and Korein & Tillery.  We're with

20  you now, and we need to get going on the back end, which is to

21  get the jurisdictional motion and the venue motion decided.

22     There's some discovery disputes.  We've just been in front

23  of Magistrate Judge Laporte, and we might have some disputes

24  there, but we're hopeful that we can resolve all of them either

25  ourselves or with her.  Once that discovery is done, those

1    motions are ready.

2         There's some issues about, you know, consolidation and how

3    that affects the Answers of the 20 teams that have answered

4    already, and the need to refile those jurisdictional venue

5    motions.  Consolidated Complaint will not affect those motions

6    at all, nor should it affect the Answers.  If anything, it

7    would just be a technical consolidation after we take a look at

8    the state law claims that the Marti plaintiffs have asserted

9    and their plaintiffs to make sure that they can be vetted as we

10   vetted all our plaintiffs.

11        So I think jumping to the end, if we can get a hearing

12   date on the jurisdictional venue motions before the end of the

13   year, if we can get an organized schedule up to that point to

14   get everything done, we can close the curtain on that part of

15   the case and move on to what the next phase would be.

16        **THE COURT:**  All right.  I don't see any reason why we

17   couldn't do that.

18        **MR. SIMON:**  I don't see any reason either.

19        **THE COURT:**  It can be renoticed and, as you know, I

20   think, Mr. Simon, my general approach is 35 days -- as long as

21   it's 35 days in advance and it's a Thursday that I'm otherwise

22   available, you can set the motions.

23        **MR. SIMON:**  Right.

24        **THE COURT:**  So they will, obviously, need to be

25   renoticed, but....

1    This whole question of the Marti case and how there's the

2    motion with respect to consolidating that and participation by

3    counsel in that case is going forward, what is your view on

4    this?

5         **MR. SIMON:**  Well, I will say one thing.  As you know

6    from the papers, we have three firms who have players who

7    either want to be class representatives or opt into the FLSA

8    class, and they came to us and worked with us:  Lieff

9    Cabraser -- these are not minor players -- Lieff Cabraser,

10   Carney Bates Pulliam, and Glancy Binkow.  And, you know, the

11   case was organized around bringing everybody into the fold.

12        The Marti case, you know, gave us no notice -- counsel

13   gave us no notice whatsoever.  He showed up pretty much at

14   Judge Spero's case management conference without even having

15   filed a Complaint and said he wanted to chime in on the lead

16   counsel motion.

17        It's caused delay and, you know, it needs to be decided

18   today because going forward we need to have leaders for the

19   case who have the resources and the ability to do it.

20        What I would say the Consolidated Amended Complaint would

21   do is as follows:  We'd look at the plaintiffs that the Marti

22   plaintiffs present.

23        We would look at the state claims that they present, which

24   initially we looked at and are not any different from the state

25   claims that we have presented.  We have some different states

1   from them.  They have some different states from us.  As

2   Your Honor knows, that happens all the time.  Like in indirect

3   purchaser antitrust cases, you know, there's 20 cases filed

4   with different states and it's all consolidated, and you decide

5   what states you're going to represent are.

6        So I see it as a technical consolidation.  We can do it

7   very quickly, maybe within I would say a week if we can vet the

8   plaintiffs and they cooperate with us; but, you know, the first

9   starting point for that is to get counsel appointed who have

10  responsibility for running the case, who have the resources to

11  run the case, and who has the track record in front of the

12  court.

13       **THE COURT:**  So and my understanding from your papers

14  is that you're opposed to -- you're not proposing to alter the

15  counsel structure --

16       **MR. SIMON:**  We're not.

17       **THE COURT:**  -- going forward.

18       **MR. SIMON:**  We're not.

19       **THE COURT:**  Okay.

20       **MR. SIMON:**  And if their plaintiffs come into the

21  Consolidated Amended Complaint and, you know, we can work with

22  them, we will; but I think the way things have happened up to

23  now, there's been no indication that, you know, there is a

24  great willingness to work together.  In fact, it's been

25  disruptive to the case, and I think potentially harmful to the

1  class, the approach that's been taken there.

2      So I would respectfully suggest, despite the fact that we

3  always try to work with counsel, and especially if their claims

4  come to the case, like the plaintiffs from the other firms, you

5  know, we're not going to shun them but we also need concrete

6  leadership in the two firms that started this case,

7  investigated this case for months, brought this case to this

8  point, and that needs to be decided very firmly today so we can

9  move forward.  But we will try to work with them if the Court

10  so desires.

