STEPHEN M. TILLERY *(pro hac vice)*
  stillery@koreintillery.com
GARRETT R. BROSHUIS *(pro hac vice)*
  gbroshuis@koreintillery.com
GIUSEPPE S. GIARDINA *(pro hac vice)*
  ggiardina@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone:  (314) 241-4844
Facsimile: (314) 241-3525

GEORGE A. ZELCS *(pro hac vice)*
  gzelcs@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750

BRUCE L. SIMON (Bar No. 96241)
  bsimon@pswlaw.com
BENJAMIN E. SHIFTAN (Bar No. 265767)
  bshiftan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile: (415) 433-9008

DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
BOBBY POUYA (Bar No. 245527)
  bpouya@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone:  (818) 788-8300
Facsimile: (818) 788-810

Plaintiffs' Interim Co-Lead Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON SENNE, et al., Individually and on Behalf of All Those Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL; et al.;<br><br>Defendants. | CASE NO. . 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF RYAN KHOURY REGARDING JURISDICTION AND VENUE**<br><br>Hearing date: Feb. 13, 2015, 2:00 p.m.<br>Courtroom: G, 15th Floor<br>Judge: Honorable Joseph C. Spero |

859163.1

DECLARATION OF RYAN KHOURY REGARDING JURISDICTION AND VENUE

Ryan Khoury declares:

1.    I am personally familiar with the facts set forth in this declaration. If called as a witness I could and would competently testify to the matters stated herein.

2.    I currently reside in Salt Lake City, Utah, and I was previously employed as a minor league baseball player by the Boston Red Sox from June of 2006 to November of 2011.

3.    Before signing my contract with the Red Sox, the Red Sox and many other MLB franchises recruited me while I played at the University of Utah. The Red Sox and the other MLB franchises sent many scouts and other officials to my games, asked that I fill out questionnaires, and sometimes elicited information directly from me or my coaches.

4.    The recruitment began in earnest during the junior year of college, and it continued throughout my senior year of college. I filled out numerous informational cards and spoke to many of the scouts in person. The scouts attended my college games to evaluate me, and most of that scouting occurred in California because our college team played many games in California, and there were many scouts in California, so it was convenient for them.

5.    In June of 2006, the Boston Red Sox selected me in MLB's Rule 4 amateur draft. After the draft, a Red Sox scout called me while I resided in Utah. The scout told me the terms of employment, and we agreed to the terms over the phone before I was sent to my first minor league assignment with the Red Sox.

6.    I spent the entire 2007 season working for the Red Sox in Lancaster, California. The Red Sox had a minor league affiliate there, and they assigned me to work there.

7.    In addition to the work performed during the season, I also performed extensive work on the Red Sox' behalf during the months outside the championship season. The Red Sox provided a winter work packet to me and my teammates (the other minor leaguers employed by them) and expected us to perform that work at home without pay. Some of the activities they expected us to perform included throwing, hitting, fielding, running, weightlifting, conditioning, and speed and agility training. Thus, I performed substantial winter training work for the Red Sox.

8.    I returned to the state where I was drafted (Utah) to perform this winter training work. I had many Red Sox teammates from California, and, of those that I knew and kept in touch with,

859163.1

1

DECLARATION OF RYAN KHOURY REGARDING JURISDICTION AND VENUE

most returned to California during the winter to perform the winter work. I even met up with some of them in California while visiting my mother in California during the winter months.

9.    The Red Sox requested that my teammates and I provide our off-season addresses so that they knew where we lived during these winter work months. This allowed the team to communicate with us during these months, and it also provided MLB with a winter address for drug testing purposes because. Per the drug testing policy, our whereabouts had to be known, so the winter addresses had to be accurate, and we had to update our whereabouts if we traveled away from our winter addresses.

10.    The Red Sox communicated with us to ensure that our winter training work was being performed adequately. The Red Sox also sent other work-related communications to the winter addresses we provided. For instance, before spring training, the Red Sox sent us a packet with spring training information and employment forms, including a contract addendum establishing my salary, and instructed me to quickly sign and return it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 10, 2014, in Salt Lake City, Utah.

Ryan Khoury