1  ELISE M. BLOOM (*pro hac vice*)
2  HOWARD L. GANZ
   NEIL H. ABRAMSON (*pro hac vice*)
3  ADAM M. LUPION (*pro hac vice*)
   **PROSKAUER ROSE LLP**
4  11 Times Square
   New York, NY 10036
5  Telephone:   (212) 969-3000
   Facsimile:   (212) 969-2900
6
7  ENZO DER BOGHOSSIAN (SBN 211351)
   **PROSKAUER ROSE LLP**
8  2049 Century Park East, 32nd Floor
   Los Angeles, CA  90067-3206
9  Telephone:   (310) 557-2900
   Facsimile:   (310) 557-2193
10
11 *Attorneys for all Defendants*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AARON SENNE, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL, *et al*.,<br><br>　　　　　　　Defendants. | Case No. CV 14-00608 JCS (consolidated with 3:14-cv-03289-JCS)<br><br>Hon. Joseph C. Spero<br><br>**CLASS ACTION**<br><br>**REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT IN PART FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM**<br><br>Date: July 10,  2015<br>Time: 9:30 a.m.<br>Place: Courtroom G, 15th Floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

LEGAL ARGUMENT ............................................................................................................... 2

    I.    STANDING MUST BE ESTABLISHED FOR EACH CLAIM ASSERTED AGAINST EACH DEFENDANT ................................................................................ 2

    II.    HYPOTHETICAL CLAIMS OF ABSENT, UNIDENTIFIED PUTATIVE CLASS MEMBERS CANNOT CONFER STANDING OVER THE 124 STATE LAW WAGE-AND-HOUR CLAIMS FOR WHICH NO NAMED PLAINTIFF ALLEGES AN INJURY AGAINST THE DEFENDANT CLUBS ................................................................................................................... 5

    III.    PLAINTIFFS' ATTEMPT TO USE RULE 23 AS A STOP GAP FOR A CONSITUTIONAL JURISDICTIONAL DEFICIENCY FAILS .............................. 7

        A.    The Court Should Consider Standing Now ........................................................ 7

        B.    Class Certification Is Not "Logically Antecedent" to Standing In This Case. ................................................................................................................... 9

        C.    Defendants Would Be Extraordinarily Burdened If The Court Deferred Consideration Of Plaintiffs' Lack of Standing to Bring 124 State Law Claims In This Lawsuit. ..................................................................................10

    IV.    DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' IMPLAUSIBLE WAGE-AND-HOUR CLAIMS SHOULD ALSO BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6) ........................................................12

        A.    Plaintiffs' State Law Claims Fail Because They Do Not Allege An Employment Relationship With All Defendant Clubs Under All State Laws ..................................................................................................................12

        B.    Plaintiffs' Time-Barred Claims Cannot Relate Back To The Original Complaint Filed Agaisnt Only Three Defendant Clubs. ................................12

        C.    Defendants' Motion To Dismiss Was Timely Filed, And Can Also Be Decided under The "Functionally Identical" Standard of Fed. R. Civ. P. 12(c). ..............................................................................................................13

    V.    PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND BECAUSE THE COMPLAINT CANNOT BE CURED BY RE-PLEADING ..........14

CONCLUSION ........................................................................................................................15

ii

REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT IN PART FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Akaosugi v. Benihana Nat'l Corp.*
   282 F.R.D. 241 (N.D. Cal. 2012).................................................................................................7, 8

*B.C. v. Plumas United Sch. Dist*
   192 F.3d 1260 (9th Cir. 1999) .........................................................................................................5

*Bruce v. United States*
   759 F.2d 755 (9th Cir. 1985) ...........................................................................................................7

*Coalition for Sustainable Delta v. FEMA*
   711 F. Supp. 2d 1152 (E.D. Cal. 2010)..........................................................................................12

*DaimlerChrysler Corp. v. Cuno*
   547 U.S. 332 (2006).........................................................................................................................2

*Easter v. American West Financial*
   381 F.3d 948 (9th Cir. 2004) ...........................................................................................................7

*Gustason v. Wash. State Dep't of Soc. & Health Servs.*
   No. CV05-5117RBL, 2006 U.S. Dist. LEXIS 27979 (W.D. Wash. Apr. 26, 2006) .....................13

*Gutierrez v. Chung*
   No. 1:12-CV-01854-LJO, 2013 WL 655141 (E.D. Cal. Feb. 21, 2013) .......................................14

*Haley v. Cohen & Steers Capital Mgmt.*
   2011 U.S. Dist. LEXIS 142532 (N.D. Cal. Dec. 12, 2011) ...........................................................13

*Harris v. Vector Mktg. Corp.*
   No. C-08-5918 EMC, 2010 WL 3743532 (N.D. Cal. Sept. 17, 2010) ............................................7

*Henry v. Circus Circus Casinos, Inc.*
   223 F.R.D. 541 (D. Nev. 2004)...............................................................................................3, 6, 8

*In re Adobe Systems, Inc. Privacy Litig.*
   No. 13-CV-05226-LHK, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014).........................................2

*In re Carrier IQ Inc.*
   No. C–12–md–2330 EMC, 2015 WL 274054 (N.D. Cal. Jan. 31, 2015).......................................9

