UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AARON SENNE, et al.,

        Plaintiffs,

    v.

KANSAS CITY ROYALS BASEBALL
CORP., et al.,

        Defendants.

Case No. 14-cv-00608-JCS

Related Case No. 14-cv-03289-JCS

**ORDER DENYING AMENDED
MOTION TO DISMISS THE SECOND
CONSOLIDATED AMENDED
COMPLAINT IN PART FOR LACK OF
SUBJECT MATTER JURISDICTION
AND FOR FAILURE TO STATE A
CLAIM**

Re: Dkt. No. 410

## I.     INTRODUCTION

Plaintiffs in this putative class action are former Minor League baseball players who assert claims under the federal Fair Labor Standards Act ("FLSA") and various state wage and hour laws against Bud Selig (the former Commissioner of Baseball), the Office of the Commissioner of Baseball doing business as Major League Baseball ("MLB") and MLB's member franchises. The Court dismissed eight MLB franchises for lack of personal jurisdiction in its May 20, 2015 Order, leaving twenty-two franchises in the case as defendants (the "Franchise Defendants"). Presently before the Court is the Franchise Defendants' Motion to Dismiss the Second Consolidated Amended Complaint in Part for Lack of Subject Matter Jurisdiction and for Failure to State a Claim ("Motion"). The parties have consented to the jurisdiction of the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was held on Friday, July 10, 2015 at 9:30 a.m. For the reasons stated below, the Motion is DENIED.

## II. BACKGROUND

### A. Procedural Background

The original complaint in this putative class action was filed on February 7, 2014. Docket No. 1. After Defendants filed motions to dismiss for lack of personal jurisdiction and to transfer the action to Florida, the Court granted Plaintiffs' request for leave to conduct jurisdictional and venue discovery. Docket No. 144. While Plaintiffs were conducting that discovery, the Court consolidated the case with a later-filed action, Case No. C-14-3289. Docket No. 235. A Class Action Consolidated Amended Complaint was filed on October 24, 2104. Docket No. 243. Defendants were permitted to file amended motions challenging personal jurisdiction and venue with reference to the Class Action Amended Complaint and those motions were heard on February 13, 2015.

At the February 13, 2015 hearing, the Court gave Plaintiffs leave to file a proposed amended consolidated complaint to cure (if they could) possible defects relating to personal jurisdiction. Following the February 13, 2015 motion hearing, Plaintiffs filed a proposed Second Consolidated Amended Complaint ("SCAC") and the parties filed additional briefs addressing Defendants' challenges to personal jurisdiction with reference to the proposed SCAC. On May 20, 2015, the Court denied Defendants' request to transfer the action to Florida and granted in part and denied in part the motions to dismiss for lack of personal jurisdiction, dismissing eight of the thirty franchises from the action. Docket No. 379. It also granted Plaintiffs leave to file the SCAC, which was filed on the same day.

In the meantime, in the months of April and May of 2015, the parties met and conferred to resolve discovery disputes as they moved towards the class certification stage of the case. *See* Declaration of Adam Lupion in Support of Amended Motion to Dismiss the Second Consolidated Amended Complaint in Part for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Lupion Decl."), ¶¶ 6-28. In the course of those efforts, it became clear that the parties had a fundamental disagreement as to whether Plaintiffs could assert *each* of their state law claims against *each* of the franchises (Plaintiffs' position) or rather, whether Plaintiffs could only assert state law claims where a named plaintiff claimed to have performed work for a particular franchise

United States District Court
Northern District of California

in that particular state (Defendants' position).  *See id.*

On May 18, 2015, just before the Court issued its order addressing personal jurisdiction and venue, the franchises filed a motion to dismiss challenging Plaintiffs' standing to assert claims under the laws of states where no named Plaintiff was alleged to have performed work for that particular defendant and asserting that these claims also failed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Docket No. 376.  That motion addressed the operative complaint at the time, the Class Action Consolidated Amended Complaint, Docket No. 243.  When further meet-and-confer efforts failed, the Franchise Defendants (that is, the twenty-two franchises that remained in the case after the Court's May 20, 2015 Order) filed the instant motion, which brings the same challenges as the previous motion but is amended to address the SCAC.

### B.    SCAC

In the SCAC, as in the previous complaints in this action, Plaintiffs allege that MLB and the Franchise Defendants failed to pay the players minimum wage or required overtime pay and sometimes failed to pay wages at all.  SCAC ¶¶ 568-740.  Plaintiffs assert two claims under the FLSA.  *Id*. ¶¶ 568-580.  In addition, they assert thirty-one claims as Rule 23 class claims under the wage and hour laws of eight states: California, Florida, Arizona, North Carolina, New York, Pennsylvania, Maryland and Oregon.  *Id*.  Plaintiffs propose eight classes that correspond to the states whose laws are invoked.  *Id*. ¶¶ 103-121.  Plaintiffs allege, on information and belief, that "all Defendants employed and continue to employ minor leaguers in each of the states enumerated in the Proposed Classes during the relevant time periods . . . [and] that each of the Defendants violated the laws in each of the states enumerated in the Proposed Classes due to uncompensated winter off-season work and/or work performed during other portions of the year."  *Id*. ¶ 582;  *see also* Complaint for Violations of Federal and State Wage and Hour Laws, Docket No. 1, ¶ 177 (same).

For each of the classes, there are named Plaintiffs who seek to serve as class representatives on the basis of allegations that they were not adequately compensated for work performed in that state.  *See id*. ¶ 105 (listing 26 named Plaintiffs who seek to represent the California Class); ¶ 108 (listing 29 named Plaintiffs who seek to represent the Florida Class); ¶

110 (listing 25 named Plaintiffs who seek to represent the Arizona Class); ¶ 112 (listing two named Plaintiffs who seek to represent the North Carolina Class); ¶ 114 (listing nine named Plaintiffs who seek to represent the New York class); ¶ 116 (listing four named Plaintiffs who seek to represent the Pennsylvania Class); ¶ 118 (listing two named Plaintiffs who seek to represent the Maryland class); ¶ 120 (listing three named Plaintiffs who seek to represent the Oregon Class); *see also* Plaintiffs' Opposition to Defendants' Amended Motion to Dismiss the Second Consolidated Amended Complaint in Part for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Opposition), Appendix, Chart 2 (States and Corresponding Plaintiffs). In addition, at least one named Plaintiff alleges that he worked for each of the Franchise Defendants. SCAC ¶¶ 203-567; *see also* Opposition, Appendix, Chart 1 (Defendants and Corresponding Plaintiffs).

### C. Contentions of the Parties

#### 1. The Motion

The Franchise Defendants ask the Court to dismiss certain state law causes of action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the basis that Plaintiffs lack standing as to these claims and/or that they fail to state a claim. Motion at 1. Both arguments are based on the same premise, namely, that in order to have standing to assert a claim against a particular defendant under a particular state's law - or to state such a claim under Rule 12(b)(6) - there must be a named Plaintiff who is alleged to have performed work for that defendant in that state. *Id*. (citing *Perez v. Wells Fargo & Co*., Case No. C-14-0989 PJH, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015)).  According to the Franchise Defendants, many of Plaintiffs' state law claims fail because while Plaintiffs purport to assert all of the state law claims against all of the Franchise Defendants, there is no named Plaintiff who is alleged to have performed work for some of the franchises in some of those states.  *Id*. at 4.

