STEPHEN M. TILLERY *(pro hac vice)*
stillery@koreintillery.com
GARRETT R. BROSHUIS *(pro hac vice)*
gbroshuis@koreintillery.com
AARON ZIGLER *(pro hac vice)*
azigler@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

BRUCE L. SIMON (Bar No. 96241)
bsimon@pswlaw.com
BENJAMIN E. SHIFTAN (Bar No. 265767)
bshiftan@pswlaw.com
ALEXANDER L. SIMON (Bar No. 305734)
asimon@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

DANIEL L. WARSHAW (Bar No. 185365)
dwarshaw@pswlaw.com
BOBBY POUYA (Bar No. 245527)
bpouya@pswlaw.com
MICHAEL H. PEARSON (Bar No. 277857)
mpearson@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Plaintiffs' Interim Co Lead Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

AARON SENNE, et al., Individually and on Behalf of All Those Similarly Situated,

Plaintiffs,

vs.

OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL; et al.;

Defendants.

CASE NO. 3:14-cv-00608-JCS

**<u>CLASS ACTION</u>**

**DECLARATION OF STEPHEN M. TILLERY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Hearing Date: May 20, 2016
Hearing Time: 9:30 a.m.
Courtroom: G, 15th Floor
Judge: Honorable Joseph C. Spero

I, Stephen M. Tillery, being first duly sworn upon my oath, depose and state as follows:

1. I certify that the statements set forth in this instrument are true and correct. I make the following statements based on my personal knowledge and if called, I could competently testify to the matters stated herein.

2. I am an attorney and senior member of the law firm of Korein Tillery, LLC, one of Plaintiffs' counsel in this lawsuit.

3. I completed my undergraduate studies at Illinois College (B.A. *magna cum laude*, *Phi Beta Kappa*) in 1972. Thereafter I attended Saint Louis University School of Law (J.D. *cum laude*, Order of the Woolsack, 1976). I was admitted to practice law in the State of Illinois in 1976 and the State of Missouri in 1990. I am admitted to practice before the United States District Courts for the Southern, Central and Northern Districts of Illinois, the United States Court of Appeals for the Seventh Circuit, and the United States Supreme Court. I have offices in Chicago, Illinois and St. Louis, Missouri.

4. I am a member of the Illinois Trial Lawyers Association, where I have been one of the elected Board of Managers since 1987, and for which I have served on and chaired various committees. I am a member of the board of Public Justice. I am also a member of the Illinois State Bar Association, the Missouri Association of Trial Attorneys, the St. Louis Metropolitan Bar Association, the St. Clair County Bar Association and the American Association for Justice.

5. While obtaining my law degree, I was a law clerk for the Honorable James L. Foreman, United States District Court for the Southern District of Illinois. Following graduation from law school, I was a law clerk for Justice George J. Moran, Fifth District Court of Appeals of Illinois. I began the private practice of law at Kassly, Bone, Becker & Dix, P.C. in 1977, where I became a partner in 1979. In 1988, I joined the law firm now known as Korein Tillery.

6. I have practiced in numerous areas of law, including personal injury, patent litigation, products liability, Federal Employers' Liability Act, business torts, environmental contamination, and various class actions. In my career I have handled individually or as lead counsel hundreds of complex civil cases and have been actively engaged in trial and appellate work for forty years. I have handled numerous cases for individual plaintiffs which have resulted in multimillion dollar verdicts or settlements. I was named Litigation Daily's Litigator of the Week on May 1, 2014 for successfully

reinstating the trial court's $10.1 billion verdict in *Price v. Philip Morris, Inc.*, 2014 IL App (5th) 130017, 2014 WL 1696280 (Ill. App. Ct. Apr. 29, 2014).

7. I have written numerous articles for legal publications and I have authored "Protecting Litigation Rights" for the Illinois Institute of Continuing Legal Education and "Illinois Personal Injury Complaints" for West Publishing Company. In addition, I have served as lecturer, moderator and panel member at dozens of legal seminars relating to litigation and trial practice. I was an adjunct professor at Saint Louis University School of Law for eleven years, and was Co-Director of the Advanced Trial Advocacy Program there from 1983 to 1988.

