UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON SENNE, et al., | Case No. 14-cv-00608-JCS |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL RECONSIDERATION** |
| KANSAS CITY ROYALS BASEBALL CORP., et al., | Re: Dkt. No. 590 |
| Defendants. | |

## I.      INTRODUCTION

On May 20, 2015, the undersigned ruled on challenges to personal jurisdiction by eleven Major League Baseball ("MLB") Clubs ("the Personal Jurisdiction Defendants").  *See* Order re Motions to Dismiss and Motions to Transfer, Docket No. 379 ("Order" or the "Personal Jurisdiction Order").  The Court found that the activities of three of the Clubs – the New York Yankees, the Pittsburgh Pirates and the Detroit Tigers – were sufficient to establish the existence of personal jurisdiction over them in California and dismissed the remaining eight Personal Jurisdiction Defendants for lack of personal jurisdiction.  Presently before the Court is a Motion for Leave to Move for Partial Reconsideration of the Court's May 20, 2015 Order Pursuant to Local Civil Rule 7-9 ("Motion").  In the Motion, the Pittsburgh Pirates and the Detroit Tigers (collectively, "the Moving Defendants") argue that the deposition testimony of named Plaintiffs Kris Watts and Lauren Gagnier contradicts their earlier declarations in this case and therefore that the Court should reconsider its previous decision as to the existence of personal jurisdiction over the Pittsburgh Pirates and the Detroit Tigers.  For the reasons stated below, the Motion is

1  DENIED.[1]

2  **II.    BACKGROUND**

3      **A.    The Court's Personal Jurisdiction Order**

4          In the Order, the Court found that it did not have general jurisdiction over the Personal

5  Jurisdiction Defendants and therefore, that there could be personal jurisdiction over them only if

6  the requirements for specific jurisdiction were met.  Order at 46.  The Court went on to address

7  specific jurisdiction on a Club-by-Club basis, addressing whether the activities of the Personal

8  Jurisdiction Defendants were sufficient to demonstrate both that their activities were aimed at

9  California (purposeful direction) and that they purposefully availed themselves of the privilege of

10  conducting business in California (purposeful availment).  *Id*. at 46-74.

11          The Court found that the purposeful direction requirement was satisfied as to all of the

12  Personal Jurisdiction Defendants because they had all engaged in "extensive scouting and

13  recruiting of California residents" and they had applied their wage and hour policies to work in

14  California, resulting in foreseeable harm.  *Id*. at 73. The Court founds that the purposeful

15  availment requirement was satisfied as to only three of the Personal Jurisdiction Defendants,

16  however, based on specific contacts between the Clubs and named Plaintiffs who were recruited

17  by or played for those clubs.  In particular, as to the Pittsburg Pirates, the Court found purposeful

18  availment based on the contacts between the Pittsburgh Pirates and named Plaintiff Kris Watts; as

19  to the Detroit Tigers, the Court found purposeful availment based on contacts between the Detroit

20  Tigers and named Plaintiff Lauren Gagnier.  The Court relied, in part, on declarations provided by

21  Watts and Gagnier, who had not yet been deposed.

22          Because the Motion turns on whether subsequent deposition testimony by Watts and

23  Gagnier casts doubt on the factual underpinnings of the Court's rulings, the Court repeats here,

24  verbatim, the reasoning offered in its Order as to the Moving Defendants.  First, as to the

25  Pittsburgh Pirates, the Court reasoned as follows:

26              **Purposeful avaliment:** In addition to the evidence of

27  _____

28  [1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28
U.S.C. § 636(c).