11      **THE COURT:**  Okay.  Mr. Kornhauser?

12      **MR. KORNHAUSER:**  Thank you, Your Honor.

13      Well, number one, respectfully, we think that the claims

14  are different.  We represent -- we've got state claims for

15  Maryland, Oregon, and Pennsylvania that aren't part of the

16  Senne plaintiffs.

17      **THE COURT:**  The Complaint looks pretty much the same.

18      **MR. KORNHAUSER:**  It is, and I'm not trying to pretend

19  that it isn't.  Although I should say that we're in the

20  process -- there's a number of other Latin ballplayers down in

21  the Caribbean who've indicated that they want us to represent

22  them, and we may be -- in fact, we probably will be adding

23  additional federal and other state law claims.

24      My co-counsel, Brian David, is going to be down there in

25  the next -- in 10 days meeting with them, and we probably will

1    have an amendment to this claim that will be our amendment.

2    There will be additional different federal claims that aren't

3    in this case.

4        With regard to working together, we did reach out to them.

5    I called counsel for the Senne plaintiffs and had a very

6    detailed three-minute conversation.  Called them, told them, A,

7    can we work together so we can protect the interests of all the

8    class members.  They said absolutely nothing.  Said, "We'll get

9    back to you."  Didn't get back to me.  Next thing I saw was

10   their opposition to our being co-lead plaintiffs.

11       And there have been a lot of accusations.  I didn't want

12   to get into personal --

13       **THE COURT:**  Well, let me direct you first in a

14   different direction.  So your request is to consolidate and be

15   appointed in some part of the structure for the case going

16   forward; right?  Is that right?

17       **MR. KORNHAUSER:**  Well, we're not opposed to

18   consolidation for discovery purposes at least.  I wanted to see

19   how it worked out.

20       I mean, we're concerned about --

21       **THE COURT:**  Well, if it's not consolidated, your case

22   would just go on.  I mean, you want in on the lead counsel

23   participation; am I right?

24       **MR. KORNHAUSER:**  Yes, Your Honor.

25       **THE COURT:**  Okay.  So you're asking -- and you're

```
 1   saying you and your contingent will bring something that is

 2   otherwise lacking in the current structure; right?

 3            MR. KORNHAUSER:  Absolutely.

 4        THE COURT:  What is that?

 5            MR. KORNHAUSER:  Well --

 6        THE COURT:  What is it that you -- why is the interest

 7   of the class -- perhaps with your class representatives and

 8   class participants included, what is it that the current

 9   structure lacks in terms of representing those individuals and

10   the other putative class members?

11            MR. KORNHAUSER:  Well, they don't, and they can't

12   certify -- I don't think you can have a certified class for the

13   state wage claims for Pennsylvania, Oregon, and Maryland, and

14   that leaves out a number of putative class members.

15       And I've got the proverbial verbal commitment that

16   there's -- we expect to have fee agreements with a number of

17   other Minor League ballplayers regarding other states and other

18   claims, and the way it stands --

19            THE COURT:  I suppose what I'm fishing for in part --

20   maybe also I'll give Mr. Simon another chance to talk about

21   this -- somebody to sort of lay out a neutral set of what my

22   alternatives are here.  I mean, are there you know, three or

23   four different avenues this case can take going forward,

24   structurally and otherwise, so that I know the menu from which

25   I need to make some choices?  And I'm not entirely clear on
```

 1   that.

 2        So that's what I'm looking for, and each counsel can -- so

 3   I'll let you answer that first, Mr. Kornhauser, then Mr. Simon,

 4   and then if the defense wants to chime in too.   Go ahead.

 5        **MR. KORNHAUSER:**  Yeah, I'll take a shot at it,

 6   Your Honor.

 7        I think, as I said, we're not opposed to consolidating the

 8   cases for discovery purposes.  I think that's the most

 9   efficient, and there's an overlap.

10        We'd like to be co-lead plaintiffs because we believe that

11   there would be a larger class.  All of the -- a lot more class

12   members or Minor League ballplayers will be represented.

13        The way it is now, the Senne plaintiffs have no standing,

14   there's no typicality, and there's no adequacy of

15   representation with regard to all the ballplayers that played

16   in Pennsylvania, Maryland, and Oregon, and we believe there's

17   going to be others.

18        **THE COURT:**  I'm not sure you want to be arguing why

19   classes can't be certified, but that's up to you.