*In re Eaton Vance Corp. Sec. Litig.*
   220 F.R.D. 162 (D. Mass. 2004).....................................................................................................6

*In re Fritz Cos. Sec. Litig.*
   282 F. Supp. 2d 1105 (N.D. Cal. 2003) ...............................................................................14

*In re Wellbutrin XL Antitrust Litigation*
   260 F.R.D. 143 (E.D. Pa. 2009) ...........................................................................................11

*Jean v. Torrese*
   278 F.R.D. 656 (S.D. Fla. 2011) ............................................................................................8

*Kassman v. KPMG LLP*
   925 F. Supp. 2d 453 (S.D.N.Y. 2013) ..............................................................................9, 10

*Kirola v. City & Cnty. of San Francisco*
   No. C 07-3685 SBA, 2014 WL 6705952 (N.D. Cal. Nov. 26, 2014) ....................................5

*Lee v. Oregon*
   107 F.3d 1382 (9th Cir. 1997), *as amended* (Apr. 16, 1997) ...............................................7

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
   350 F.3d 1018 (9th Cir. 2003) ............................................................................................5, 7

*Los Gatos Mercantile, Inc. v. E.I. DuPoint De Nemours & Co.*
   No. 13 Civ. 01180 (BLF), 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ............................7

*Lucas v. BMS Enterprises, Inc.*
   No. 309-CV-2159-D, 2010 WL 2671305 (N.D. Tex. July 1, 2010) ......................................8

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ...............................................................................................................3

*Luxama v. Ironbound Exp., Inc.*
   No. CIV.A. 11-2224 ES, 2013 WL 3286081 (D.N.J. June 27, 2013) ...................................8

*Miller v. Pac. Shore Funding*
   224 F. Supp. 2d 977 (D. Md. 2002) *aff'd*, 92 F. App'x 933 (4th Cir. 2004) ........................6

*Morales v. Unilever U.S. Inc.*
   13 Civ. 2213 (WBS), 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) ......................................8

*Parks v. Dick's Sporting Goods, Inc.*
   No. 05-CV-6590 (CJS), 2006 WL 1704477 (W.D.N.Y. June 15, 2006) ...............................8

*Perez v. Wells Fargo & Co.*
   No. C 14-0989 PJH, 2015 WL 1887354 (N.D. Cal. Apr. 24, 2015) ..............................2, 3, 8

*Ross v. U.S. Bank Nat'l Ass'n*
   542 F. Supp. 2d 1014 (N.D. Cal. 2008) ..........................................................................3, 4, 8

*Siemers v. Wells Fargo & Co.*
   No. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) ......................................6, 8

*Smith v. Pizza Hut, Inc.*
   No. 09-CV-01632-CMA-BNB, 2011 WL 2791331 (D. Colo. July 14, 2011) ......................4, 6, 10

*Taylor v. Enterprise Rent-A-Car Co.*
   No. CV 10-1849-JST SHX, 2011 WL 1195898 (C.D. Cal. Mar. 30, 2011) ................................10

*United States Fid. & Guar. Co. v. Bank of Bentonville*
   29 F. Supp. 2d 553 (W.D. Ark. 1998) .......................................................................................13

*Vermont Agency of Natural Res. v. United States ex rel Stevens*
   529 U.S. 765 ................................................................................................................................7

*Wang v. FMC Corp.*
   975 F.2d 1412 (9th Cir. 1992) .....................................................................................................7

*Winfield v. Citibank, N.A.*
   842 F.Supp.2d 560 (S.D.N.Y. 2012) ............................................................................................9

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................12, 13, 14

Fed. R. Civ. P. 12(c) ..............................................................................................................13, 14

Fed. R. Civ. P. 23 ................................................................................................................. passim

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (Fourth Edition), § 21.11 ...................................................10

**INTRODUCTION**

Plaintiffs assert wage-and-hour claims under the laws of eight different states against all Defendants in this case. Plaintiffs seek to avoid dismissal of 124 of those claims[1] based on the mere facts that this putative class action Complaint identifies at least one Named Plaintiff that played for each Defendant Club, and that at least one named Plaintiff allegedly "worked" in one of those eight states. Defendants do not dispute either point. But those unremarkable facts do not confer standing over *all* state law wage-and-hour claims that are asserted against *all* Defendants Clubs because Plaintiffs have not established – indeed, they do not even dispute – that there is no Named Plaintiff that allegedly worked for each Defendant Club in each of the eight states whose wage-hour laws are at issue here. Plaintiffs' styling of the Complaint as a class action does not excuse those threshold jurisdictional deficiencies.

In order to have standing to assert a state law wage-and-hour claim, a plaintiff must claim to have been employed by an employer in the state whose law plaintiff purports to invoke. This is exactly what Article III of the U.S. Constitution requires, and Plaintiffs do not dispute this jurisdictional principle. Nonetheless, they ask the Court to hold that so long as multiple plaintiffs sue multiple defendants and style their claims as a class action, the bedrock principle that standing must be satisfied for *each* claim for relief as to each defendant can be disregarded simply because there is standing to assert *one* claim against each defendant. There is no legal support for such an expansive interpretation of Article III. Nor can Plaintiffs remedy their own lack of standing by bootstrapping the hypothetical claims of absent, unidentified class members—a maneuver that would be a blatant abuse of the class action mechanism. Where, as here, Plaintiffs purport to bring 124 state law wage-and-hour claims against entities that did not employ them and in states where they performed no work, the obvious standing deficiencies cannot be remedied through the procedural device of Fed. R. Civ. P. 23 ("Rule 23").