The Franchise Defendants contend standing is a threshold jurisdictional question and that where it is lacking, the court lacks subject matter jurisdiction over the action. *Id*. (citing *Bruce v. United States*, 759 F.2d 755, 757 (9th Cir. 1985); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1172 (9th Cir. 2013)). Further, standing must be resolved *prior* to class certification, according to the

Franchise Defendants. *Id*. at 5 (citing *Lee v. State of Or*., 107 F.3d 1382, 1390 (9th Cir. 1997)). Indeed, the fact that a suit is brought as a class action "adds nothing to the question of standing," they argue, because "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong and which they purport to represent." *Id*. (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) and citing *B.C. v. Plumas Unified Sch*. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999)).

The Franchise Defendants argue that in the wage and hour context, a plaintiff has standing only if "that plaintiff: i) has an employment relationship with the defendant against whom he brings the claim; and ii) pleads that he was injured during and as a result of his employment with that defendant while performing work in the state at issue." *Id*. In a case involving multiple defendants, the Franchise Defendants assert, a plaintiff must "plead facts showing standing as to each defendant, including alleging that he was injured by each such defendant." *Id*. (quoting *Perez*, 2015 WL 1887354, at *5 and citing *Henry v. Circus Circus Casinos*, 223 F.R.D. 541, 544 (D. Nev. 2004)). The Franchise Defendants argue that Plaintiffs lack standing as to certain claims because: 1) "Named Plaintiffs, who claim they worked in a particular state and purport to represent a putative state law class on that basis, assert claims under that state's laws against *all* Defendant Clubs;" and 2) "Named Plaintiffs, who claim that they work for a particular Defendant Club, do not allege that they worked in the particular state whose wage-and-hour laws they seek to invoke, on behalf of themselves and a putative class." *Id*. at 7 (emphasis in original).

In addition, as to some of the claims, the Franchise Defendants assert there is no standing because the claims of one or more named Plaintiff are untimely. *See id*. at 8 (asserting claim against Cincinnati Reds under North Carolina law is untimely), 9 (asserting claim against Detroit Tigers under New York law and claim against Houston Astros under California law are untimely), 10 (asserting claim against Kansas City Royals under North Carolina law is untimely), 11-12 (asserting claims against Milwaukee Brewers under Arizona, California and North Carolina law are untimely), 13 (asserting claims against New York Mets under California law  and against the New York Yankees under New York law are untimely), 14 (asserting that all claims against the

1  Oakland Athletics by named Plaintiff Joseph Newby are untimely and that claims against Pittsburg

2  Pirates under North Carolina law are untimely), 15-16 (asserting that claim against Seattle

3  Mariners under California law is untimely).

4      On these grounds, the Franchise Defendants contend the following claims should be

5  dismissed for lack of standing:

6      1) **Arizona Diamondbacks**:  Claims asserted under Florida, Maryland, New York, North

7  Carolina, Oregon and Pennsylvania state law.

8      2)  **Chicago Cubs**: Claims asserted under California, Maryland, New York, North

9  Carolina, Oregon and Pennsylvania state law.

10      3) **Cincinnati Reds**:  Claims asserted under Maryland, New York, North Carolina, Oregon

11  and Pennsylvania state law.

12      4)  **Colorado Rockies**:  Claims asserted under Florida, Maryland, Oregon and

13  Pennsylvania state law.

14      5) **Detroit Tigers**:  Claims asserted under Arizona, Maryland, New York, North Carolina

15  and Oregon state law.

16      6) **Houston Astros**:  Claims asserted under Arizona, California, Maryland, North Carolina,

17  Oregon, and Pennsylvania state law.

18      7) **Kansas City Royals**: Claims asserted under California, Florida, Maryland, New York,

19  North Carolina, Oregon and Pennsylvania state law.

20      8)  **Los Angeles Angels of Anaheim**: Claims asserted under Florida, Maryland, New

21  York, North Carolina, Oregon and Pennsylvania state law.

22      9) **Los Angeles Dodgers**:  Claims asserted under California, Florida, Maryland, New

23  York, North Carolina, Oregon and Pennsylvania state law.

24      10) **Miami Marlins**: Claims asserted under Arizona, California, Maryland, Oregon and

25  Pennsylvania state law.

26      11) **Milwaukee Brewers**:  Claims asserted under California, Maryland, New York, North

27  Carolina, Oregon and Pennsylvania law.

28      12) **Minnesota Twins**:  Claims asserted under Arizona, Maryland, New York, North

Carolina, Oregon and Pennsylvania state law.

13) **New York Mets**:  Claims asserted under Arizona, California, Maryland, North Carolina, Oregon and Pennsylvania state law.

14) **New York Yankees**:  Claims asserted under Arizona, Maryland, New York, North Carolina, Oregon and Pennsylvania state law.

15) **Oakland Athletics**:  Claims asserted under Florida, Maryland, New York, North Carolina, Oregon and Pennsylvania law.

16) **Pittsburg Pirates:**  Claims asserted under Maryland, New York, North Carolina and Oregon state law.

17) **San Diego Padres**:  Claims asserted under Florida, New York, North Carolina, Oregon and Pennsylvania law.

18) **San Francisco Giants**:  Claims asserted under Florida, Maryland, New York, North Carolina and Pennsylvania law.

19) **Seattle Mariners**:  Claims asserted under Florida, Maryland, New York, North Carolina, Oregon and Pennsylvania law.

20) **St. Louis Cardinals**:  Claims asserted under California, Maryland, New York, North Carolina, Oregon and Pennsylvania law.

21) **Texas Rangers**:  Claims asserted under Florida, Maryland, New York, North Carolina, Oregon and Pennsylvania law.

22) **Toronto Blue Jays**:  Claims asserted under Arizona, Maryland, North Carolina, Oregon and Pennsylvania law.

*Id*. at 7-17.

As an additional ground for dismissing the claims listed above, the Franchise Defendants invoke Rule 12(b)(6) of the Federal Rules of civil Procedure, arguing that because Plaintiffs do not allege an employment relationship with all of the franchises in all of the states whose laws are invoked they do not state claims that are "plausible on [their] face."  *Id*. at 17 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, the Franchise Defendants argue that Plaintiffs should not be given another

opportunity to amend their complaint as Plaintiffs have not suggested during the parties' meet-and-confer efforts that the defects as to standing can be cured. *Id*. at 19. Therefore, the Franchise Defendants assert, any effort to amend would be futile. *Id*. They further contend leave to amend should be denied because Plaintiffs have already been given several opportunities to amend their complaint. *Id*.

### 2. Opposition

Plaintiffs assert that there is subject matter jurisdiction as to all of their claims because each of the named Plaintiffs has alleged an injury in fact sufficient to establish standing and each of the Franchise Defendants is alleged to have injured at least one named Plaintiff. Opposition at 1 (citing *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,560 (1992)). Plaintiffs further assert that the Franchise Defendants' challenges under Rule 12(b)(6) are "belated and procedurally improper." *Id*. Further, as to both the standing arguments and the Rule 12(b)(6) challenges, Plaintiffs contend that Franchise Defendants "conflate classic Rule 23 certification inquiries with pleading inquiries, and they grossly misinterpret the allegations of the complaint in doing so." *Id*.