8. George Zelcs focuses his practice in the areas of complex commercial litigation including securities, antitrust, consumer fraud, qui tam/whistleblower, and pharmaceutical litigation in state and federal courts. Mr. Zelcs completed his undergraduate degree at Indiana University (B.A. Political Science, Urban Planning, and Sociology) in 1976. He received his law degree at Chicago-Kent College of Law in 1979, and was admitted to practice law in Illinois in 1979. He is admitted to practice before the United States Courts of Appeals for the Second Circuit (2013), Fifth Circuit (1999), Seventh Circuit (1980), Eighth Circuit (1996), Tenth Circuit (1982), and Eleventh Circuit (1993), the United States Tax Court (1984), the United States Court of Federal Claims (2013), the Supreme Court of the United States (2005), and the United States District Courts for the Northern and Southern District of Illinois.

9. Mr. Zelcs has conducted bench and jury trials in state and federal courts throughout the United States and has participated in arbitration proceedings in foreign venues. He has obtained settlements and judgments ranging from fifteen million to in excess of ten billion dollars for his clients in various state and federal jurisdictions throughout the United States.

10. Mr. Zelcs was first selected as a Leading Illinois Attorney in 1993 and as an Illinois Super Lawyer. He was selected as a Finalist in 2003 for the Trial Lawyers For Public Justice Trial Lawyer of the Year Award for his work on the Price, et al. vs. Philip Morris USA verdict. He serves on the Chicago-Kent Board of Overseers and as a Trustee for the Chicago-Kent Institute on the Supreme Court of the United States. He has testified, at the invitation of the New York State

Assembly, regarding financial guaranty insurance and representations and warranties made by mortgage originators in mortgage-backed securities.

11. Aaron Zigler is a partner at Korein Tillery where he frequently represents consumers, whistle-blowers and investors as plaintiffs in high-stakes litigation and appeals. Mr. Zigler is an accomplished writer and an active member of the American Society of Legal Writers. Prior to his legal career, Mr. Zigler worked in computer security for a Fortune 500 company and continued his interest in computer technology in law school by concentrating his studies in that area.

12. Mr. Zigler routinely bears the principal responsibility for the briefing and argument of dispositive and jurisdictional motions in a wide variety of complex cases. He also has extensive appellate experience, having been responsible for briefing and arguing such appeals as: *United States ex rel. Garbe v. Kmart Corp.*, No. 15-1502 (7th Cir. 2016); *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488 (9th Cir. 2015) (argued); *Price v. Philip Morris, Inc.*, 2015 IL 117687 (Ill. 2015); *Holiday Shores Sanitary Dist. v. Syngenta Crop Prot., Inc.*, No. 111881 (Ill. Sept. 28, 2011); *Carr v. Gateway, Inc.*, 944 N.E.2d 327 (Ill. Feb. 3, 2011) (argued); *Holiday Shores Sanitary Dist. v. Syngenta Crop Prot., Inc.*, No. 05-10-0549 (Ill. App. Jan 13, 2011); *Carr v. Gateway Inc.*, 918 N.E.2d 598 (Ill. App. Ct. 2009) (argued); *Lott v. Pfizer Inc.*, No. 5-08-235 (Ill. App. Oct. 21, 2008); *Travis v. Allstate Ins. Co.*, No. 5-08-110 (Ill. App. Apr. 10, 2008); *Baldwin v. Mendelsohn*, No. 104487 (Ill.2007); *Hoormann v. Smithkline Beecham Corp.*, No. 5-07-0033 (Ill. App. 2007); Lott v. Pfizer Inc., 492 F.3d 789 (7th Cir. 2007) (argued); *Hoormann v. Smithkline Beecham Corp.*, No. 5-06-0624 (Ill. App. 2006); *Barbara's Sales, Inc. v. Intel Corp.*, 857 N.E.2d 717 (Ill. App. 2006); *Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. 2005); and *Pfizer Inc. v. Lott*, 417 F.3d 725 (7th Cir. 2005).