ongoing recruiting and scouting that the Pittsburgh Pirates conduct in California, summarized above, Plaintiffs offer evidence regarding the relationship between the Pittsburgh Pirates and named Plaintiff Kris Watts in support of specific jurisdiction. According to his declaration, Kris Watts is a California resident and was employed as a Minor League player by the Pittsburgh Pirates from June of 2006 to June of 2012. Watts Decl. ¶ 2. Watts was scouted and recruited by MLB teams, including the Pittsburgh Pirates, while he attended a California high school and a California college. Watts Decl. at ¶ 3. The Pittsburgh Pirates selected Watts in June of 2006 while he attended that California college and the area scout presented the contract to Watts in Santa Clara, California, where he signed it. *Id.* at ¶ 4. Throughout the years that he played for the Pittsburgh Pirates, Watts returned to California during the winter training periods where he performed substantial unpaid offseason work. *Id.* at ¶ 8. The Pittsburgh Pirates provided Watts with winter work packets and knew that Watts would perform that work in California because he supplied them with a California winter address. *Id.* at ¶¶ 7-8. Further, the Pittsburgh Pirates communicated with Watts in California during the offseason by telephone or text message to ensure that Watts was performing the offseason work, and sent other work-related communications, including salary addenda, to California. *Id.* at ¶¶ 11-12.

In sum, Plaintiffs have presented evidence that the Pittsburgh Pirates reached out to California to recruit Watts, presented the contract to Watts in California, had an ongoing relationship with Watts in California for a significant portion of every year over a six-year period, and required Watts to perform offseason work that they knew was being performed in California. Under these circumstances, the Court finds that the Pittsburgh Pirates have purposefully availed themselves of the privilege of doing business in California.

*Id.* at 60-61.

As to the Detroit Tigers, the Court explained:

**Purposeful availment:** In addition to the evidence of ongoing recruiting and scouting that the Detroit Tigers conduct in California, summarized above, Plaintiffs offer evidence regarding the relationship between the Detroit Tigers and named Plaintiff Lauren Gagnier in support of specific jurisdiction. In his declaration, Gagnier states that he resides in California and was employed by the Detroit Tigers from July of 2006 to March of 2012. Gagnier Decl. at ¶ 2. Gagnier was scouted and recruited by MLB teams, including the area scout for the Detroit Tigers, while he attended a California high school and later when he attended California State University - Fullerton. *Id.* at ¶ 3. When the Detroit Tigers drafted Gagnier in 2006, the area scout contacted Gagnier while he was still a resident of California to work out the terms of the agreement. *Id.* at ¶ 4. It is not clear where Gagnier signed the contract. Gagnier remained a California resident throughout his Minor League career and thus returned to California during the offseason months, where he claims he performed "much winter

3

work" for the Detroit Tigers.  *Id.*  at ¶ 5. The Detroit Tigers provided Gagnier with a "winter work packet" that Gagnier was expected to follow.  *Id*.  He also was required to provide the Detroit Tigers his offseason address so that communications could be sent to him and for drug testing purposes.  Gagnier states that he "believe[s]" the Detroit Tigers sent "materials" to him at that address.  *Id*.

In sum, even though there is no evidence that Gagnier actually signed the contract with the Detroit Tigers in California, the evidence shows that the Detroit Tigers reached out to the forum to hire Gagnier, not only by recruiting and scouting him in California but also by having their area scout contact Gagnier to work out the terms of the agreement.  Though it is not clear what communications were sent to Gagnier in California (again, the description of what he believes may have been sent to him in California is vague), the evidence shows that the Detroit Tigers had an ongoing relationship with Gagnier in California for a significant portion of every year over a six-year period, and required Gagnier to perform offseason work that they knew was being performed in California.  The Court finds that this evidence is sufficient to show that the Detroit Tigers purposefully availed themselves of the privilege of doing business in California.

*Id*. at 65-66.

### B.     The Motion

The Moving Defendants contend the Order must be reconsidered as to the Pittsburgh Pirates and the Detroit Tigers because of the discovery of new material facts, namely, the deposition testimony of Watts and Gagnier that allegedly contradicts the declarations upon which the Court relied in concluding that it has personal jurisdiction over the Moving Defendants.