20        **MR. KORNHAUSER:**  Your Honor, no.  Well, I'm just --

21   I'm trying to be realistic.  I think the Court in *Horizon* that

22   we cited, there's another case, Judge Armstrong in -- excuse

23   me -- from this court in the *Miller* case where the claims are

24   different, and the -- and you have co-lead plaintiff -- co-lead

25   counsel so all of the plaintiffs representing all of the

1    putative class members can be represented.

2          THE COURT:  Well --

3          MR. KORNHAUSER:  So there isn't an argument from Major

4    League Baseball that, "Hey, you can't -- you can't bring a

5    claim on behalf of ballplayers that played in Pennsylvania, or

6    Oregon, or Wisconsin, or whatever."

7          THE COURT:  Well, in my experience when I'm

8    considering the structure that's going to be put in place for

9    purposes of a case going forward and I have different counsel

10   who are stepping forward and saying, "We think we need to

11   participate in some fashion -- co-lead counsel, liaison

12   counsel, committees, what have you," the issue for me is:  Why

13   do I need these -- why do we need all these lawyers?

14         And if we're going to have a team of lawyers, I want to

15   have some sense of the different things they're going to do

16   because the thing I don't want is to have, in each deposition,

17   five different sets of lawyers who are primarily there because

18   the pie is chopped up in five ways.  That's not a good way to

19   do it.

20         But there are certainly instances where people will say,

21   "Well, this particular counsel has a special role."  If there

22   are -- you know, there's some suggestion here that there's a

23   group of, perhaps, players from outside the United States have

24   different issues -- you know, questions than the ones who have

25   come through the U.S. system.  I mean, if there are things like

1    that and counsel can address different needs of the group as a

2    group, sobeit; but it's not just, you know, add lawyers just to

3    add lawyers because, you know, we don't do that.

4         MR. KORNHAUSER:  Well, that's not what I'm trying to

5    say.

6         THE COURT:  Okay.  Well, I'm just --

7         MR. KORNHAUSER:  I'm trying to say that I believe we

8    can address and deal with the class claims that aren't being

9    addressed by the Senne plaintiffs.  There's a number of them.

10        THE COURT:  Another alternative is your case just goes

11   on by itself; right?  It's a different, separate case.

12        MR. KORNHAUSER:  Right.  So we have -- well, you'd

13   have overlap, but we could.  You could.  That's fine, if you

14   don't want to consolidate the case.  I believe the only

15   efficient way to consolidate the case is to have co-lead

16   counsel so all of the potential class members interests in all

17   the state claims can be represented, just not some.

18        THE COURT:  Okay.

19        MR. KORNHAUSER:  That's fine.  We could move to

20   certify the class -- the subclasses, if you will, the various

21   state claims that we've got, and proceed on.  We're perfectly

22   willing to do that.

23        THE COURT:  Okay.  Let me -- on this question -- you

24   can use this one.  You don't have to --

25        MR. SIMON:  Fine, Your Honor.

1          So there are three alternatives:  Consolidate the cases;

2    include, to the extent they're appropriate plaintiffs,

3    Mr. Kornhauser's plaintiffs; include, to the extent they're

4    appropriate claims, the states that he has; and appoint lead

5    counsel -- Korein Tillery and Pearson Simon is proposed, and I

6    think would be the best for the class -- and have the entire

7    case work in an efficient manner.

8          The other alternative is to do the middle ground, which

9    Mr. Kornhauser is talking about, is somehow give him a role and

10   have it only be consolidated for discovery purposes, which

11   makes no sense; or just have them operate separately.

12         Both of those alternatives will cause chaos, make it

13   inefficient, be duplicative, and not allow the case to be

14   prosecuted in the way it should be prosecuted.  It needs to be

15   all in one case under one leadership.

16         There's no difference between what Mr. Kornhauser is

17   trying to accomplish.  The state differences is a red herring.

18   We have two states he doesn't have, New York and

19   North Carolina.  We put the states in where most of the

20   Minor League action is.  He added some states.  There's no

21   reason not to add those states.  We have players who we could

22   add those states with, and we could represent them; but, more

23   important --

24              **THE COURT:**  My sense of that -- and I'll give you each

25   a chance to respond to it -- it's not just a question of you

1   add a state.  I mean, you know, anybody can add a state.  The

2   question is -- when I'm deciding counsel participation, what I

3   would ordinarily hear is, "We're -- these are the five states

4   in this particular case, and the reason that this counsel needs

5   to be involved in it is because they have particular expertise

6   in this particular area of the law," and they have some reason

7   why they've got liaison role with these plaintiffs.  It's not

8   just, "Hey, I came up with three more states, so" --

9           **MR. SIMON:**  Right.  And there is no reason, that's why

10  you're not hearing it, that there's a special need to have

11  representation in those states.