In a last ditch effort to salvage their defective claims, Plaintiffs suggest that the Court defer the standing determination until after it addresses Rule 23 class certification. That contention should

---

[1] *See* Exhibit A to the Declaration of Adam Lupion, Dkt. No. 410-1 (the "Lupion Decl.").

be rejected for several reasons.  *First,* if the Court lacks subject matter jurisdiction to adjudicate a claim—or 124 state law claims, as is the case here—it cannot properly reach a class certification question in the first instance.  *Second,* Plaintiffs' deferral theory relies on inapposite case law (and none in which wage-and-hour claims are asserted against non-employers or in states in which named plaintiffs did not work) and ignores the overwhelming weight of authority that deferral is inappropriate in the circumstances here, particularly where there is no reasonable dispute that the Named Plaintiffs lack standing to bring the 124 state law claims at issue.  *Third,* Defendants would be extraordinarily prejudiced by the deferral of these issues because they would be compelled to engage in additional burdensome discovery and to defend claims that no Named Plaintiff has standing to assert.  Plaintiffs concede that the Court must grapple with the standing deficiencies at some point in the litigation; doing so now is not only the most efficient and practical approach, but it is constitutionally required, as federal courts are "under a continuing duty to dismiss an action whenever it appears that the court lacks [subject matter] jurisdiction."  *See Perez v. Wells Fargo & Co.,* No. C 14-0989 PJH, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015).

## LEGAL ARGUMENT

### I. STANDING MUST BE ESTABLISHED FOR EACH CLAIM ASSERTED AGAINST EACH DEFENDANT.

Contrary to Plaintiffs' suggestion, Article III standing is not satisfied merely by demonstrating that all Named Plaintiffs and all Defendants are properly in the case in some capacity. (*See* Pls.' Opp. at 3-4.[2])  Simply because Plaintiffs have standing to assert at least one claim against a particular Defendant Club does not confer standing to assert all claims against that Defendant Club.  It is black letter law that standing is "claim- and relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." *See In re Adobe Sys., Inc. Privacy Litig.*, No. 13-CV-05226-LHK, 2014 WL 4379916, at *10 (N.D. Cal. Sept. 4, 2014);  *see also, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for *each claim* he seeks to press.")

---

[2] *See* Dkt. No. 412, Plaintiffs' Opposition ("Pls.' Opp.").

(emphasis added). Furthermore, there must be "a causal connection between the injury and the conduct complained of...[that is] fairly traceable to the challenged action *of the defendant*. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added). Plaintiffs blatantly ignore these claim- and defendant-specific requirements—presumably because they cannot satisfy them.

Those standing principles are consistently reinforced in wage-and-hour cases, which establish conclusively that in order to have standing to bring a state law wage-and-hour claim, a plaintiff must (i) have an employment relationship with the defendant against whom he brings a claim, and (ii) the claim must be the result of his employment with that defendant while performing work in the state under whose law relief is sought. (*See* Defs.' Br. at 1-2, 5-6[3]; *see, e.g., Perez*, 2015 WL 1887354, at *5; *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008).) Where a wage-and-hour claim has been alleged against multiple defendants, standing must be established with respect to *each Defendant*. (*See* Defs.' Br. at 1, citing *Perez*, at *5.)

Plaintiffs' attempt to gloss over these steadfast requirements by arguing that as long as "one named plaintiff meets the [standing] requirements," then the inquiry shifts to Rule 23 criteria, is a gross distortion of Article III. Plaintiffs fail to cite a single case in which a named plaintiff had standing to sue an entity he never performed services for or under the laws of a state in which he never worked. Plaintiffs' assertion that in *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004), "[t]he court actually acknowledged that it is not necessary for each named plaintiff to have a claim against each named defendant, 'for…standing would be quite difficult to achieve if that were the rule'" (*see* Pls.' Opp. at 6) misstates the court's point, which is that standing—*as to each claim against each Defendant*— need only be satisfied by one named plaintiff (as opposed to every single plaintiff). *See Henry*, 223 F.R.D. at 544. Plaintiffs misconstrue *Henry* and suggest that standing to assert one claim against one Defendant Club confers standing to assert *all* claims against that Club. That is not the law. *Henry* reinforces the point. In that case, Plaintiffs sought unpaid overtime under the FLSA and Nevada law, and the court determined that standing was necessary with respect to *each defendant* for *each claim*; here, standing is necessary for *each* of the

---

[3] *See* Dkt. No. 410, Defendants' Brief ("Defs.' Br.").

state law claims alleged against *each* Defendant Club. *See also Ross*, 542 F. Supp. 2d at 1023 (dismissing state law wage-and-hour claims because the named plaintiffs lacked standing, even though defendant did not contest standing as to plaintiffs' FLSA claims); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2011 WL 2791331, at *9 (D. Colo. July 14, 2011) (same). Plaintiffs have not satisfied—and indeed, cannot satisfy—this requirement with respect to the 124 state law wage-and-hour claims at issue. Those claims, therefore, must be dismissed.[4]

The cases on which Plaintiffs purport to rely are inapposite because none are wage-and-hour class actions. As discussed above, it is black letter law that for a Court to have subject matter jurisdiction over a state law wage-and-hour claim asserted against a particular defendant, there must be a named plaintiff who alleges to have performed work or services in that state for that defendant. None of the cases cited by Plaintiffs involve the standing of a named plaintiff to bring a wage-and-hour class claim against an entity that does not employ him or under the laws of a state in which he never worked or performed services. Plaintiffs instead rely on cases such as consumer, products liability and ERISA class actions that did not involve the kind of standing deficiencies present here, *i.e.*, state law wage-and-hour claims brought against non-employers and under laws of states where Plaintiffs never worked.