Plaintiffs argue that in a class action, standing under Article III of the U.S. Constitution is satisfied so long as one named plaintiff meets the requirements set forth in *Lujan*. *Id*. at 3 (citing *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). In particular, *Lujan* requires that a plaintiff must have suffered "1) an injury-in-fact, 2) that is traceable to the conduct complained of, and 3) that is capable of being redressed." *Id*. (citing *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 1136, 1139 (9th Cir. 2014) (citing *Lujan*, 504 U.S. at 560-561)). There is no dispute, Plaintiffs contend, that each and every named Plaintiff in this action satisfies these requirements. *Id*. Plaintiffs also point out that the Franchise Defendants do not argue - and cannot argue - that any of them should be dismissed for lack of standing against them (as they admit that at least one named Plaintiff has asserted a claim against each of the Franchise Defendants) or that any claim should be dismissed in its entirety for lack of standing (as they admit that for each state law at issue, at least one named Plaintiff has a claim). *Id*. at 4.

Because all of the named Plaintiffs have standing and all of the Franchise Defendants are

properly in the case, Plaintiffs argue, the Franchise Defendants' challenge is an issue of class certification under Rule 23, that is, "whether Plaintiffs will ultimately be able to represent a class of workers under a particular state's law." *Id.* (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998)). Plaintiffs cite the Supreme Court's decision in *Sosna v. Iowa*, in which "the Supreme Court . . . stated, once a named plaintiff establishes individual standing, the examination shifts 'from the elements of justiciability to the ability of the named representatives to fairly and adequately protect the interests of the class.'" *Id.* at 5 (quoting *Sosna*, 419 U.S. 393, 403 (1975)). They also point to a leading treatise on class actions, Newberg on Class Actions, which states that "when a class plaintiff shows individual standing, the court should proceed to Rule 23 criteria to determine whether and to what extent, the plaintiff may serve in a representative capacity on behalf of the class." *Id.* (quoting William B. Rubenstein, Newberg on Class Actions § 2.6 (5th ed.)).

The threshold standing requirements are met here, Plaintiffs assert, because each named Plaintiff has suffered an injury, thus satisfying the requirements of subject matter jurisdiction. *Id.* Plaintiffs argue that the Franchise Defendants' argument to the contrary is based on their improper reliance on "a line of cases debating a class representative's ability to represent a state class when *no plaintiff* has standing under that state's laws." *Id.* (emphasis in original). Thus, for example, in *Henry v. Circus Circus Casinos, Inc.*, "*no named plaintiffs* had standing *at all* against some of the defendants, so those defendants were not properly in the case." *Id.* at 6 (citing *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 544 (D. Nev. 2004) (emphasis in original)). Plaintiffs distinguish *Ross v. U.S. National Bank Ass'n* on similar grounds, namely, that "no named plaintiff worked in Washington at all, so no proposed class representative had standing to bring a claim under Washington law." *Id.* at 7 (citing *Ross v. U.S. National Bank Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008) (Illston, J.)). Plaintiffs distinguish *Perez v. Wells Fargo and Co.* on the ground that in that case "the plaintiffs failed to allege that any of the five defendants employed him, so the injuries were not traceable to any defendant." *Id.* (citing *Perez v. Wells Fargo and Co.*, 2015 WL 1887354, at *5).

According to Plaintiffs, so long as there is threshold standing, the proper approach to

9

challenges such as those raised by the Franchise Defendants is to address them under Rule 23, when the Court considers whether the claims of the class representatives are typical of the claims of the proposed classes. *Id*. at 5. This approach is illustrated in consumer class actions, they assert, in which courts in this district have found that the better practice is to focus on Rule 23 requirements once threshold standing is demonstrated. *Id*. Thus, in *Donahue v. Apple*, *Inc.,* the court found that the named plaintiff in a purported class action had standing to assert claims based on iPhone models other than the one he had purchased and that Apple's standing argument "boil[ed] down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, issues that are better resolved at the class certification stage." *Id*. (quoting *Donahue v. Apple, Inc*., 871 F. Supp. 2d 913, 923 (N.D.Cal. 2012) (Whyte, J.)). Plaintiffs also cite *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 624 (N.D. Cal. 2013) (Grewal, J.), in which the court found that "named plaintiffs must show only individual standing for their own claims and courts should then determine whether they may represent similar but not identical injuries by putative class members." Similarly, Plaintiffs contend, Judge Grewal found in *Trazo v. Nestle U.S.A., Inc*., that "standing 'is merely a threshold inquiry' looking at whether the named plaintiff suffered an injury, and deferring 'questions of sufficient similarity to the class certification stage.'" *Id*. at 5-6 (quoting *Trazo*, Case No. C-12-2272 PSG, 2013 WL 4083218, at *4 (N.D. Cal. Aug. 9, 2013)). Finally, Plaintiffs quote Judge Tigar, who noted in *Clancy v. The Bromley Tea Company*, that "[t]ransmogrifying typicality or commonality into an issue of standing would undermine the well-established principles that in a class action, standing is satisfied if at least one named plaintiff meets the requirements and that the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Id*. (quoting *Clancy v. The Bromley Tea Company*, Case N. C-12-3003 JST, 2013 WL 4081632, at *5 (N.D. Cal. Aug. 29, 2013) (internal quotations and citations omitted)).

Even if the Court concludes that there is an issue of standing as to the claims identified by the Franchise Defendants in the Motion, this question should be addressed *after* class certification, Plaintiffs contend, "because class certification logically antecedes any of Defendants' purported standing concerns . *Id.* at 7 (citing *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 831 (1999) (citing

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)).  According to Plaintiffs, class certification is "logically antecedent to Article III standing where the standing concerns 'would not exist but for the class-action certification.'"  *Id*. (quoting *Jepson v. Ticor Title Ins. Co*., Case No. C-06-1723 JCC, 2007 WL 2060856, at *1 (W.D. Wash. May 1, 2007)).  Further, once the class is certified, Plaintiffs assert, the Court can assess standing with reference to the members of the class, both named and unnamed.  *Id*. (citing *Bates*, 511 F.3d at 987; *Payton v. Cnty. of Kane*, 308 F.3d 673, 680-81 (7th Cir. 2002); *Jepson*, 2007 WL 2060856, at *1-2).  Thus, in *Jepson*, they argue, class certification logically anteceded standing because if certified, putative class members would have standing to assert non-Washington claims even though the named Plaintiff did not have standing to assert those claims.  *Id*. at 10 (citing *Jepson*, 2007 WL 2060856, at *1-2).