13. Mr. Zigler's successes in the courtroom have been featured by the St. Louis Post-Dispatch ("Lawyer a Victor in Class Actions, Says He Fights For Little Guy," St. Louis Post-Dispatch, June 29, 2008), by The American Lawyer (King & Spalding Lawyer Stirs State Judge's Ire, 1 Am. Law., Jan. 2007, at 50) and the National Law Journal (e.g., The Plaintiffs' Hot List, 30 Nat'l L.J., Nov. 22, 2007, at S7).

14. Robert L. King is a 1989 graduate of the Washington University School of Law. Upon graduation from law school, he clerked for a federal judge in Kansas City, Missouri for two years

before entering private practice in 1991. In addition to the state bars of Missouri and Illinois, Mr. King is a member of the bars of the Second, Fifth, Seventh, Eighth and Federal Circuit U.S. Courts of Appeal; the U.S. District Courts for the Eastern and Western Districts of Missouri and the Central and Southern Districts of Illinois; the U.S. Court of International Trade; and the United States Supreme Court. Mr. King has devoted his career exclusively to litigation over the past fifteen years, practicing in a variety of substantive areas of law while at Korein Tillery, including class actions, products liability, contracts and general business litigation. Mr. King has litigated on behalf of clients in state and federal courts at both the trial and appellate levels, including the Supreme Courts of Illinois and Florida and the U.S. Supreme Court. Mr. King participated in of the presidential election cases in Florida, *Taylor v. Martin County*, in December 2000.

15. Garrett Broshuis is an attorney with Korein Tillery. Garrett received his J.D. from Saint Louis University, where he graduated valedictorian and served as Editor-in-Chief of the Law Journal. Garrett interned for Chief Judge Catherine Perry of the U.S. District Court for the Eastern District of Missouri. He obtained his B.A., *summa cum laude*, from the University of Missouri-Columbia.

16. Garrett is an adjunct professor of sports law at Saint Louis University. He has published numerous legal articles and is regularly quoted in publications throughout the country. His work on behalf of minor leaguers has been featured on HBO's Real Sports with Bryant Gumbel.

17. During his undergraduate career at the University of Missouri, Garrett earned both All-American and Academic All-American honors for NCAA Division-I baseball. In 2004, he became a finalist for the Big 12 Conference Male Athlete of the Year after recording a perfect 11-0 record as a pitcher. He also earned the school's Total Person Program Excellence Award three times.

18. The San Francisco Giants drafted Garrett in the fifth round of the 2004 amateur baseball draft. He played at all levels of minor league baseball during his six-year career with the Giants and attained the second most wins of any pitcher in the entire organization from 2008 to 2009. For four years, he wrote a regular column for two sports magazines, The Sporting News and Baseball America, and has been published in numerous other news outlets such as USA Today.

19. Other members of my law firm and I have been involved in numerous class action cases and have considerable experience prosecuting class actions. Korein Tillery is a leading plaintiffs' law firm with a concentration in complex litigation and class actions. A substantial portion of the firm's practice is the representation of plaintiffs and plaintiff classes in a variety of class actions, primarily in the area of deceptive trade practices and consumer fraud, pharmaceutical class actions, pension fund violations, antitrust violations and unfair telecommunications practices.

20. The National Law Journal has consistently deemed Korein Tillery to be one of the country's top plaintiffs' firms by naming it to its "Plaintiffs' Hot List" seven times in the past eleven years: in 2003, 2004, 2007, 2008, 2011, 2012, and 2013. In 2014 and 2015, Korein Tillery was named by the NLJ as a member of its top 50 Elite Trial Lawyers. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit*, 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, Top 10 Securities Law Decisions of 2006 (Winter 2006). In *Kircher*, Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision.