#### 1.  The Pittsburgh Pirates

With respect to the Pittsburgh Pirates, the Moving Defendants point to deposition testimony by Watts that he was not actually aware of specific MLB scouts attending his college baseball games in California but *believed* that that scouts attended his games based on what his coach told him and *assumed* that the scout for the Pittsburgh Pirates, Sean Campbell, must have been one of the scouts who attended his games because the Pittsburgh Pirates ultimately drafted him.   Motion at 5-7; Watts Dep. at 113-14, 288-89.  Watts also testified that he could not remember if he filled out questionnaires from any of the teams.  Watts Dep. at 293-294. According to Defendants, this testimony contradicts Watts's sworn testimony in his declaration that "[b]efore signing [his] contract with the Pirates, the Pirates and many other MLB franchises recruited me while I played at Santa Clara."  Motion at 5-6; Watts Decl. ¶ 3.  Watts further stated

United States District Court
Northern District of California

4

1    that "[t]he Pirates and the other MLB franchises sent many scouts and other officials to my games,

2    asked that I fill out questionnaires, and sometimes elicited information directly from me or my

3    coaches." Watts Decl. ¶ 3.

4         The Moving Defendants also assert that Watts's declaration was false to the extent that he

5    stated that "[f]rom 2006 until the winter of 2011/2012, [he] resided in California during the winter

6    training period."  Motion at 7-8; Watts Decl. ¶ 8.  According to the Moving Defendants, this

7    statement is contradicted by Watts's testimony in his deposition that he spent much of the 2010,

8    2011 and 2012 off-season in Arizona with his girlfriend.  Motion at 7; Watts Dep. at 251-53, 345-

9    46.  The Moving Defendants also point to Watts's testimony that in providing an off-season

10   address, he did not have to tell the Club where he would *actually* be but rather, simply needed to

11   provide a "home address" where he could receive mail.  Motion at 7; Watts Dep. at 273-75.

12        Finally, the Moving Defendants point to Watts's exchange of messages with another

13   former minor league player in which he acknowledged that he had played only one game in

14   California.  Motion at 8;  Watts Dep. at 335-36.  According to Moving Defendants, this shows that

15   "Watts does not even believe he has had any notable contacts with California."  Motion at 8.

16             **2.  The Detroit Tigers**

17        The Moving Defendants point to Gagnier's deposition testimony that he received a

18   recruiting letter from the Detroit Tigers in Nebraska and that he signed his contract in New York.

19   Motion at 10; Gagnier Dep. at 41 & Ex. 2.  They contend this testimony contradicts his

20   declaration, in which he allegedly "stated that he was scouted and recruited solely in California."

21   Motion at 10 (emphasis added).  The Moving Defendants further assert that Gagnier's statement

22   that he "performed all of his off-season activities from 2006-2012 in California is untrue."  Motion

23   at 11.  In support of this assertion, they point to Gagnier's deposition testimony that he spent part

24   of the 2010-2011 offseason playing baseball in the Dominican Republic.  Motion at 11; Gagnier

25   Dep. at 120.

26   **III.    ANALYSIS**

27        **A.    Legal Standard**

28        Pursuant to Civil Local Rule 7-9(a), a party may bring a motion for reconsideration of any

interlocutory order "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case" if the court grants leave to bring such a motion.  Rule 7-9(b) provides that in a motion for leave to file a motion for reconsideration, "the moving party must show reasonable diligence in bringing the motion, and one of the following:

> (1)  That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2)  The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3)  A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b).  "No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party . . . seeks to have reconsidered. Civ. L.R. 7-9(c).[2]

**B.    Discussion**

In their response, Plaintiffs contend the Motion should be denied because it is untimely, repeats arguments that have already been made and does not demonstrate the existence of a "material difference in fact."  *See* Docket No. 599.  Given the magnitude of the case, the many difficult discovery issues that have arisen in recent months and the deadlines facing the parties as to the now-pending motions for class certification and decertification under the FLSA, the Court finds that the Moving Defendants were reasonably diligent in bringing the Motion.  The Court also concludes that while Defendants repeat some arguments, the focus of the Motion is new evidence

---

[2] The Moving Defendants also invoke Rule 60 of the Federal Rules of Civil Procedure, which allows courts to alter or amend a judgment.   As the Court has not entered judgment against either the Detroit Tigers or the Pittsburg Pirates, it concludes that its Order is an interlocutory order and therefore, that a motion under Civil Local Rule 7-9 is an appropriate vehicle for seeking reconsideration of it.   Even if Rule 60 applied to Defendants' Motion, however, the Court would reach the same conclusion.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    as to Watts and Gagnier.  The Motion fails, however, because the deposition testimony cited by

2    the Moving Defendants does not *materially* affect the Court's conclusions as to the existence of

3    personal jurisdiction over the Pittsburgh Pirates and the Detroit Tigers.