12      Remember, the claim -- the umbrella claim over everything

13  is the FLSA claim.  That's a federal claim on behalf of every

14  player, including all Mr. Kornhauser's clients.  That's an

15  opt-in class.  He can choose to have his plaintiffs not opt in,

16  but that certainly is a more viable option efficiency-wise than

17  to let him go off with a separate case that could result in

18  conflicting rulings, could result in a reverse auction against

19  us on a settlement, all sorts of, you know, mischief that could

20  occur.

21      I will also say, you know, there is this assertion that --

22  you know, on Hispanic players.  We have nine Hispanic players,

23  two of whom are class representatives, the other seven are

24  going to be opting into the FLSA class, and that's a nonissue.

25      I'd like to put on the record, having investigated this

1    and studied it and looked at every possible conceivable federal

2    law under which this case could be brought, I don't know what

3    federal claims he's talking about bringing.  We don't know that

4    there's another federal claim out there that we think is as

5    good as the FLSA claim.

6         This is a wage-and-hour case, and I just don't think that,

7    you know, there's anything special that would be added by what

8    Mr. Kornhauser is trying to suggest, Your Honor.  There simply

9    isn't with respect to him.

10        It's evident by the fact we just heard an argument saying,

11   you know, why there are differences in the class.  We would

12   never stand up and say that to Your Honor; and I just think

13   that, you know, he's a bit out of his league in this particular

14   case.

15        This is a giant piece of litigation.  We've been handling

16   it for seven months.  We still continue to handle it.  You

17   know, we've got -- been working on experts.  We worked on the

18   jurisdictional discovery.  We've had a hearing in front of

19   Magistrate Judge Laporte.  We got a stipulation tolling the

20   opt-in provision of the FLSA claim for all players so that we

21   can toll that until all these other issues are sorted out.

22   We've done a protective order.  We've engaged in ESI

23   discussions.  They've been nowhere to be seen in any of this

24   and, you know, I just don't see, with all due respect, what

25   they add.

 1          **THE COURT:**  But before you -- well, go ahead.

 2          **MR. KORNHAUSER:**  I'd like to defend myself.

 3          **THE COURT:**  Go ahead.

 4          **MR. KORNHAUSER:**  I mean, you know, with all due

 5    respect, it's kind of -- well, I won't go there.

 6      You know, I've handled complex cases, class actions.  We

 7    were just -- actually that *Allstate* case before you became a

 8    judge, you were a magistrate, I believe you worked on it.

 9          **THE COURT:**  I was a judge then.  Magistrates are

10    judges.

11          **MR. KORNHAUSER:**  Magistrate Judge, pardon me.

12          **THE COURT:**  Okay.

13          **MR. KORNHAUSER:**  Before you were a Title III judge.

14      Anyway, you worked on the *Allstate* case with regard to

15    some discovery issues.  There were 300 -- I mean, 300,000 class

16    members, you know.  We're not out of our league.  Brian David

17    has been in the business.  He's been an agent representing

18    Major League ballplayers and now Minor League ballplayers for

19    40 years.  He's dealt with these defendants.  He's negotiated

20    million dollar -- you know, millions of dollars worth of

21    settlements.  He's familiar with the ballplayers.  He knows

22    their needs, particularly Caribbean ballplayers.

23      And if we're getting into it, frankly, I'm concerned about

24    it.  In the 30 years that I've been doing this, I'm concerned

25    about the big firms always come in, they want to monopolize the

case.  They're in it to get their fees.  And when we're talking

about reverse auctions, I think that -- I've never been

involved in a reverse auction.  In fact, we end up pursuing the

cases until we get either to trial or a settlement of the case

that's close to the full amount of the claims.

    And I've been in plenty of these cases, and that's why I

started trying to avoid them, actually, in the middle of my

career because it was -- I didn't really like the politics and

the way that plaintiffs' counsel sometimes would sell out the

class, and that's a large reason why we're in the case.

        MR. SIMON:  Your Honor --

        MR. KORNHAUSER:  And -- you know --

        THE COURT:  Wait.  Just wait a minute.

        MR. KORNHAUSER:  -- I'm sorry, Your Honor.  I sat

here.  I listened to this, you know, red herring, out of my

league, and stuff.  It's just not true, and we're going to

pursue these claims.

    And, you know, this notion that I'm giving defendants

ammunition to defeat the class certification, I'm trying to

avoid that so we've got plaintiffs that represent all the

claims for the various states.