The cases discussing the mootness doctrine to which Plaintiffs refer are equally inapplicable. In these cases, it was undisputed that the named plaintiffs had standing at the time of the initial pleading and at the time of the certification analysis with respect to the class claims. Here, the Named Plaintiffs have not, at any time, had standing to bring the 124 claims at issue because they did not (and will never be able to) plead an employment relationship with Defendant Clubs for whom they did not work or the suffering of injuries in states in which they did not perform any

---

[4] The charts annexed to Plaintiffs' opposition memorandum add nothing to the standing inquiry here. Those charts reflect nothing more than the obvious facts that (i) there is at least one Plaintiff who alleges to have worked for each Defendant Club; and (ii) there is at least one Plaintiff who alleges to have worked in each of the eight states whose laws are at issue here. But Defendants have not disputed either of those points. Plaintiffs' charts do not respond in any respect to the standing deficiencies as set forth in Defendants' motion, namely that there must be at least one Plaintiff with standing to assert each of the eight state law causes of action against each Defendant. There is not.

services.  The Named Plaintiffs have not lost standing *after* an identifiable class has been certified—no class has been certified, and they never had standing in the first instance.

## II. HYPOTHETICAL CLAIMS OF ABSENT, UNIDENTIFIED PUTATIVE CLASS MEMBERS CANNOT CONFER STANDING OVER THE 124 STATE LAW WAGE-AND-HOUR CLAIMS FOR WHICH NO NAMED PLAINTIFF ALLEGES AN INJURY AGAINST THE DEFENDANT CLUBS.

Plaintiffs concede that the Named Plaintiffs cannot assert individual claims against Defendant Clubs that did not employ them, or bring state law wage-and-hour claims extraterritorially.  (*See* Pls.' Br. at 11.)  However, Plaintiffs ask this Court to ignore these threshold jurisdictional defects simply because they "believe" that absent class members who ***might*** have standing ***might*** "exist."  (*See* Pls.' Br. at 9-10.)  Where Named Plaintiffs lack standing, which is indisputably the case here, the hypothetical claims of absent class members cannot confer standing and revive Plaintiffs' defective claims.

The Ninth Circuit has explicitly held that a named plaintiff's failure to establish standing cannot be remedied by reliance on the hypothetical claims of putative class members. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (*quoting Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)); *B.C. v. Plumas United Sch. Dist*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("A class of plaintiffs does not have standing to sue if the named plaintiff does not have standing"); *Kirola v. City & Cnty. of San Francisco*, No. C 07-3685 SBA, 2014 WL 6705952, at *38 (N.D. Cal. Nov. 26, 2014) (rejecting plaintiff's argument that threshold inquiry of standing can be "based on evidence of harm sustained by the class").  Because the Named Plaintiffs lack standing to bring the 124 state law claims at issue, the potential claims of unnamed absent putative class members are immaterial to the standing analysis.

Plaintiffs' attempt to remedy their lack of standing by bootstrapping the hypothetical claims of putative class members would be a blatant abuse of the class action mechanism.  Plaintiffs would have the Court rule that as long as an action is styled as a putative class action with multiple

plaintiffs alleging multiple state law claims against multiple defendants, each cause of action does not need to stand on its own against each defendant; rather all plaintiffs would be able to bring ***any and all*** claims against ***any and all*** defendants simply because (and only because) an unnamed absent putative class member may have a cognizable claim at some indeterminate point in time in the future.  That result—that a defendant could be subjected to a multitude of claims in a lawsuit and the attendant burdens, including protracted discovery and motion practice, even where there is not a single plaintiff present who can actually assert that claim against that particular defendant—would undermine the very purpose of the Article III standing doctrine.

For this reason, courts have made it clear that a plaintiff "may not acquire standing through the back door of a class action." *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2006 WL 3041090, at *6 (N.D. Cal. Oct. 24, 2006) (internal quotation marks and citations omitted).  And courts have uniformly applied this principle in the wage-and-hour context.  *See Henry,* 223 F.R.D. at 544 (a plaintiff who lacks Article III standing to sue a defendant may not establish standing through the "back door" of a class action, because standing is a jurisdictional limitation "that cannot be expanded by class action principles."); *Smith*, 2011 WL 2791331, at *9 (holding that plaintiff lacked standing to bring wage-and-hour claims based on the laws of states where plaintiff did not work and refusing to allow plaintiff "to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual suffered an injury under those laws"); *see also Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) *aff'd*, 92 F. App'x 933 (4th Cir. 2004) (if plaintiffs were permitted to "sue a defendant against whom the plaintiff has no claim in a putative class action, on the theory that some member of the hypothetical class, if a class were certified, might have a claim[,]" then plaintiffs would impermissibly "bootstrap [themselves] into standing [they] lack."); *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (same).