Plaintiffs argue that courts in this District have followed this approach, finding that "where there is threshold standing for each named plaintiff, ordering the adjudication process so as to address who cognizable parties are in the case ( i.e., whether unnamed class members have legal status) before addressing standing does no violence to Article III." *Id*. at 8 (quoting *In re Carrier IQ, Inc.*, Case No. C-12-MD-2330 EMC, 2015 WL 274054, at *12 (N.D. Cal., Jan. 21, 2015)). According to Plaintiffs, in *in re Carrier I.Q., Inc.*, a case in which the plaintiffs asserted privacy claims against several phone manufacturers under the laws of 35 states, the defendants made two arguments relevant to the instant Motion: 1) that the named plaintiffs could not assert state law claims where no plaintiff resided; and 2) that each named plaintiff could only assert claims against the manufacturer of the device purchased by that named plaintiff.  *Id*.  Judge Chen "recognized that each of these questions could be deferred until class certification" and "found that when plaintiffs alleged claims in states where *no plaintiffs* purchased devices (i.e., no plaintiff had a personal claim), it should make the standing determination at the pleading stage to streamline the litigation." *Id*. (citing 2015 WL 274054, at *13).  On the other hand, the court deferred until after class certification the question of whether the plaintiffs could "sue under their own laws Device Manufacturers from whom other named Plaintiffs bought devices." *Id*. at 9 (quoting 2015 WL 274054, at *14). Similarly, Plaintiffs argue, if the Court finds that there is a standing issue that must be addressed as to Plaintiffs' claims, it should defer addressing them until after class

11

certification.

Plaintiffs also reject the challenges brought by the Franchise Defendants under Rule 12(b)(6). First, Plaintiffs argue that the challenges are untimely because the Franchise Defendants have already filed answers to the SCAC and indeed, their answers to the original complaint were filed more than a year ago. *Id*. at 10. Plaintiffs further contend the arguments of the Franchise Defendants under Rule 12(b)(6) lack merit. In particular, Plaintiffs argue, the allegations in the SCAC make clear that the named Plaintiffs are not seeking to assert *individual* claims against every single franchise Defendant or that individual Plaintiffs are seeking to assert claims extraterritorially. *Id*. at 11. Rather, the SCAC alleges the named Plaintiffs are seeking to represent similarly situated class members who worked in the same state for other franchises *if the class is certified*. *Id*. In other words, the Franchise Defendants are challenging class claims, Plaintiffs assert. *Id*. The scope of the class, however, is a question that is appropriately addressed at the class certification stage of the case, according to Plaintiffs. *Id*. (citing *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245-46 (C.D. Cal. 2011)).

Plaintiffs reject the statute of limitations arguments raised by the Franchise Defendants, arguing that all of their claims relate back to the date the original complaint was filed and further, that Plaintiffs' claims may be subject to equitable tolling because "it is quite possible . . . that putative class members had no notice of their ability to bring claims." *Id*. at 12 (citing *Yu G. Ke. v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258-59 (S.D.N.Y. 2008)). Plaintiffs argue that "[a]t a minimum, the Court requires further evidence to fully address the issue at summary judgment." *Id*. Plaintiffs also reject an argument, contained in a footnote in the Motion, that Plaintiffs did not sufficiently plead claims for performing required winter training work without pay. *Id*. Plaintiffs point out that the Court already found in its May 20, 2015 Order that these claims were sufficiently alleged. *Id*. at 12-13.

Plaintiffs argue that if the Court finds that their claims are not adequately alleged, they should be granted leave to amend because they have not unduly delayed or acted in bad faith. *Id*. at 13.

### 3. Reply

In their Reply brief, the Franchise Defendants reject Plaintiffs' assertion that they need only demonstrate "threshold standing," pointing to cases that have held that standing is "claim- and relief- specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." Reply at 2 (citing *In re Adobe Sys., Inc. Privacy Litig.*, Case No. C-13-05226 LHK, 2014 WL 4379916, at *10 (N.D. Cal. Sept. 4, 2006); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Further, they argue, in a wage-and-hour case, a plaintiff has standing only where there is 1) an employment relationship with the defendant against who he brings a claim, and 2) the claim is the result of the plaintiff's employment with that defendant while performing work in the state under whose law relief is sought. *Id*. at 3 (citing *Perez*, 2015 WL 1887354; *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008)). They also argue that these requirements must be satisfied as to *each* defendant. *Id*. According to the Franchise Defendants, *Henry v. Circus, Circus Casinos, Inc*., cited in the Motion, supports its position. *Id*. at 3-4. The Franchise Defendants argue that the cases cited by Plaintiffs do not apply because they are not wage and hour class actions but instead consumer, products liability and ERISA class actions. *Id*. at 4.

The Franchise Defendants argue that Plaintiffs' reliance on the possible claims of unnamed class members is improper and insufficient to establish standing. *Id*. at 5. It is the named Plaintiffs who must establish standing, they argue, and these named Plaintiffs may not "remedy their lack of standing by bootstrapping the hypothetical claims of putative class members." *Id*. (citing *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *B.C. v. Plumas United Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999); *Kirola v. City & Cnty. of San Francisco*, Case No. C-07-3685 SBA, 2014 WL 6705952, at *38 (N.D. Cal. Nov. 26, 2014)). According to the Franchise Defendants, Plaintiffs are improperly "attempt[ing] to use Rule 23 to establish standing." *Id*. at 6. Further, they contend, the standing inquiry should be conducted prior to addressing certification under Rule 23. *Id*. at 7. The Franchise Defendants argue that the "overwhelming majority of district courts in the Ninth Circuit, including the Northern District of California, have followed this controlling authority." *Id* . (citing *Los Gatos Mercantile, Inc. v.*

*E.I. DuPont De Nemours & Co.*, Case No. 13-1180 BLF, 2014 WL 4774611, at *3 (N.D. Cal. Sept. 22, 2014); *Harris v. Vector Mktg. Corp.*, Case No. C-08-5918 EMC, 2010 WL 374532, at *4 (N.D. Cal. Sept. 17, 2010) (Chen, J.); *Morales v. Unilever U.S., Inc.*, Case No. 13-2213 WBS, 2014 WL 1389613, at *5 n. 5 (E.D. Cal. Apr. 9, 2014)).

According to the Franchise Defendants, "in the wage-and-hour context, Ninth Circuit courts have uniformly considered standing prior to class certification." *Id.* at 8 (citing *Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 258 (N.D.Cal., 2012) (Alsup, J.); *Perez v. Wells Fargo and Co.*, 2015 WL 1887354, at *5; *Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. at 544). The Franchise Defendants reject Plaintiffs' reliance on *In re Carrier IQ, Inc.*, arguing that that case actually supports their position to the extent that the court in *In re Carrier IQ, Inc.* considered standing as to certain claims before class certification due to the "burden and expense" of discovery that would result for keeping those claims in the case. *Id.* at 9 (citing 2015 WL 274054, at *13). Similarly, waiting to address standing in this case as to the challenged claims would result in an extraordinary burden in connection with discovery, the Franchise Defendants contend. *Id.* at 10-11. The Franchise Defendants further argue that the "logically antecedent" doctrine on which the court relied in *In re Carrier IQ, Inc.* is an "extremely narrow, widely contested, and ultimately inapplicable exception." *Id.* at 9-10 (citing *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 465 (S.D.N.Y. 2013)).