21. Korein Tillery has been appointed as class counsel in more than fifty class actions and has successfully negotiated some of the country's largest class action settlements. *See, e.g., Parker v. Sears Roebuck & Co.*, Case No. 04-L-716 (Ill. Cir. Ct., Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc*, 04-2819 (D.N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *City of Greenville v. Syngenta Crop Prot., Inc.*, 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ($105 million settlement); *In Re: MCI Non-Subscriber Tel.*

*Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

22. Korein Tillery's settlement in *Prather v. Pfizer Inc.*, 02-L-480 (Ill.Cir.Ct. 2004), was used as an example of why state court based class actions serve the public good and the Class Action Fairness Act should not become law. *See* 150 Cong. Rec. 92, S7714-17 (July 7, 2004 statement of Sen. Durbin); 151 Cong. Rec. 12, S1082-85 (February 8, 2005 statement of Sen. Durbin). The following are descriptions of a few of the complex cases in which this firm is or has been involved:

23. *National Credit Union Administration Mortgage-Backed Securities Litigation*. The National Credit Union Administration is the independent federal agency created by the U.S. Congress to regulate, charter, and supervise federal credit unions. On behalf of the NCUA, Korein Tillery and Kellogg Huber filed a series of federal lawsuits in 2011 alleging banks misled credit unions about the quality of the bonds and the level of risk causing billions of dollars of losses that were insured by the NCUA. The Wall Street Journal has reported that 47 credit unions have failed since the start of 2009.

24. As a result of these matters, NCUA has obtained more than $2.4 billion in legal settlements. NCUA was the first federal regulatory agency for depository institutions to recover losses from investments in these securities on behalf of failed financial institutions. NCUA uses the proceeds to reduce Temporary Corporate Credit Union Stabilization Fund (Stabilization Fund) assessments charged to federally insured credit unions to pay for the losses caused by the failure of five corporate credit unions.

25. Korein Tillery and Kellogg Huber continue to prosecute a number of lawsuits on behalf of the NCUA against several other financial institutions alleging violations of federal and state securities laws in the sale of mortgage-backed securities to the four corporate credit unions as well as suits alleging their failure to perform their duties as trustees of residential mortgage-backed securities trusts.

26. *In re Foreign Exch. Benchmark Rates Antitrust Litig.,* 74 F. Supp. 3d 581, 585 (S.D.N.Y. 2015). The foreign currency exchange market, is the largest and most actively traded financial market in the world, with global trades averaging $5.3 trillion per day. In October 2013, multiple plaintiffs filed a Sherman Act case against 12 banks alleging that since 2004 they had manipulated the

benchmarks for foreign currency exchange rates that are used by many institutional traders to execute their trades. The core allegation is that Defendants executed concerted trading strategies designed to manipulate the price of currencies. The Complaint alleges that Defendants' top-level traders used electronic communications to meet and conspire for over a decade using a variety of electronic fora, including chat rooms, instant messages and email.

27. Plaintiffs' counsel pursued a rigorous investigation, defeated defendants' motion to dismiss, and through settlement cooperation uncovered a far broader set of unlawful coordinated manipulation of other daily benchmarks, as well as agreement on the "bid-ask" spread in multiple currencies, and potentially other unlawful conduct that may be the subject of additional suits.

28. To date, plaintiffs' counsel has reached settlements with nine of the 14 defendants totaling more than $2 billion. Litigation is still pending against the non-settling defendants.

29. *Price v. Philip Morris Inc.*, 2003 WL 22597608 (Ill.Cir. Mar 21, 2003), *rev'd*, 848 N.E.2d 1 (Ill. Dec 15, 2005), *reh'g denied*, 846 N.E.2d 597 (Ill. May 5, 2006), *cert denied*, 549 U.S. 1054 (Nov. 27, 2006), *petition from relief from judgment denied*, 2009 WL 2840913, (Ill. Cir., Feb. 04, 2009), *rev'd* 2011 WL 722749 (Ill. App. Ct. Feb. 24, 2011), *appeal denied*, 2011 IL 112067 (Sep. 30, 2011), *petition for relief from judgment denied*, No. 00-L-112 (Ill. Cir., Dec. 12, 2012), *rev'd and judgment reinstated*, No. 5-13-0017, 2014 WL 1696280 (Ill. App. Ct. Apr. 29, 2014), *rev'd*, 2015 IL 117687, cert pending, 15-947 (Jan. 22, 2016). In this first-ever judgment rendered in a light cigarette fraud case, Korein Tillery obtained a $10.1 billion verdict ($7.1 billion compensatory and $3 billion punitive) in a class action lawsuit alleging fraud in the marketing of Marlboro Lights and Cambridge Lights cigarettes. Plaintiffs accused Philip Morris of misleading the Illinois class of consumers by packaging cigarettes as "Lights" and claiming that these cigarettes contain "lower tar and nicotine." The trial court agreed, holding not only that these "Lights" cigarettes deliver the same amount of tar and nicotine and are therefore just as harmful as a regular cigarettes, but also that the "Lights" cigarettes actually deliver more of the most toxic substances to smokers than regular cigarettes. Three of the firm's lawyers were nominated for Public Justice's Trial Lawyer of the Year award as a result of their work on this case.