### 1.  The Pittsburgh Pirates

5    In the Order, the Court found that the Pittsburg Pirates had personally availed itself of the

6    right to do business in California based on evidence that "the Pittsburgh Pirates reached out to

7    California to recruit Watts, presented the contract to Watts in California, had an ongoing

8    relationship with Watts in California for a significant portion of every year over a six-year period,

9    and required Watts to perform offseason work that they knew was being performed in California."

10    The deposition testimony cited by the Moving Defendants does not alter the Court's conclusion.

11    Watts testified that he believed that the Pittsburgh Pirates scouted and recruited him while he was

12    playing baseball in California based on what his coaches told him.  Watts Dep. at 288-89.  He

13    believed that Sean Campbell must have come to see him play at his college games in California

14    because Campbell called Watts before the Pittsburgh Pirates  drafted him and later came to meet

15    with him near his California college campus to sign his contract.  *Id*. at 291.  The fact that Watts

16    was not able to testify that he was aware of the presence of specific scouts and recruiters at

17    specific games does not alter the Court's conclusion that the Pittsburgh Pirates reached out to

18    Watts in California to recruit him.  Nor have Moving Defendants pointed to any evidence

19    suggesting that the Pittsburgh Pirates scout did *not* attend Watts's college baseball games in

20    California.[3]

21    Watts's testimony regarding the time he spent in Arizona during the off-season also does

22    not change the Court's conclusion.   Regardless of whether Watts spent significant portions of his

23    time in Arizona during the offseason in 2010, 2011 and 2012, his testimony still supports the

24    Court's conclusion that "[t]hroughout the years that he played for the Pittsburgh Pirates, Watts

25    returned to California during the winter training periods where he performed substantial unpaid

26    offseason work."   *See* Watts Dep. at 251-53.

27

---

28    [3] The Court also notes that Defendants apparently have not permitted Plaintiffs to depose Sean Campbell.

Finally, Defendants' reliance on the fact that Watts joked with another former minor league player about having played in only one game in California is misplaced. The Court did not rely on the number of California games in support of its finding that it had personal jurisdiction over the Pittsburgh Pirates. Therefore this evidence is not material to the Court's decision.

### 2. The Detroit Tigers

The Court also does not find that Gagnier's deposition testimony materially changes its analysis as to personal jurisdiction. Regardless of where the contract was signed or whether he received a recruiting letter in Nabraska, Gagnier's deposition testimony supports the Court's conclusion that he was recruited by the Detroit Tigers in California while he was playing college baseball. *See* Gagnier Dep. at 83, 135. Moreover, documents produced to Plaintiffs also reflect that the Detroit Tigers recruited Gagnier in California. In particular, area scout Tim McWilliams completed a player biography reflecting that he had conducted an "in-home visit" on April 26, 2006 in Yorba Linda California, and that he had known Gagnier for 3-6 months. *See* Broshuis Decl., Ex. D. Another scouting report dated May 4, 2006 indicates that McWilliams had attended five of Gagnier's games. *Id.*, Ex. E. Nor does the fact that Gagnier spent part of one off-season playing baseball in the Dominican Republic alter the Court's conclusion that "the Detroit Tigers had an ongoing relationship with Gagnier in California for a significant portion of every year over a six-year period, and required Gagnier to perform offseason work that they knew was being performed in California."

## IV.    CONCLUSION

For the reasons stated above, the Court concludes that Moving Defendants have not demonstrated that there are "new material facts" that warrant reconsideration of its Personal Jurisdiction Order under Civil Local Rule 7-9(b). The Motion is DENIED.

**IT IS SO ORDERED.**

Dated: April 25, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California