        THE COURT:  Well, that's the question then.  Granted

there are states in your action that aren't currently in the

action that was filed previously.  Is there something -- is

there something about the nature of those claims that indicate

1    that we should have an addition to the counsel structure?

2    That's what I'm trying to get at.

3       I mean, I'm going to put aside for the moment the issue of

4    particular counsel's experience.  What I'm looking at is:  Is

5    there a need -- if I put these two cases together, is there a

6    gap in terms of the representation of the putative class?

7    That's what I have to look at.

8          MR. KORNHAUSER:  I understand, and that's why I'm

9    saying, respectfully, I believe that they don't represent

10   ballplayers that weren't paid minimum wage or overtime in

11   Pennsylvania.  There's no --

12         THE COURT:  What's special about Pennsylvania law, in

13   other words?  I mean, what is it?  Is there something -- is

14   there a reason why --

15         MR. KORNHAUSER:  Those are additional claims.  They've

16   got different statutes of limitations.  They've got different

17   criteria for the wage claims in each state, and --

18         THE COURT:  Well, that I understand.  What I'm trying

19   to get at is:  Sometimes you would say, "Because of the nature

20   of the complexity of these claims, we need to have counsel

21   particularly focused on litigating that aspect of the claim,"

22   and I'm not hearing that.  I'm not hearing that there's --

23   these additional states that are represented here have

24   statutory provisions that are so difficult or complex that we

25   need to augment the group of counsel so they can deal with

those very complicated claims.  I'm not saying that's going to

decide the question, but I'm just trying to get some handle on

it.

     But let me now see if the defense side wants to weigh in.

They may not.

          **MS. BLOOM:**  If I can just talk.

          **THE COURT:**  Do you?

          **MS. BLOOM:**  I just would like to address the question

of consolidation --

          **THE COURT:**  Okay.

          **MS. BLOOM:**  -- of the cases.

     From our perspective, we have come pretty far along on the

Senne case.  We, I think, are almost completed with the

jurisdictional and venue discovery, and so we were about to

renotice -- or we were going to renotice the motions.  We've

been working fairly cooperatively with counsel in terms of

timing.

     From our view, the cases should be consolidated and

merged, and we would like there to be one Complaint because we

think that that would be most efficient going forward

regardless of where the case is actually litigated.  I would

hate to be in a deposition and we've got this Complaint and

this Complaint.

          **THE COURT:**  So the option of one -- of separate

proceedings is your least attractive option.  I understand

 1  that.

 2      **MS. BLOOM:**  It's our least attractive option.  We

 3  really don't see the basis for that.  We really do believe that

 4  the cases could be very efficiently consolidated, but we would

 5  like there to be a new Complaint, a Consolidated Complaint.  I

 6  think that could be done in fairly short order.  And then we

 7  would, obviously, renotice our motion; and to the extent that

 8  the Consolidated Complaint raised any new issues, we could

 9  cover those in our motions.

10      If the cases stay separate, the one practical issue that I

11  have for the Court is that with regard to the Marti Complaint,

12  I thought we had had an agreement on an extension of time to

13  answer and/or move, but apparently I misunderstood that.  So

14  our Answer and our motion would be due on October 14th.

15      What we had asked for, and I thought we had an agreement

16  on, was 30 days from the time that the Court ruled on the

17  consolidation.  So I would just ask for the Court's indulgence

18  on that.

19      **THE COURT:**  You're the counsel that would be

20  addressing that particular request.  Is there any reason why

21  there can't be an extension?

22      **MR. KORNHAUSER:**  Yeah.  I'd initially -- well, I

23  tentatively agreed to that, but I wanted to know if counsel

24  would -- what counsel's position was, and they were indicating

25  that they were only in favor of consolidation -- I'm sorry --

1    consolidation if there was a Consolidated Complaint.

2         I know I guess I'm beating a dead horse.  I'd ask

3    Your Honor to take a look at that *Miller* case and the *Horizon*

4    case again.  In order to have a Consolidated Complaint, you

5    have to have plaintiffs' counsel that represent plaintiffs that

6    represent all of the claims.

7              THE COURT:  I understand that, but I'm actually asking

8    a much more limited question, which is:  Doesn't it make sense

9    to have my order first before they have to respond to the Marti

10   Complaint?

11             MR. KORNHAUSER:  Yes.  Yes.

12             THE COURT:  Okay.  I will give you the relief that you

13   request.