Plaintiffs' attempt to use Rule 23 to establish standing in this regard is incompatible with Article III of the U.S. Constitution.

III. **PLAINTIFFS' ATTEMPT TO USE RULE 23 AS A STOP GAP FOR A CONSTITUTIONAL JURISDICTIONAL DEFICIENCY FAILS.**

A. **The Court Should Consider Standing Now.**

Standing is a threshold jurisdictional issue. *Bruce v. United States*, 759 F.2d 755, 757 (9th Cir. 1985). Once the Court determines that the Named Plaintiffs lack standing, its inquiry ends. Without standing, a federal court lacks subject matter jurisdiction and has "no authority to sit in judgment of anything else." *Vermont Agency of Natural Res. v. United States ex rel Stevens*, 529 U.S. 765, 778; *see also Wang v. FMC Corp.* 975 F.2d 1412, 1415 (9th Cir. 1992) ("federal courts have no power to consider claims for which they lack subject-matter jurisdiction"). "Questions of jurisdiction, [therefore], should be given priority," because if a named plaintiff lacks standing, "the court need never reach the class action issue." *Stevens*, 529 U.S. at 778; *Lierboe*, 350 F.3d at 1022 (internal quotation marks and citations omitted); *Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 258 (N.D. Cal. 2012) ("Before deciding on class certification, standing must first be established.").

Because a court cannot reach the issue of whether a class should be certified with respect to a claim over which it lacks jurisdiction in the first place, the Ninth Circuit has long recognized that the standing analysis should be undertaken ***prior*** to class certification. *See Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997), *as amended* (Apr. 16, 1997) (standing "is a jurisdictional element that must be satisfied prior to class certification") (internal quotation marks omitted); *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (holding that district court properly addressed standing before certification).

The overwhelming majority of district courts in the Ninth Circuit, including the Northern District of California, have followed this controlling authority. Notably, one such court recently observed that the "trend" in the district is to consider standing issues at the pleading stage. *See Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13 Civ. 01180 (BLF), 2014 WL 4774611, at *3 (N.D. Cal. Sept. 22, 2014) (dismissing claims for lack of subject matter jurisdiction under the laws of states in which no named plaintiff resided or purchased products and collecting cases in the Northern District of California that have dismissed claims for lack of standing prior to engaging in a class certification analysis); *Harris v. Vector Mktg. Corp.*, No. C-08-5918 EMC, 2010

WL 3743532, at *4 (N.D. Cal. Sept. 17, 2010) (noting that a plaintiff who lacks standing cannot be a class representative, because a named plaintiff's standing is a prerequisite to the certification analysis); *Siemers*, 2006 WL 3041090, at *6 (rejecting plaintiffs' arguments that the court may consider class certification before standing); *see also Morales v. Unilever U.S. Inc.*, 13 Civ. 2213 (WBS), 2014 WL 1389613, at *5 n.5 (E.D. Cal. Apr. 9, 2014) (finding that plaintiffs' argument that courts should defer questions of standing for class certification is "inconsistent with controlling Ninth Circuit precedent").

More to the point, in the wage-and-hour context, Ninth Circuit courts have uniformly considered standing prior to class certification. *See Akaosugi*, 282 F.R.D. at 258 (holding that "before deciding on class certification, standing must first be established" by showing that the defendant is the named plaintiff's "employer" under the applicable law(s)); *Perez*, 2015 WL 1887354, at *5 (rejecting the named plaintiffs' attempt to bring class claims against entities that did not employ them prior to certification analysis, as plaintiffs may only seek redress under federal and state wage-and-hour laws from their employers); *Ross*, 542 F.Supp.2d at 1023 (dismissing named plaintiffs' Washington state law claims because plaintiffs "had no standing to assert on behalf of themselves and other Washington employees any claim for injury" because the named plaintiffs did not work in Washington); *Henry*, 223 F.R.D. at 544 ("[W]hen Article III standing is satisfied…only then will the inquiry shift to a Rule 23 analysis.").[5]

Indeed, Plaintiffs have not identified—and Defendants are not aware of—any court, in the Ninth Circuit or elsewhere, that has deferred analyzing a named plaintiff's standing to bring a wage-

---

[5] Courts in other circuits also consider standing prior to class certification in wage-and-hour class actions. *See, e.g., Jean v. Torrese*, 278 F.R.D. 656, 660 (S.D. Fla. 2011) ("Prior to determining whether a proposed class meets the requirements of Federal Rule of Civil Procedure 23, a district court must first determine whether the class representative has Article III standing to raise the class claims); *Luxama v. Ironbound Exp., Inc.*, No. CIV.A. 11-2224 ES, 2013 WL 3286081, at *9 (D.N.J. June 27, 2013) (finding that court may not defer standing analysis to the class certification stage of the action); *Lucas v. BMS Enters., Inc.*, No. 309-CV-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) (rejecting plaintiffs' argument that standing is an issue for class certification, and ultimately finding that plaintiffs' allegations about putative class members' hypothetical standing are insufficient to confer standing); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590 (CJS), 2006 WL 1704477, at *3 (W.D.N.Y. June 15, 2006) (agreeing that standing will be considered before class certification) (citing *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002)).