The Franchise Defendants reiterate their position that Plaintiffs' claims also fail under Rule 12(b)(6) because they have not alleged an employment relationship with all of the Defendant clubs. *Id.* at 12. With respect to the claims that they contend are untimely, the Franchise Defendants argue that Plaintiffs' relation-back argument fails because Plaintiffs have added not only new claims but also new defendants since they filed the original complaint. *Id.* at 12-13 (citing *Gustafson v. Washington Dept. of Social & Health Services*, Case No. C-05-5117 RBL, 2006 WL 1148378, at *2 (W.D. Wash., 2006)).

The Franchise Defendants argue that their challenge under Rule 12(b)(6) is not untimely because they filed the Motion at the same time they filed their Answers. *Id.* at 13 (citing *U.S. Fid. and Guar. Co. v. Bank of Bentonville*, 29 F.Supp.2d 553, 555 (W.D.Ark.,1998)). In any event, the

Motion can be treated as a motion for judgment on the pleadings under Rule 12(c) even if a 12(b)(6) motion is untimely, the Franchise Defendants assert. *Id*. at 14. Finally, the Franchise Defendants repeat the argument that Plaintiffs should not be permitted to amend their complaint, both because they have already been given several opportunities to amend and because amendment is futile. *Id*. at 14-15.

## III. ANALYSIS

### A. Whether the Court Should Dismiss Certain Claims for Lack of Subject Matter Jurisdiction

#### 1. Legal Standard Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. Under Article III of the U.S. Constitution, the Court has subject matter jurisdiction only if the party bringing the action has standing, an inquiry which addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Erwin Chemerinsky, Federal Jurisdiction § 2.3.1, at 57 (5th ed.2007)). When a defendant moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff, as the party seeking to invoke the court's jurisdiction by filing the complaint, bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A defendant may attack the court's jurisdiction as it appears on the face of the complaint or by presenting affidavits and other evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For a facial attack, the court must "accept all allegations in the complaint as true and construe them in the light most favorable to the plaintiff[]." *Id*.

#### 2. Standing in the Rule 23 Class Context

The parties' dispute with respect to standing stems from a tension in the Supreme Court authority - and a split of authority among lower courts - as to when the Article III standing inquiry ends and the Rule 23 inquiry begins. As discussed further below, this Court finds that it is appropriate to defer ruling on standing and therefore need not reach this question. Nonetheless, the Court summarizes here the relevant case law on standing in Rule 23 class actions and

15

addresses some of the cases cited by the parties in support of their positions.

The case or controversy requirement of Article III requires that, in order for a party to have standing to raise a claim: (1) the party invoking federal jurisdiction must have suffered an actual or threatened injury; (2) the injury must be fairly traceable to the defendant's challenged conduct and; and (3) the injury must be redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Application of this test in the class context is "complicated . . . because a named plaintiff seeks to litigate the claims of others . . . ." Newberg on Class Actions § 2.6. Thus, while the "underlying standing principle is that the injury that a plaintiff suffers defines the scope of the controversy she is entitled to litigate," in the class context there is a "disjuncture" because "the class representative may seek to litigate harms not precisely analogous to the ones she suffered but harms that were nonetheless suffered by other class members." *Id*. As a consequence of this disjuncture, courts have "grapple[d] with whether this type of dispute is really one of standing or more properly one of typicality and adequacy of representation in the class certification phase." *Ogden v. Bumble Bee Foods, LLC*, Case No. C-12-1828 LHK, 292 F.R.D. 620, 623 (N.D. Cal. 2013).

The Supreme Court has recognized that "there is a tension in [its] prior cases" as to whether the variation among class members as to the injury suffered "is a matter of Article III standing . . . or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." *Gratz v. Bollinger*, 539 U.S. 244, 263 & 263, n. 15 (2003); *see also* Newberg on Class Actions § 2.6 (recognizing that there is a split of authority among courts, with some courts finding that class representatives do not have standing to pursue claims of class members who did not suffer the same injury and other courts, "having determined that the class representative has standing to pursue her own claims, mov[ing] on from the standing inquiry" and treating the disjuncture as an issue of class certification).

In the context of consumer class actions, a number of courts in this District have followed the "class certification approach" when addressing whether a purchaser of one product may act as a class representative for class members who purchased different products made by the same manufacturer. *See, e.g., Donahue v. Apple, Inc.*, 871 F. Supp. 2d 913, 923 (N.D. Cal. 2012)

(Whyte, J.) (finding that question of whether named plaintiff who had purchased one iPhone model could assert claims as to models that were purchased by class members but not by the named plaintiff "boil[ed] down to questions of whether common issues predominate and whether plaintiff can adequately represent absent class members"); *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 624 (N.D. Cal. 2013) (Grewal, J.) (addressing split of authority and concluding that question of whether named plaintiff could assert claims based on products she did not purchase was better addressed in the context of class certification); *Trazo v. Nestle USA, Inc*., Case No. C-12-2272 PSG, 2013 WL 4083218, at *4 (N.D. Cal. Aug. 9, 2013) (same); *Clancy v. The Bromley Tea Company*, Case N. C-12-3003 JST, 2013 WL 4081632, at *5 (N.D. Cal. Aug. 29, 2013) (same). In these cases, there was no dispute that the named Plaintiffs had individual standing to pursue claims based on the product they personally had purchased; the issue was whether Article III required that they demonstrate standing as to claims based on other products or rather, whether this was an issue to be decided under Rule 23. These courts concluded it was the latter. As Judge Tigar explained in one of them, "[t]ransmogrifying typicality or commonality into an issue of standing would undermine the well-established principles that in a class action, standing is satisfied if at least one named plaintiff meets the requirements, . . . and that [t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Clancy*, 2013 WL 4081632, at *5 (citations and internal quotations omitted).

A more difficult question is presented here because named Plaintiffs seek to represent the interests of unnamed class members on the basis of similarity where the claims are asserted against *different* defendants. In other words, a named Plaintiff who was employed by one Franchise Defendant and performed work in a particular state is seeking to represent class members who performed work in the same state for a *different* Franchise Defendant. As the Court in *Henry v. Circus Circus Casinos, Inc*. acknowledged, the Ninth Circuit "has not resolved whether a plaintiff having a cause of action against a single defendant has standing to maintain a class action against the single defendant as well as an unrelated group of defendants who have engaged in similar conduct." 223 F.R.D. at 543. In that case, a group of security guards employed by Mandalay Bay Corporation sought to represent a class of security guards that included

United States District Court
Northern District of California

employees of other corporations on the basis that they were subsidiaries of the parent of Mandalay Bay Corporation and that parent corporation applied the same wage and hour policy to all of its subsidiaries. *Id*. at 542. The court found that there was no standing as to the other corporations, reasoning that all of the named plaintiffs were employed by Mandalay Bay Corporation; there was *no* named plaintiff who asserted any claims as to the other corporations. *Id*. at 544. The court explained that "what is required is that for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant. At that point, Article III standing is satisfied and only then will the inquiry shift to a Rule 23 analysis." *Id*. Because the named plaintiffs in *Henry* did not assert *any* claims against the other defendants, however, the court did not address the situation here, where there is, in fact, a named plaintiff who can assert a claim directly against every defendant, but there is not a named plaintiff who can assert *each* claim in the complaint against each defendant.