30. Philip Morris appealed the judgment and the Illinois Supreme Court reversed. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182 (2005). The Court's plurality decision held that the Federal Trade

Commission "specifically authorized" Philip Morris' use of the descriptors "light" and "lowered tar and nicotine" to describe its cigarettes, thus exempting Philip Morris from liability pursuant to section 10b(1) of the Consumer Fraud Act. *Id.* (applying 815 ILCS § 505/10b)). Subsequently, the FTC, the Department of Justice and the Solicitor General filed an amicus brief in *Altria Group, Inc. v. Good*, No. 07-562 (U.S.), a separate class action against Philip Morris then pending in the U.S. Supreme Court. The brief contradicted many of the facts advanced by Philip Morris in the *Price* litigation which formed the basis of the Illinois Supreme Court opinion. In addition, the FTC stated that "the Commission [has never] affirmatively authorized the use of descriptors such as 'light' and 'lowered tar and nicotine.'" *Id.* at *15.

31. Based on the clarification of the factual record concerning the FTC's regulation of Philip Morris, Plaintiffs petitioned for relief from the final judgment in *Price*. The Circuit Court agreed but denied Plaintiffs' petition because the court could not determine whether Plaintiffs would have prevailed in the original appeal on all of Philip Morris's other appellate arguments. Plaintiffs appealed that decision and the appellate court reversed the Circuit Court and reinstated the original $10.1 billion judgment. *Price v. Philip Morris, Inc.*, 2014 IL App (5th) 130017, 9 N.E.3d 599 (April 29, 2014). The appellate court reversed the trial court's denial of the petition, and reinstated the original trial verdict. Philip Morris appealed.

32. On November 4, 2015, the Supreme Court voted 4-2 to vacate the appellate court's judgment and dismiss the Section 2-1401 petition. The court held that the only avenue to seek relief from a reviewing court's decision is to file a motion with the reviewing court to recall its mandate. Two Justices dissented. Plaintiffs' petition for a writ of certiorari is pending.

33. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. Sept. 2, 2011). Korein Tillery filed this matter in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA – $180 million. In 2006, the case was certified and Plaintiffs won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's

decision was affirmed on interlocutory appeal. Williams v. Rohm & Haas Pension Plan, 497 F.3d 710, 714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), cert. den., 128 S.Ct. 1657 (2008).

34. *Lightfoot v. Arkema, Inc. Ret. Benefits Plan*, CIV. 12-773 JBS/JS, 2013 WL 3283951 (D.N.J. June 27, 2013). After the court certified a class of present and former plan participants, plaintiffs filed a motion for partial summary judgment on the issue whether the cost-of-living adjustments (COLAs) the Plan promised to participants who elected annuities were part of participants' "accrued benefit" under ERISA. The Plan countered with a motion for summary judgment arguing the statute of limitations had run on all class members' claims owing to statements in a 1994 Summary Plan Description (SPD) and other plan documents. Although the same judge had previously ruled that the statements in the SPD and Plan were "clear repudiations" in a companion case, currently before the Third Circuit, Plaintiffs were able to convince the judge to the court denied the Plan's motion for summary judgment and granted plaintiffs' motion for partial summary judgment, finding that the COLAs promised annuitants are accrued benefits. The case settled in 2014 with the average class member receiving $11,000 in cash that could be rolled into a retirement account.