14             MS. BLOOM:  Thank you.  Thank you, Your Honor.

15             THE COURT:  And you'll get further direction when I

16   issue the order, but the October 14th date does not bind you in

17   terms of if I haven't ruled at that point -- what is today's

18   date?

19             MS. BLOOM:  It's the 10th.

20             MR. SIMON:  The 9th.

21             THE COURT:  The 9th.  So I'm not going to necessarily

22   promise I'm going to get an order out on these questions by

23   then, but I'm orally ordering that you are not required to

24   respond to the Marti Complaint on the 14th, and you will --

25   when I do issue my order, we'll give you some direction as to

 1   what you must do.

 2        **MS. BLOOM:**  And in terms of if you do issue an order

 3   consolidating and merging -- and I know there's a split as to

 4   what the proper term would be -- what we would ask also, as we

 5   put in our papers, is that merits discovery be stayed and we

 6   just complete what's left of the jurisdictional and venue

 7   discovery, renotice the motions, get those motions decided, and

 8   then we can all move forward.

 9        **THE COURT:**  And you agree that you can get those

10   motions decided -- we can get them on calendar and decided

11   before the end of the year?

12        **MS. BLOOM:**  I would think so, unless the discovery

13   drags out longer than I anticipate, in which case I think they

14   could be on calendar by the end of January.

15        **THE COURT:**  Okay.  Mr. Simon?

16        **MR. SIMON:**  Your Honor, on the stay request, that was

17   made to Judge Spero and denied.  We would ask that if they

18   really want to stay something, they bring a motion and we'll

19   respond to it.  There's no need to do that.

20        **THE COURT:**  This is on -- you're talking about on the

21   discovery issue?

22        **MR. SIMON:**  Yeah, on the merits issues.

23        But putting that aside, we definitely need a schedule that

24   we can get this part of the case done quickly.  We can file a

25   Consolidated Amended Complaint I think within two weeks; and I

1   think that if, you know, counsel could shortly thereafter --

2   and I don't think they need much time -- renotice their motions

3   and refile their answers, like, within a week's time, and then

4   you add 35 days to that, I think we're talking about getting a

5   hearing, I didn't do the math in my head, but probably right

6   after Thanksgiving, which would be fine.

7           **MS. BLOOM:**  Excuse me.

8           **MR. SIMON:**  Yes.

9           **MS. BLOOM:**  I think that's a little ambitious.  We had

10  a stipulation which provided a certain amount of time for you

11  to file your opposition.  You gave us, I think, three weeks for

12  our reply.  So I think the soonest the motions would go on

13  would be around December 18th; and then if --

14          **THE COURT:**  Well, and I'm assuming -- part of what I'm

15  hearing Mr. Simon saying is not so much the concern if there's

16  no stay, it's just in terms of the merits.

17          **MR. SIMON:**  Right.

18          **THE COURT:**  You want the motions decided with

19  dispatch, but your particular concern is if the motion decision

20  is tied to some stand-down, that's what he doesn't like; right?

21          **MS. BLOOM:**  My recollection of what Judge Spero had

22  said was that he wasn't going to issue a stay, but he said --

23  he told -- he encouraged the parties to focus on the discovery

24  that was necessary in order for plaintiffs to be able to

25  respond to the two pending motions so that we could get some

1  resolution of that, and I do think that's what the parties have

2  done quite well cooperatively together while maintaining our

3  adversarial positions.

4      **MR. SIMON:**  I don't disagree with that, and we are

5  going to be focused on getting this part of the case done.  I

6  just don't think a blanket stay without a motion when it's

7  already been denied should be granted on the fly at this

8  particular hearing.

9      **THE COURT:**  Okay.

10     **MR. SIMON:**  And I don't think there's going to be any

11 prejudice that counsel will be able to show the Court before

12 the time we have these arguments on these motions that would

13 require a motion for stay.  So I think if we keep going the way

14 we're going, we'll be okay.

15     **THE COURT:**  Okay.  I'm about to close this down, but

16 if anyone has anything further they want to say.  I'll start

17 with you, Mr. Kornhauser.

18     **MR. KORNHAUSER:**  Yes, Your Honor.

19   I'd just ask you to take a look -- we didn't have a

20 chance -- most of their citations with regard to consolidation

21 were in their reply so we didn't have a chance to respond and,

22 respectfully, those cases don't -- in fact, they really support

23 our position that if there are different claims, you need

24 co-lead counsel.

25     **THE COURT:**  You're citing me to the *Miller* case, which

1    was Judge Armstrong's case?