and-hour claim against a defendant who never employed him, or under the laws of states in which a named plaintiff did not claim to have worked.[6]

### B. Class Certification Is Not "Logically Antecedent" to Standing In This Case.

Contrary to Plaintiffs' assertion, class certification is not "logically antecedent" to standing in the instant matter. In order to persuade the Court to depart from the general rule that standing be considered before certification, Plaintiffs primarily rely on *In re Carrier IQ Inc.*, No. C–12–md–2330 EMC, 2015 WL 274054 (N.D. Cal. Jan. 31, 2015). First, and as discussed above, *In re Carrier* is not a wage-and-hour class action.

In addition, *In re Carrier*'s case management analysis actually compels dismissal for lack of standing now. The court in *In re Carrier* held that it would analyze standing before class certification in regard to the state law claims for which plaintiffs lacked standing because it did not want to put defendants through the "burden and expense" of discovery relating to those claims "without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws." *Id.* at *13. Although the court deferred the standing analysis as to certain claims, the class certification issues in that consumer class action are fundamentally different from those that will be presented in this wage-and-hour case. Here, deferring the standing question would simply delay the inevitable. Whether the Court addresses Plaintiffs' manifest standing deficiencies now or at class certification, the Named Plaintiffs will never have standing to represent individuals who were employed by different employers and allege injuries under the wage-and-hour laws of eight states. *See* Section I, *supra*.

Moreover, Plaintiffs fail to acknowledge that the "logically antecedent" doctrine is based on an extremely narrow, widely contested, and ultimately inapplicable exception. *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465 (S.D.N.Y. 2013) (finding the "logically antecedent" holding

---

[6] The sole wage-and-hour case Plaintiffs cite is an out-of-Circuit decision in *Winfield v. Citibank, N.A.*, 842 F.Supp.2d 560 (S.D.N.Y. 2012). That case, however, involves a unique and hotly contested issue regarding whether former employees of a defendant may bring a claim for injunctive relief. The ultimate determination of that issue turns on whether plaintiffs are seeking reinstatement. Here, the standing defects are much more fundamental and profound, as the Named Plaintiffs assert claims against defendants with whom they do not have—and never did have—any employment relationship at all.

to be an "exception to the usual rule that a court must confirm that it has jurisdiction over a plaintiff at the outset of a case.").

The few courts that have applied this narrow exception have done so in very limited circumstances not present here.  For example, in *Taylor v. Enter. Rent-A-Car Co.*, No. CV 10-1849-JST SHX, 2011 WL 1195898, at *1 n.1 (C.D. Cal. Mar. 30, 2011), the court held that the exception should *not* be interpreted to allow a court to "postpone a review of a plaintiff's Article III standing until the class-certification stage"— but that is exactly what Plaintiffs would have the Court do here.  In *Kassman*, 925 F. Supp. 2d at 465, the court found that the exception should *not* apply when the standing of named plaintiffs is in question—as it is here.  In *Smith*, 2011 WL 2791331, at *7-8, the court found that the exception should *not* apply where standing of the named plaintiffs to bring claims under the laws of various states is initially contested before certification—here, standing is contested before class certification because the Named Plaintiffs themselves do not have standing, and that deficiency can never be cured.

For these reasons, the limited exception to the rule of analyzing standing prior to class certification is inapplicable here.

### C. Defendants Would Be Extraordinarily Burdened If The Court Deferred Consideration Of Plaintiffs' Lack of Standing to Bring 124 State Law Claims In This Lawsuit.

Evaluating standing now, prior to class certification, would permit the orderly and efficient development of the case by streamlining the scope of discovery and the issues for class certification. The *Manual for Complex Litigation* (Fourth Edition), § 21.11, recognizes the importance of defining the scope of the action in the class action context "at an early stage in the case":

> Whether a class is certified and how its membership is defined affects case management as well as outcome.  Certification and class membership determine not only the stakes involved, but also the scope and timing of discovery and motion practice, the structure of trial and methods of proof, and the length and cost of the litigation.

Accordingly, the *Manual* notes that judges should decide motions challenging jurisdiction and failure to state a claim, which may alter or modify the scope of a putative class, before certification.  *See id.*

In their jointly filed case management plan, the parties also recognized that "[t]he legal issues in dispute will drive the scope of discovery." (*See* Dkt. No. 178, at p. 8.) Resolving the Complaint's clear jurisdictional deficiencies would alleviate expensive and burdensome discovery for each Defendant Club where it can and should be avoided. Under Plaintiffs' flawed approach, every Defendant Club would be forced to produce (and seek) discovery based on speculative claims lodged against them, which carry varying limitations periods, statutory exemptions, and legal standards—where no Named Plaintiff has standing to bring the claim against that Defendant Club in the first place. Practically speaking, discovery would be expanded several years in many instances for the Defendant Clubs, increasing drastically the scope of Defendants' discovery obligations. In this respect, it bears most significant emphasis that Plaintiffs are seeking voluminous documents and a multitude of information relating to hundreds of minor league players each year for each Defendant Club. To be sure, the burden and expense of collecting, storing, reviewing and producing the electronically stored information that is sought in this case cannot be overstated. By resolving the standing deficiencies now, the Court will appropriately narrow tailor discovery to each state wage-and-hour claim that is properly alleged, in a manner that promotes judicial efficiency and economic case management.