Another case cited by Defendants, *Ross v. U.S. Bank National Ass'n*, also does not offer significant guidance on this question. In that case four named plaintiffs asserted wage and hour claims in a putative class action against U.S. Bank, seeking to represent employees in California, Oregon and Washington, and asserting claims under the wage and hour laws of those states. 542 F. Supp. 2d at 1018 (N.D. Cal. 2008). The court found that the plaintiffs lacked standing to assert claims under Washington law because *no* named plaintiff was employed by U.S. Bank in Washington. *Id*. at 1023. Although one inference from this decision is that in a case involving multiple defendants, there must be at least one named plaintiff who performed work for each individual defendant in the state whose law is being invoked to demonstrate standing, the court simply did not address standing requirements in a multi-defendant state or whether Article III requires more than a threshold showing that each defendant is properly in the case.

Similarly, *Perez v. Wells Fargo and Co*. does not address the specific issue before the Court because there, the court found that the named plaintiffs in a wage and hour putative class action, while naming four Wells Fargo entities as defendants, did not allege any facts as to the relationship between these entities or show that any of the plaintiffs suffered an injury in fact as a result of the conduct of any specific defendant. *Perez*, 2015 1887354, at *5. That is not the

18

situation here, where it is undisputed that as to every Franchise Defendant there is a named Plaintiff who is alleged to have performed work for that specific defendant.

The cases cited by the Franchise Defendants for the proposition that in a class action, named plaintiffs must establish standing by showing that they personally suffered actual injury also do not shed a great deal of light on this question. *See* Reply at 5 (citing *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *B.C. v. Plumas United Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999); *Kirola v. City & Cnty. of San Francisco*, Case No. C-07-3685 SBA, 2014 WL 6705952, at *38 (N.D. Cal. Nov. 26, 2014)). While this proposition is true as far as it goes, it fails to address whether standing requires the court to parse through each and every claim with reference to each and every defendant where it is undisputed that all Plaintiffs have suffered an actual injury that meets the requirements of *Lujan*. Nor do the cases cited by the Franchise Defendants that warn against acquiring standing through "the back door of a class action" address the specific question of where the standing inquiry ends and the Rule 23 inquiry begins under circumstances like the ones in this case. *See, e.g., Siemers v. Wells Fargo & Co.*, Case No. C-05-4518 WHA, 2006 WL 3041090, at *6 (N.D. Cal. Oct. 24, 2006) (holding that there was no standing as to one of the defendants where the single named plaintiff did not allege he had suffered any injury in fact as a result of that defendant's conduct, and citing *O'Shea v. Littleton*, 414 U.S. 494 (1974) for the proposition that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

The decisions of the Supreme Court also have not provided clear guidance. In some decisions, it appears that so long as there as an actual controversy as to every plaintiff and every defendant, any further inquiries are treated as issues under Rule 23. *See Sosna v. Iowa*, 419 U.S. 393, 402-03 (1975) ("A named plaintiff in a class action must show that the threat of injury in a case such as this is 'real and immediate,' not 'conjectural' or 'hypothetical.' . . . This conclusion does not automatically establish that appellant is entitled to litigate the interests of the class she seeks to represent, but it does shift the focus of examination from the elements of justiciability to the ability of the named representative to 'fairly and adequately protect the interests of the class'

[under] Rule 23(a)").   In other decisions, however, the Supreme Court has taken a different approach, cautioning that "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996).  In *Lewis*, the Court held that there was standing as to only the specific type of injury suffered by one of the named plaintiffs and therefore, that the injunction entered by the lower court was improper to the extent it was intended to remediate other injuries allegedly suffered by class members.  *Id*. at 358.

The Ninth Circuit has cautioned against interpreting *Lewis* too broadly, noting that while that case "limits standing to the injury shown . . . [w]hen determining what constitutes the same type of relief or the same kind of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) (abrogated on other grounds).  Other Ninth Circuit decisions also support the conclusion that it is enough, in a class action, to demonstrate that "at least one named Plaintiff meets the requirements." *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  Under this approach, Plaintiffs' allegations in the SCAC may be sufficient to show Article III standing because all of the Franchise Defendants are alleged to have employed one or more named Plaintiff, there is a named Plaintiff who has standing to invoke every state's law and all Plaintiffs have demonstrated actual injury by alleging that one of the Franchise Defendants failed to pay them at all for some work and also failed to pay them required overtime.   As noted above, however, the Court declines to decide this question because it finds that at a minimum, it is appropriate to address whether there is standing to assert the claims that are challenged by the Franchise Defendants *after* class certification, at which point it may be possible to avoid these difficult constitutional issues.

### 3.  Whether the Court Should Defer Addressing Standing Issues Until After Class Certification

Plaintiffs argue that even if Defendants' challenges to their claims raise issues of standing, the Court should wait to address the challenges until after class certification.  The Court agrees.

Courts in this District are split on the question of whether the standing inquiry can be

deferred until after class certification. *See Los Gatos Mercantile*, Case No. 13-1880 BLF, 2014 WL 4774611, at *3-4 (Sept. 22, 2014) (recognizing split within the Northern District of California and finding that in antitrust cases the majority of courts have found that standing should be addressed before class certification). Many of the courts that have concluded that standing must be addressed prior to class certification have relied, in part, on the Ninth Circuit's decision in *Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 2004). *See, e.g., In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (White, J.) (rejecting plaintiff's argument that determination of standing was premature prior to class certification on the ground that *Easter* had rejected this argument); *Fenerjian v. Nongshim Co., Ltd.*, Case No. 13-4115 WHO, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014) ("the Ninth Circuit has stated that standing should be addressed before class certification") (citing *Easter*, 381 F.3d at 962). In *Easter*, the Ninth Circuit found that the district court had properly addressed the issue of standing before it addressed class certification in a putative class action. *Id.* at 962. The courts that have interpreted *Easter* broadly as setting forth a general rule that standing must be addressed before certification "have looked at claims brought under the laws of states in which no named plaintiff resided and concluded that the *named plaintiff* lacked standing." *In re Carrier IQ, Inc.*, Case No. C-12-MD-2330 EMC, 2015 WL 274054, at *10 (N.D. Cal., Jan. 21, 2015)).

The undersigned agrees with the court in *In re Carrier IQ, Inc.*, however, that *Easter* should be read more narrowly to stand for the "unremarkable proposition that for a class action to proceed between the named parties, each named plaintiff must have standing to sue at least each named defendant; to hold each defendant in the case, there must be one named plaintiff with standing to sue said defendant." *Id.* As Judge Chen points out, the district court in *Easter* addressed standing at the pleading stage where no named plaintiff had standing to assert *any* claims against certain defendants. *Id.* at *9. *Easter* did not address "[w]hether once threshold standing is established, the Court has the power to certify the class before addressing the standing of unnamed class members." *Id.* In support of its narrower reading of *Easter*, the court in *In re Carrier IQ, Inc.* pointed to a subsequent Ninth Circuit decision, *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013), in which the court recognized that it was an open question whether class

certification should be decided before standing. *Id*. The court also pointed to the Supreme Court's recognition in *Gratz* that "there is a tension in [its] prior cases" as to whether the variation among class members as to the injury suffered "is a matter of Article III standing . . . or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a)." *Id.* (quoting *Gratz v. Bollinger*, 539 U.S. 244, 263 & 263, n. 15 (2003)).