35. *Mansfield v. ALPA*, 06-c-6869 (N.D. Ill. Dec. 14, 2009). Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

36. Plaintiffs filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the sale of $550

million in convertible notes. Plaintiffs prevailed on a number of complex and novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with Plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D.Ill. Oct. 1, 2007). Plaintiffs also successfully opposed ALPA's and United's motions for summary judgment. *Mansfield v. ALPA*, 2009 WL 2386281 (N.D.Ill. Jul. 29, 2009). Plaintiffs' successful opposition to summary judgment represents a significant victory for a plaintiff in a duty of fair representation case under the Railway Labor Act, as a court's review of a union's actions is very deferential. *E.g. Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991).

37. After additional litigation, ALPA moved to decertify the class, arguing that Plaintiffs' alternative damage theories created a conflict of interest such that class certification was no longer proper. The court again sided with Plaintiffs, holding that certification was proper, and that any potential conflict of interest could be addressed by supplemental notice. *Mansfield v. ALPA*, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009).

38. Finally, just two-weeks before trial was set to begin, and following nearly four years of hard-fought litigation, the production and review of over 1.5 million pages of documents, and nearly 40 depositions, the parties reached a settlement that resolved this action. Under the terms of the settlement, ALPA funded an aggregate settlement fund of $44 million to be directly paid to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D. Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

39. *United States ex rel. Garbe v. Kmart Corp.*, 73 F. Supp. 3d 1002 (S.D. Ill. 2014). Since 2004, Kmart pharmacies have charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by customers who paid entirely out of their own pockets with no insurance coverage. Since the beginning of the Medicare Part D drug program on January 1, 2006, however, Kmart has charged higher prices – often significantly higher prices – to customers with Medicare Part D coverage for the purchase than it charges self-paying customers for the same prescription. For

example, Kmart charged cash customers $10 for a 60-day supply of 500 mg Naproxen (available in non-prescription strength as Aleve®), but charged the Government $58.79 for the same prescription.

40. In the litigation, Kmart never disputed that it charges cash-paying customers lower prices than it charges to the Government. Instead, Kmart contends it was never required to charge the Government the lower prices because those are not the prices Kmart charges to "the general public." Rather, Kmart claims its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices, even though as a practical matter the discount prices are the prices Kmart charges to all its cash customers. Kmart also has no record of denying any cash-paying customer "membership" in Kmart's "club." The district court rejected Kmart's arguments and denied its motions for summary judgment. Kmart appealed the district court's ruling.

41. In the Seventh Circuit, Senator Charles Grassley filed an amicus brief supporting the Plaintiff. Brief of U. S. Senator Charles E. Grassley as Amicus Curiae in Support of Appellee for Affirmance, *United States ex rel. Garbe v. Kmart Corp*., 2015 WL 4910890 (7th Cir. Aug. 10, 2015). Kmart's appeal remains pending.

42. *City of Greenville v. Syngenta Crop Prot*., Inc., 904 F. Supp. 2d 902 (S.D. Ill. 2012). On October 23, 2012, the United States District Court for the Southern District of Illinois entered an order approving a $105 million class-action settlement designed to compensate Community Water Systems throughout the United States for the cost of removing the pesticide atrazine from public drinking water. The litigation between Class Members and Syngenta dated back to July 2, 2004, when Holiday Shores Sanitary District filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

43. Atrazine is used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. Atrazine has been one of the most heavily used pesticides in the U.S. Two of atrazine's key chemical characteristics--that it does not readily bind to soil, and that it persists in the environment-- dramatically increase atrazine's effectiveness as an herbicide. However, because atrazine does not bind to soil, it easily runs off of fields with rainfall and contaminates surface waters such as the rivers, lakes, and reservoirs that act as drinking-water supplies for public water providers.

44. Plaintiffs alleged that atrazine had continuously entered their water supplies and as a result of this contamination, they had to filter atrazine from their water sources.

45. After eight years of litigation, Plaintiffs were able to secure a $105 million settlement fund to be distributed to several hundred community water systems for costs of filtration of atrazine from their drinking-water supplies. *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012). The settlement amounted to approximately 76 % of the $139 million estimated to be the Class's maximum potential recovery.