2             MR. KORNHAUSER:  I want to give you that cite.  So

3    that's --

4             THE COURT:  Well, I -- it's Judge Armstrong's case,

5    *Miller*.  I've seen it before so I'm familiar with it.

6             MR. KORNHAUSER:  Oh.  You're ahead of me, Judge.  I'm

7    sorry.

8             THE COURT:  Okay.

9             MR. KORNHAUSER:  I'll give you the cite anyway.

10            THE COURT:  Go ahead.  Go ahead.

11            MR. KORNHAUSER:  It's 2001 Westlaw 34497752.

12       With regard to the -- I'll just run through these real

13   quick if I could.  The *Medlock* case that they cited in their

14   reply brief for the first time, there were co-lead counsel

15   appointed there because one set of counsel represented

16   shareholder claims, the other counsel represented bondholder

17   claims.  Even though they arose out of the same fraudulent

18   transactions, there was -- the Court was concerned that counsel

19   that didn't have bondholders couldn't adequately represent

20   them, and vice versa, so the Court appointed co-lead counsel.

21       The *Cree* case that they cite, there was no opposition by

22   anybody to consolidation, and all the parties, all the

23   plaintiffs were represented by the same counsel.  So there

24   wasn't a gap, if you will, in representation.

25       The same with *Newmark*.  There's no indication that there

1    were any different claims.  That's why you had two separate

2    cases that were filed by the same counsel, but -- so there was

3    a representative -- the counsel represented all of the putative

4    class members and all the claims in the case.

5          In the *Team Enterprises* case, same thing.  It supports our

6    position.  They all support the *Horizon* case, which we cited to

7    Your Honor.  There was no opposition.  The plaintiffs brought

8    two actions.  They sought to consolidate the two actions, and

9    they were represented by the same counsel and the same

10   plaintiffs.

11         So there really are no cases that I could find that

12   support their position that if a case is consolidated and the

13   plaintiffs don't represent all of the respective claims of

14   putative class members, in all those cases co-counsel are

15   appointed.  So all of the claims -- so there are attorneys,

16   class attorneys, that represent all of the claims.

17         And with regard to working together, as I said, we reached

18   out.  We wanted to do that.  We do think we bring something

19   special to the table.  I don't think that you can disregard 40

20   years of experience in dealing with Major League Baseball.  I

21   mean, that's what Brian David has done for his entire career,

22   and he's been successful at that, successful.  He knows the

23   industry.  He knows the business.  He knows these claims.  We

24   can shortcut some of the discovery because he's been dealing

25   with these issues for -- successfully for 40 years.  So we

1  believe that we bring a lot to the table.

2       And we need to make sure that we have some control so that

3  the interests of the class are represented, and we think that

4  we've got the experience, particularly Brian David, with regard

5  to this particular industry that we can adequately represent

6  the class.

7       And if, in fact, there are negotiations for settlement,

8  that we would know what was fair and adequate to the class, and

9  that there wouldn't be some insufficient settlement.  And if it

10 gets tried, then we'll try it, and we'll try it to conclusion

11 and make sure that we prevail.

12      **MR. SIMON:**  Three quick things, Your Honor.  I know

13 time is short.

14      Number one, if all that's true, then why did they copy our

15 Complaint and not do any original work on their Complaint

16 whatsoever?

17      In the *Oclaro* derivative litigation, Judge Chen said, we

18 cited it in our papers, 2001 Westlaw 4345099:  (reading)

19           "Factors that courts typically consider in lead

20      counsel determinations include whether one Complaint is

21      simply a copycat action of another."

22      He's admitted that.  I think that really ends a lot of the

23 discussion.

24      You know, the cases that he talks about, he cited one case

25 on his class action experience that's not a wage-and-hour case.

1    It was an interest case on Allstate Insurance.  The docket

2    shows it was Judge Ware and Judge Spero.  I don't know if

3    Your Honor got involved at some point.

4        But Judge Ware dismissed seven of the nine causes of

5    action.  The case was litigated for six years.  It was a

6    claims-made settlement up to $2.7 million for 300,000 class

7    members.  Who knows what the take rate was, but that's $9 per

8    class member; and the attorneys' fees were $1.25 million.

9        So if that's his claim to fame on class action experience,

10   I would suggest to you I'll put my track record up with this

11   court any day against that.

12       And I have nothing further to say on any of the other

13   points.  The cases speak for themselves.  The cases he cites

14   are all distinguishable.

15       Can we just put on the record what the schedule we

16   stipulated to would look like so Your Honor has it in mind?