Plaintiffs' approach should be rejected not only because it delays the inevitable standing analysis, but also because it is a transparent attempt by Plaintiffs to find additional minor league players who *do* have standing. The court in *In re Wellbutrin XL Antitrust Litigation*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) expressly rejected this tactic, holding that plaintiffs cannot allege hypothetical injuries spanning various states and rejected their proposal to represent parties whose injuries they would not share because "that would present the precise problem that the limitations of standing seek to avoid. The Court will not indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced with the same problem months down the road." *Id.* The same is true here, as Plaintiffs readily admit that the Court will be compelled to evaluate standing with respect to these claims at some point in the case, either now or after certification is decided. (*See* Pls.' Opp. at 8.) And if the Rule 23 classes are not certified, an identical standing analysis for each

state law wage-and-hour claim will still have to take place with respect to the Named Plaintiffs, but after burdensome discovery and additional motion practice have already occurred. Thus, the Court must inevitably grapple with Article III standing as it relates to every Defendant and every claim at some point in this case. Doing so now would avoid unnecessary delays after certification and prior to the conclusion of fact discovery, and would prevent the waste of valuable resources of the Court and the parties. Accordingly, because Named Plaintiffs lack standing – and the hypothetical claims of absent putative class members can never cure that defect – standing should be considered now.

### IV. DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' IMPLAUSIBLE WAGE-AND-HOUR CLAIMS SHOULD ALSO BE GRANTED PURUSANT TO FED. R. CIV. P. 12(b)(6).

#### A. Plaintiffs' State Law Claims Fail Because They Do Not Allege An Employment Relationship With All Defendant Clubs Under All State Laws.

Defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) has been appropriately filed and should be granted. Even if the Court breaks with long-standing precedent and defers the standing analysis to class certification, Plaintiffs' state law wage-and-hour claims must still be dismissed because they do not allege any facts whatsoever suggesting that there is an employment relationship with **all** Defendant Clubs under **all** state laws. (*See* Defs.' Br. at 17-18.) In order for a plaintiff to assert a legally cognizable claim under a state's wage-and-hour law, he must allege to have performed work or services ***in that state for that defendant***. (*See id.* at 1, citing *Perez*, 2015 WL 1887354, at *5.) Plaintiffs' failure to plead an employment relationship— much less a plausible one—or an injury suffered in a particular state while working for a particular employer, is fatal to the 124 state law wage-and-hour claims at issue here. (*See id.* at 17-18; *see also Coalition for Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152, 1158 (E.D. Cal. 2010) (dismissal is appropriate "where the complaint lacks sufficient facts to support a cognizable legal theory"). Accordingly, Plaintiffs' claims should be dismissed for failure to state a plausible claim.

#### B. Plaintiffs' Time-Barred Claims Cannot Relate Back To The Original Complaint Filed Against Only Three Defendant Clubs.

Defendants identified a variety of instances in their moving brief where standing cannot be conferred based on untimely claims. (*See, e.g.,* Defs.' Br. at 8-13.) In response, Plaintiffs attempt to

"relate back" a mere two of the 124 claims[7] at issue here, alleged against Defendant Clubs (the Milwaukee Brewers and the New York Mets) that were added to the case by amendment to the original complaint that was filed against only three *different* Defendant Clubs (the Miami Marlins, the San Francisco Giants, and the Kansas City Royals). (*See* Pls.' Br. at 12.) However, relation-back is not appropriate here – where new Defendants, rather than just new claims,[8] were added to the Complaint. *See Gustason v. Wash. State Dep't of Soc. & Health Servs.,* No. CV05-5117RBL, 2006 U.S. Dist. LEXIS 27979, *5 (W.D. Wash. Apr. 26, 2006) (holding that "[t]o warrant application of [the relation back] doctrine, Plaintiffs must demonstrate that they 'made a mistake of identity in failing to sue [the newly-added defendant].'") (*quoting Louisiana-Pacific. Corp v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993)); *see also Haley v. Cohen & Steers Capital Mgmt.*, 2011 U.S. Dist. LEXIS 142532, *2 (N.D. Cal. Dec. 12, 2011) (noting that "[a]n amended complaint that adds a new defendant generally does ***not*** relate back to the filing of the original complaint.") (emphasis in original).

### C.    Defendants' Motion To Dismiss Was Timely Filed, And Can Also Be Decided Under The "Functionally Identical" Standard of Fed. R. Civ. P. 12(c).

Defendants' motion to dismiss was timely, as it was filed simultaneously with their Answers to the Complaint.[9] *See United States Fid. & Guar. Co. v. Bank of Bentonville*, 29 F. Supp. 2d 553, 555 (W.D. Ark. 1998) (noting that "'should defendant file a Rule 12(b) motion simultaneously with his answer, the court will view the motion has having preceded the answer and thus as having been interposed in timely fashion'") (*quoting* 5A Charles A. Wright & Arthur R. Miller, Federal Practice

---

[7] If relation-back was even appropriate here, which it is not, its application would only affect the following two claims at issue: (i) Plaintiff Omar Aguilar's California claims against the Milwaukee Brewers based on alleged "work" performed during the 2010 offseason, and (ii) Plaintiff Nick Giarraputo's California claims against the New York Mets based on alleged "work" performed during the 2010 offseason. (*See* Defs.' Br. at 12-13.)