The court in *In re Carrier IQ, Inc.* further pointed out that the Supreme Court has recognized that in some cases, class certification may be addressed before standing. *Id*. at *10 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Anchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)). Those cases involved global settlements in asbestos class actions where unnamed class members included "exposure only" plaintiffs who had not yet been injured. *Id*. In both *Ortiz* and *Anchem*, the Court found that the class certification issues were "logically antecedent" to the Article III standing issues and therefore were properly addressed first. *Id*. (citing *Ortiz*, 527 U.S. at 831; *Anchem*, 521 U.S. at 612). While this doctrine has been the subject of much disagreement, the court in *In re Carrier IQ, Inc.* joined the "growing consensus among lower courts . . . that [have found that] class certification should . . . be decided first where its outcome will affect the Article III standing determination." *Id*. at *11 (quoting William B. Rubenstein, Newberg on Class Actions § 2.6 (5th ed.) (internal quotations and citations omitted)). Further, the court noted, in determining whether the outcome will affect the standing determination, courts should take into account the rule that "once a class has been certified, 'the class of unnamed persons described in the certification acquire[s] a legal status separate from the representative.'" *Id*. (quoting *Bates*, 511 F.3d at 987 (quoting *Sosna v. Iowa*, 419 U.S. at 399)); *see also Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs").

In *In re Carrier IQ, Inc.* the court cited decisions involving a "sister state law scenario" in which courts have found that class certification was "logically antecedent" to the question of standing. *Id*. at *11-12 (citing *Hoving v. Transnation Title Ins.* Co., 545 F. Supp. 2d 662 (E.D. Mich. 2008); *Jepson v. Ticor Title Ins. Co.*, Case No. C-06-1723 JCC, 2007 WL 2060856 (W.D.

Wash., May 1, 2007). In *Hoving*, for example, the plaintiff in a putative class action sought to assert claims that the defendant had overcharged its premium on title insurance. 545 F. Supp. 2d at 664. The plaintiff resided in Michigan but sought to represent a class of consumers harmed by the defendant in Michigan, Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey and Washington. *Id*. It was undisputed that the plaintiff had standing to assert a claim under Michigan law. *Id*. The defendant, however, brought a motion to dismiss in which it argued that the claims that were asserted under the laws of other states should be dismissed for lack of standing. *Id*. at 665. The court declined to dismiss the claims that were asserted under other states' laws at the pleading stage, reasoning that the class certification decision was logically antecedent to the standing question because it would depend on whether the plaintiff could establish that his claims were "typical of those individuals whose claims arise under the laws of the other states and he can represent those individuals adequately." *Id*.

In *Jepson*, the court reached a similar conclusion. In that case, as in *Hoving*, the plaintiff sought to assert claims against a title insurance company on behalf of a putative class that included residents of other states. 2007 WL 2060856, at *1. The defendant asked the court to dismiss the claims asserted under the laws of other states on the basis that the plaintiff did not have Article III standing to assert those claims because he had suffered no injury in those states, while the plaintiff argued that the standing question should be decided after class certification (at which point any standing defects would be cured if the class was certified). *Id*. The court agreed with the plaintiff, reasoning as follows:

> While "[o]rdinarily . . . any . . . Article III court must be sure of its own jurisdiction before getting to the merits," exceptions may be made in class actions where the class certification issues are "logically antecedent" to Article III concerns. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (analyzing the issue of class certification prior to standing in the context of a mandatory global settlement class). The class-certification question is logically antecedent to Article III standing where the standing concerns "would not exist but for the class-action certification." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotations and alterations omitted). In this case, the class-certification issue is logically antecedent because there is no question that the proposed class would have standing to assert non-Washington claims if it were certified. In such cases, "it is possible

for . . . common issues to predominate and for class certification to be an appropriate mechanism for handling the dispute." *In re Buspirone Patent Litigation*, 185 F.Supp.2d 363, 377 (S.D.N.Y.2002) (holding that class certification was logically antecedent under *Ortiz* in a class action involving similar claims under a number of different states' laws); See also *In re Relafen Antitrust Litig.* . , 221 F.R.D. 260, 269 (D.Mass.2004); but see *In re Terazosin Hydrochloride Antitrust Litig.*; 160 F.Supp.2d 1365, 1371 (S.D.Fla.2001). It is thus "appropriate to decide class certification before resolving alleged Article III challenges of the present kind." *In re Buspirone Patent Litig.*, 185 F.Supp.2d at 377 (citing *Ortiz*, 527 U.S. at 831).

*Id*.

The court in *In re Carrier IQ, Inc.* applied a similar approach, finding that class certification was logically antecedent to standing in a putative class action that involved not only the laws of multiple states (up to 35 states in one claim) but also (in contrast to *Hoving* and *Jepson*) multiple defendants. In that case the defendants, who were manufacturers of mobile devices who were alleged to have violated a number of states' privacy and consumer protection laws, argued that the 18 plaintiffs (who came from 13 different states) were required at the pleading stage of the case to demonstrate standing by showing that there was a named plaintiff for each of the manufacturer's mobile devices who was injured in each of the states whose laws were invoked. *In re Carrier*, 2015 WL 274054, at *5. Therefore, they argued, the court should dismiss for lack of standing "claims under state laws in which they do not reside and against Device Manufacturers who did not produce their mobile devices." *Id*. The court found that it had discretion to defer ruling on the standing challenges until after class certification, for the reasons discussed above. *Id*. at *13. Nonetheless, as to claims asserted under the laws of states where *no* named plaintiff resided, the court decided, as a matter of case management, to address standing at the pleading stage and to dismiss those claims. *Id*. As to those claims, the court had "reservations about subjecting the Device Manufacturers to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state's laws." *Id*.

On the other hand, "as to the named Plaintiffs' ability to sue under their own laws Device Manufacturers from whom other named Plaintiffs bought devices," the court in *In re Carrier IQ, Inc.* exercised its discretion to defer determination of standing until after class certification. *Id*.

The court reasoned that "these Defendants are properly in the case (having allegedly sold a device to at least one named Plaintiff); the potential burden of adjudicating class certification will not impose the kind of expansive burden entailed in permitting plaintiffs to sue each defendant under the laws of 35 other states." *Id.* As to the state law claims as to which there was a named plaintiff who resided in that state and had bought a device from *any* of the manufacturers, the court denied the motion to dismiss without prejudice to renewing the standing challenge after the court addressed class certification. *Id.*

The undersigned finds the reasoning of *In re Carrier IQ, Inc.* to be persuasive and the facts of the case to be closely on point, even if the claims in that case are not asserted under state wage and hour laws. Like the plaintiffs in *In re Carrier IQ, Inc.*, Plaintiffs here assert claims under the laws of multiple states against multiple defendants. As in *In re Carrier IQ, Inc.*, as to some states' laws, there are named Plaintiffs who allege that they were injured by *some* of the Franchise Defendants but there is not a named Plaintiff who is alleged to have been injured in that state for each and every Franchise Defendant. Rather, the named Plaintiffs who are proposed as class representatives of the various state classes seek to represent unnamed plaintiffs who were employed by these other Franchise Defendants on the basis that they suffered a similar injury. As to these claims, the undersigned finds that it is appropriate to defer addressing the question of standing until after class certification.