46. To facilitate the settlement claims process, Korein Tillery lawyers collected 20 years of atrazine testing data into a database that was made available to each Class Member through a settlement website. From there, Claimants were able to view the test data already collected for their system and provide additional evidence of atrazine contamination to claim their share of the settlement fund. Although many class actions experience claims rates of less than 15%, in this case virtually all settlement funds were distributed to class members.

47. Public Justice honored the Korein Tillery lawyers representing the plaintiffs in this case as finalists for its Trial Lawyer of the Year award.

48. *Missouri Utility Tax Litigation*. Since 2007, Korein Tillery has represented Missouri municipalities in class action litigation that sought to recover unpaid license taxes. In suits against wireless and wireline carriers, Korein Tillery attorneys recovered hundreds of millions of dollars of license tax revenues – both retrospectively and prospectively – for more than 350 cities throughout Missouri. Considering the full amount of future tax payments, Korein Tillery will have recovered more than $1 billion for Missouri municipalities by 2017. As a result of their work in these cases, the Missouri Lawyers Weekly recognized Korein Tillery partners John W. Hoffman and Douglas R. Sprong with awards in the "largest plaintiff wins" category in 2007, 2009, 2010 and 2015.

49. In 2012, Korein Tillery was successful in persuading the Missouri Supreme Court to issue an extraordinary writ (mandamus) declaring unconstitutional a state statute that sought to sweep away this litigation by barring cities and towns from serving as class representatives. The Missouri Supreme Court found that the statute violates art. V, § 5, of the Missouri Constitution that allocates

rulemaking of court procedure to the Missouri Supreme Court. *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589 (Mo. 2012).

50. *Parker v. Sears, Roebuck & Co.*, Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007). Korein Tillery brought this action against Sears in 2004 to remedy Sears's failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered and set-up in customers' homes. In the 1960's and 1970's, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and which were extremely light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person were to place a turkey roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip forward spilling the hot contents onto anyone standing in the vicinity. Children who opened and used the range door as a step could unwillingly tip boiling liquids onto themselves. Over the last several years dozens of people have been killed and hundreds have been maimed as a result of this problem.

51. Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began requiring installing of an anti-tip bracket that could be attached to the wall or floor at the back end of the range preventing any forward tipping and maintaining complete stability. The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required the installation of anti-tip brackets in all range installations in the United States. Even Sears acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of tipping stoves.

52. Sears, Roebuck & Company has been the largest retail seller of kitchen ranges in the United States - averaging more than 800,000 ranges sold every year. When selling a gas or electric range Sears generally includes delivery, installation and hookup in customers' homes, thus, Sears became the largest installer of kitchen ranges in the United States. To increase its profits, Sears

adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

53. In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544,500,000.

54. This settlement was touted by the public interest organization Public Citizen as an example as to how consumer class actions benefit society. Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

55. *Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007). In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms. Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100% of their out-of-pocket expenses. This case was featured in The American Lawyer, Aruna Viswanatha, King & Spalding Lawyer Stirs State Judge's Ire, [29] 1 Am.Law., Jan. 2007, at 50, and mentioned in the National Law Journal. The Plaintiffs' Hot List, 30 Nat'l L.J. S8 (Nov. 22, 2007).

56. Korein Tillery has dedicated substantial resources to the prosecution of this matter. As of the filing of this affidavit, my firm has incurred more than $800,000.00 in costs and has dedicated the efforts of nine attorneys in research, drafting, document review and work with experts. Going forward, Korein Tillery intends to continue this same level of dedication in the prosecution of this matter.

57. Korein Tillery has dedicated substantial time and effort in identifying and investigating the potential claims in this action and how those claims may be properly certified.

58. This matter is being principally handled by me, Mr. Zigler, Mr. Broshuis and the associates that normally support their practice. However, like all matters the firm handles, the firm

remains ready to augment the matter's staffing when it is required. At the same time, I supervise all of the firm's matters to ensure that they are prosecuted in the most efficient manner possible.

59. Korein Tillery has both the experience and resources to prosecute this suit and adequately represent the putative class.

60. I declare under penalty of perjury that the forgoing is true and correct.

DATED: March 4, 2016

Stephen M. Tillery