17           **THE COURT:**  Sure.

18       **MR. SIMON:**  Because I, in my desire to always go

19   faster than slower, probably said something different from what

20   the stipulation was.

21       So how many -- do you want to say what it is?

22       **MS. BLOOM:**  You guys had, I think it was, four weeks

23   to do your opposition and we had three weeks to do a reply; and

24   we had agreed, with regard to the reply, that we could use any

25   of the information during the discovery process, except they

1   reserve their rights to challenge any new legal arguments.

2          **THE COURT:**  This is in the renoticed set of motions?

3          **MS. BLOOM:**  These are on the original -- this was the

4   original noticed motions.  I think it's Docket Number 186

5   actually is the actual file stipulation.

6          **THE COURT:**  And that was when it was still in front of

7   Judge Spero?

8          **MS. BLOOM:**  That's correct.

9          **THE COURT:**  And that was the schedule?

10         **MR. SIMON:**  Right.

11         **MS. BLOOM:**  That is correct.

12         **THE COURT:**  And I need to know that -- I guess my

13  question is:  Why are you telling me that?

14         **MS. BLOOM:**  I think the only reason we were telling

15  you that is in response to your question whether the motion

16  could be actually heard before the end of the year.  That's

17  why.

18         **THE COURT:**  I see.  All right.

19         **MR. SIMON:**  I still think it can.  I didn't mean to

20  say anything different from what the stipulation was.

21         **THE COURT:**  I understand.

22         **MR. SIMON:**  But we are here now, and we do want to get

23  it in well before the end of the year.

24         **THE COURT:**  I understand.

25      And just as a matter of general curiosity, the other

1   parties, all of the Major League Baseball clubs are represented

2   by defense counsel, you, Ms. Bloom; right?  But Baltimore is

3   going it alone?

4            **MS. BLOOM:**  Baltimore is represented by Ms. Bruce.

5            **MS. BRUCE:**  Yes, sir.

6            **THE COURT:**  Okay.  And they're the only --

7            **MS. BRUCE:**  We're the only club that has separate

8   counsel.

9            **THE COURT:**  Okay.

10            **MS. BRUCE:**  Where we -- where defense counsel is in

11   agreement, Your Honor, it indicates it on the papers.  So, for

12   instance, for the consolidated motion, I didn't stand up and

13   speak because Ms. Bloom and I had reached an agreement as to

14   how we were going to -- you know, what position we were going

15   to take.  So anywhere where we've reached position, we just

16   simply filed a consolidated paper.

17            **THE COURT:**  That's fine.  You can join and do that

18   sort of thing.

19            **MS. BRUCE:**  Yes.

20            **THE COURT:**  I was just curious that it's everybody in

21   Baltimore.  Okay.

22            **MS. BRUCE:**  Yes.  Well, we'll be in the World Series.

23                         (Laughter)

24            **THE COURT:**  Well, we won't even start into that

25   discussion.

```
1          MR. SIMON:  She comes to San Francisco and says that?

2          THE COURT:  We'll leave this alone.

3          MS. BRUCE:  San Francisco can be in the World Series.

4          MR. SIMON:  And Mr. Broshuis is from St. Louis.

5          MS. BRUCE:  We'll all be in the World Series, we'll

6    all wear black and longer, and it will be all wonderful.

7          THE COURT:  I have enough issues that I certainly

8    don't want to start a fistfight in the courtroom so I'll just

9    leave it at that.

10         MS. BRUCE:  Thank you, Your Honor.

11         MS. BLOOM:  Thank you, Your Honor.

12         THE COURT:  Yes, go ahead, Mr. Kornhauser.

13         MR. KORNHAUSER:  I don't know.  Yeah, I'd like -- the

14   Allstate case, the settlement was approved by Judge Ware.  It

15   was negotiated with the help of Judge Spero.  The class members

16   got a hundred percent of their claims.  They weren't docked

17   attorneys' fees, or costs, or anything else.  So, you know, his

18   notion that there was some kind of improper settlement is just

19   not valid.

20         THE COURT:  All right.  I'll take the matter under

21   submission and give you an order.

22         MR. KORNHAUSER:  Thank you, Your Honor.

23         MS. BLOOM:  Thank you, Your Honor.

24         MR. LUPION:  Thank you, Your Honor.

25              (Proceedings adjourned at 12:17 p.m.)
```

1

2

3                          __CERTIFICATE OF REPORTER__

4              I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:   Friday, October 17, 2014

8

9

10

11     _____

12            Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                    U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25