[8] *See* Pls.' Br. at 12, *citing Mazzei v. Regal Entert'n Group*, No. SACV 13-1284-DOC, 2013 WL 6633079, at *7-8 (C.D. Cal. Dec. 13, 2013).

[9] Plaintiffs rely on a hyper-technical application of Fed. R. Civ. P. 12(b)(6) that is inapplicable here (*see* Pls.' Br. at 10). In order to ensure that both the motion to dismiss and 23 Answers—which were each 85 or more pages and contained over 750 paragraphs—were timely filed on May 29, Defendants undertook the filing process of all documents simultaneously. The precise timing of when Defendants' motion to dismiss and Answers appeared on the case docket is purely a function of the electronic filing system.

and Procedure § 1361 at 445 (2d ed. 1990)); *see also Nat'l Voice Communs., Inc. v. Fed. Transtel, Inc.,* No. 3:01-CV-0089-M, 2001 U.S. Dist. LEXIS 5455 (N.D. Tex. Apr. 30, 2001) (same). Further, Plaintiffs offer no legal authority—and Defendants are unaware of any—that precludes Defendants from seeking to dismiss an amended pleading, even after the original complaint was filed more than a year earlier. Thus, Defendants' motion to dismiss is properly before the Court.

Even assuming *arguendo* that the pleadings closed at the moment the answers were filed, Defendants' motion to dismiss may be treated as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See Gutierrez v. Chung*, No. 1:12-CV-01854-LJO, 2013 WL 655141, at *2 (E.D. Cal. Feb. 21, 2013) ("The standard governing a Fed. R. Civ. P. 12(c) motion is essentially the same as that governing a Fed. R. Civ. P. 12(b)(6) motion.") (internal citation omitted). Defendants' motion to dismiss should thus be granted whether viewed as one under Fed. R. Civ. P. 12(b)(6) or 12(c).

V. **PLAINTIFFS SHOULD NOT BE GRANTED LEAVE TO AMEND BECAUSE THE COMPLAINT CANNOT BE CURED BY RE-PLEADING.**

As set forth in Defendants' opening brief, Plaintiffs should not be permitted, at this stage of the litigation, to file a ***sixth*** version of the Complaint. (*See* Defs.' Br. at 18-19.) During the Court-ordered meet-and-confer session prior to the filing of Defendants' amended motion to dismiss, which lasted approximately ten minutes, Plaintiffs steadfastly refused to amend their pleadings in any respect whatsoever. They further declined Defendants' request that they provide any legal authority in support of their standing theory, on the grounds that the purpose of the meet-and-confer was not to preview their opposition. (*See* Lupion Decl., ¶¶ 28-32, Dkt. No. 410-1.) Moreover, Plaintiffs have failed to offer the Court a compelling reason for them to be rewarded with ***another*** opportunity to amend the Complaint. The Court should decline Plaintiffs' request for leave to amend, particularly where the Court has already granted Plaintiffs' requests to do so. *See, e.g., In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1111 (N.D. Cal. 2003).

In any event, the deficiencies highlighted by the instant motion cannot be resolved through re-pleading. Indeed, this is not a case where the Complaint's defects can be cured by adding

additional allegations or more specific facts.  Rather, the only way to salvage the Complaint is for Plaintiffs to add new parties – specifically, current or former minor league players who allege respective employment relationships with **each of the Defendant Clubs** concerning the 124 state law claims at issue.  Having such Plaintiffs is constitutionally required for the case to proceed as to all state law claims against all Defendant Clubs.  Even if Plaintiffs were somehow able to resolve the defects manifest in the Complaint, this would unduly delay the progress of the case, holding discovery and upcoming motion practice in limbo.  It would also require Defendants to file 23 Answers in response to yet **another** Complaint containing hundreds of additional paragraphs of allegations, which is far from an insignificant endeavor.  (*See also* n. 9, *supra*.)

## CONCLUSION

As demonstrated above, (i) this Court lacks subject matter jurisdiction with respect to 124 state law causes of action asserted in the Complaint against the Defendant Clubs because the Named Plaintiffs lack standing to bring such claims, and (ii) Plaintiffs fail to allege facts sufficient to state cognizable claims with respect to the same 124 state law causes of action.  Accordingly, Defendants respectfully request that the Court grant the instant amended motion in its entirety and dismiss from this case the specific state law claims against the particular Defendant Clubs, as set forth in Defendants' Proposed Order filed on May 29, 2015.  (Dkt. No. 410-3.)

Dated:  June 19, 2015

PROSKAUER ROSE LLP
ELISE M. BLOOM (*pro hac vice*)
HOWARD L. GANZ
NEIL H. ABRAMSON (*pro hac vice*)
ADAM M. LUPION (*pro hac vice*)
ENZO DER BOGHOSSIAN

By:   */s/ Elise M. Bloom*

Elise M. Bloom

*Attorneys for Defendants*