The Court finds unpersuasive the Franchise Defendants' contention that they will be extraordinarily burdened by deferring this question. In contrast to *In re Carrier IQ, Inc.*, Plaintiffs do not seek to assert any claims under laws of states where no named Plaintiff resides. Rather, there is a named Plaintiff with standing to assert a claim under the laws of every state whose laws are invoked in this action and all of the Franchise Defendants are properly in the case. Under these circumstances, the burden entailed by allowing the standing issue to be addressed after class certification does not warrant addressing at the pleading stage of the case whether the named Plaintiffs have standing to represent unnamed class members who reside in these states and who performed work for the Franchise Defendants.

The Court also rejects the Franchise Defendants' argument that the Court should not defer

addressing the standing question because it is a "transparent attempt by Plaintiffs to find additional minor league players who *do* have standing." Reply at 11. While this may be true, the Court finds that there is nothing improper about such an attempt. As discussed above, there is at least one named Plaintiff who is alleged to have suffered direct injury as a result of the conduct of each Franchise Defendant and there is at least one named Plaintiff who is alleged to have been employed in every state whose laws are invoked. Having made this threshold showing of standing, Plaintiffs may pursue discovery to determine whether certification is appropriate and whether the proposed class representatives have standing to represent the various proposed classes, which may include discovery as to whether there are unnamed class members who were employed by other Franchises who suffered injuries similar to those of the named Plaintiffs in the various states.

Franchise Defendants' argument that "Ninth Circuit courts have uniformly considered standing prior to class certification" in the wage and hour context also fails. *See* Reply at 8. None of the cases cited by the Franchise Defendants addresses the "logically antecedent" doctrine and in three of the cases cited by the Franchise Defendants – *Perez*, *Ross*, and *Henry* – there was no threshold standing, in contrast to the facts of *In re Carrier*. In *Perez*, the allegations were so vague that the court could not determine whether the named plaintiffs had been employed by *any* of the entities named as defendants. 2015 WL 1887354, at *3. In *Ross*, none of the named plaintiffs alleged they had worked for the defendant in Washington state even though they sought to assert Washington state law claims. 542 F. Supp. 2d at 1023. And in *Henry*, there were no named plaintiffs who alleged that they had been employed by the defendants that were dismissed for lack of standing. 223 F.R.D. at 544. Further, the Franchise Defendants fail to explain why the reasoning of the cases discussed above would not be applicable in the wage and hour context. Indeed, they themselves selectively quote from a case involving antitrust claims in support of their assertion that "the 'trend' in [the Northern District of California] is to consider standing issues at the pleading stage." Reply at 7 (quoting *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours &*

1    *Co.*, Case No. 13-1180 BLF, 2014 WL 4774611, at *3 (N.D. Cal. Sept. 22, 2014)).[1]

2    **B.    Whether Plaintiffs Fail to State a Claim Under Rule 12(b)(6)**

3         The Franchise Defendants challenge Plaintiffs' claims under Rule 12(b)(6) for failure to

4    state a claim on the same grounds they challenge subject matter jurisdiction, namely, that there is

5    not a named Plaintiff who is alleged to have performed work in each of the states at issue for each

6    of the Franchise Defendants.   The Court rejects Franchise Defendants' challenge.

7         Plaintiffs' state law claims are asserted as class claims rather than individual claims.

8    Challenges to class claims are properly asserted under Rule 12(f) rather than Rule 12(b)(6), which

9    permits courts to strike "any insufficient defense or any redundant, immaterial, impertinent or

10   scandalous matter." *See Clerkin v. MyLife.Com*, Case No. C-11-0527 CW, 2011 WL 3809912, at

11   *3 (N.D.Cal., Aug. 29, 2011) (holding that defendants' challenge to class allegations under Rule

12   12(b)(6) was improper and noting that "[w]hile courts entertain . . . motions [to strike class

13   allegations from complaints], it is rare that class allegations are stricken at the pleading stage)

14   (citation omitted);  *Rosenberg v. Avis Rent A Car System, Inc.*, Case No. C-07-1110, 2007 WL

15   2213642, at *4-5 (E.D.Pa., July 31, 2007) (rejecting vagueness challenge brought to class claims

16   under Rule 12(b)(6) on the basis that it amounted to a challenge to class certification and therefore

17   was improper before a class certification motion had been filed).  Rule 12(f) claims are granted

18   only if "it is clear from the complaint that the class claims cannot be maintained." *Collins v.*

19   *Gamestop Corp.*, Case No. C-10-1210 TEH, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010).

20   Otherwise, courts typically wait to address challenges to class claims until the class certification

21   stage of the case.  *See id.* ("[c]lass allegations are generally not tested at the pleading stage and

22   instead are usually tested after one party has filed a motion for class certification");  *see also*

23

24   [1] In fact, the court in that case states that "[t]he trend in the Northern District of California is to
     consider Article III issues at the pleading stage *in antitrust cases* and to dismiss claims asserted
25   under the laws of states in which no plaintiff resides or has purchased products."  2014 WL
     4774611, at *3.  While the Franchise Defendants may have misrepresented the court's statement
26   somewhat, the observation is true, as far as it goes.  Indeed, the court in *In re Carrier I.Q., Inc.*
     dismissed the claims that were asserted under the laws of states where no plaintiff resided at the
27   pleading stage as well.  The court in *Los Gatos Mercantile* simply did not address whether courts
     have the discretion to defer the standing inquiry if they deem it appropriate, for example, where
28   there *are* named plaintiffs who reside in the state whose law is being invoked who may be able to
     represent the claims of unnamed class members based on similar injuries.

*United States District Court*
*Northern District of California*

*Cholyakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (listing cases standing for same proposition).

Here, the sufficiency of Plaintiffs' state law claims will depend upon whether the classes proposed by Plaintiffs are certified and the scope of the claims the classes are permitted to assert. Accordingly, the Court finds the Motion to be improper to the extent it is asserted under Rule 12(b)(6) and declines to address the Franchise Defendants' challenge to the state law claims until the class certification stage of the case. [2]

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED without prejudice to raising the issues of class standing and/or the sufficiency of the class claims after class certification or, where applicable, in the context of the class certification determination.

**IT IS SO ORDERED.**

Dated: July 13, 2015

_____

JOSEPH C. SPERO
Chief Magistrate Judge

---

[2] Because the Court finds that consideration of both standing and the sufficiency of the class allegations is more appropriately addressed after class certification it does not address the Franchise Defendants' arguments that the claims of certain named Plaintiffs are untimely. The court notes, however, that to the extent that Plaintiffs contend there may have been equitable tolling as to some claims due to lack of notice, *see* Opposition at 12 (citing *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 258-59 (S.D.N.Y. 2008)), this is a question that is more appropriately addressed at a later stage of the case when a factual record has been developed. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (noting that doctrine of equitable tolling involves factual inquiries that usually require evidence and cannot easily be resolved as a matter of law based on the pleadings). Although the Franchise Defendants rejected Plaintiffs' relation-back argument in their Reply brief, *see* Reply at 12-13, they did not address Plaintiffs' argument that the Court requires further evidence before it can address the timeliness of their claims.