1  PROSKAUER ROSE LLP
   Elise M. Bloom (*pro hac vice*)
2  Howard L. Ganz
   Neil H. Abramson (*pro hac vice*)
3  Adam M. Lupion (*pro hac vice*)
   Rachel S. Philion (*pro hac vice*)
4  Noa M. Baddish (*pro hac vice*)
   Joshua S. Fox (*pro hac vice*)
5  11 Times Square
   New York, NY 10036
6  Telephone:     (212) 969-3000
   Facsimile:     (212) 969-2900
7
   PROSKAUER ROSE LLP
8  Samantha L. Regenbogen (*pro hac vice*, application pending)
   sregenbogen@proskauer.com
9  One International Place
   Boston, MA  02110-2600
10 Telephone:     (617) 526-9746
   Facsimile:     (617) 526-9899
11
   PROSKAUER ROSE LLP
12 Harold M. Brody
   hbrody@proskauer.com
13 2049 Century Park East, 32nd Floor
   Los Angeles, CA  90067-3206
14 Telephone:     (310) 557-2900
   Facsimile:     (310) 557-2193
15
   *Attorneys for Defendants*
16
                    **UNITED STATES DISTRICT COURT**
17             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18 AARON SENNE, *et al.*,                    Case No. CV 14-00608 JCS (consolidated
                                             with 3:14-cv-03289-JCS)
19                        Plaintiffs,
                                             Hon. Joseph C. Spero
20 vs.

21 OFFICE OF THE COMMISSIONER OF             **DECLARATION OF PAUL K. MEYER**
   BASEBALL, an unincorporated association   **IN SUPPORT OF DEFENDANTS'**
22 doing business as MAJOR LEAGUE            **OPPOSITION TO PLAINTIFFS'**
   BASEBALL, *et al.*                        **RENEWED MOTION FOR CLASS AND**
23                                           **COLLECTIVE CERTIFICATION**
                          Defendants.        **UNDER FEDERAL RULE OF CIVIL**
24                                           **PROCEDURE 23 AND THE FLSA**

25

26

27

28

I, Paul K. Meyer, declare under penalty of perjury under the laws of the United States as follows:

**A.      Qualifications**

1.      I have personal knowledge of the facts contained in this declaration, and, if called to testify, I could and would testify to the matters stated herein.

2.      I am a founding member and the President of TM Financial Forensics, LLC ("TMF") and the leader of the class action practice.  TMF is a business, economic, financial and damages consulting company that provides services to government agencies, business entities and counsel.

3.      I am a Certified Public Accountant, Certified Fraud Examiner and accredited in business valuation.  I am an Adjunct Professor at Stanford University in the Graduate School of Engineering, where I have been teaching a course covering accounting, quantitative methods and financial issues for almost twenty-five years.  I am also on the Board of Trustees for University of San Francisco and a member of the Advisory Board for the McIntire School of Commerce at the University of Virginia.  I graduated from the University of Virginia in 1979.

4.      Prior to founding TMF, I was a Managing Director at Navigant Consulting, Inc. ("NCI").  NCI is an international consulting company.  Before joining NCI in February 2004, I was co-founder and President of Tucker Alan Inc.  Tucker Alan Inc. was a business, economic, financial and damages consulting company with approximately 350 employees and 13 offices in the United States.  Prior to founding Tucker Alan Inc. in July 1994, I was employed by Peterson Consulting, an international consulting firm.  At Peterson Consulting, I held various positions including Executive Vice President and Member of the Board of Directors.  Before joining Peterson Consulting in 1981, I worked for an international public accounting and consulting firm.

5.      I have over thirty years of experience consulting on financial, accounting, valuation, economic and damages matters and I am experienced in matters related to the scope of my work, analysis and study on this matter.  I have significant experience involving the sports and entertainment industries, including matters involving professional sports clubs, professional

leagues and related activities.  I have valued the use of professional players' name, likeness and image, as well as analyzed marketing, merchandising and endorsement arrangements.  I have also analyzed the financial operations of professional sports clubs.  I have reviewed the financial terms and conditions of many professional athlete contracts and agreements with player unions.  This experience includes analyzing signing bonuses; deferred compensation; guaranteed payments; non-guaranteed compensation and contingent compensation.  Additionally, I have experience analyzing financial data in class actions, including matters involving employee compensation and contract terms.

6.      My curriculum vitae is included as **Exhibit 1** to this Declaration.  A listing of cases in which I have testified as an expert witness at trial, arbitration and/or deposition in the last 4 years is included as **Exhibit 2** to this Declaration.  My hourly billing rate on this matter is $650.  I have no publications during the last ten years.  TMF's compensation is not dependent on the outcome of this matter.  TMF's work on this matter was performed by me or under my supervision.

**B.      Retention and Assignment**

7.      TMF was retained by counsel for Defendants in the above-captioned action to address issues related to Plaintiffs' Renewed Motion for Class and Collective Certification.

**C.      Information Considered**

8.      **Exhibit 3** to this Declaration contains a listing of various documents and information considered in this matter.  Selected pages of the documents and information listed on **Exhibit 3** may be used as exhibits.  Additionally, I may prepare graphical or illustrative exhibits based on the documents and information relied upon, and our analysis of those documents and information.  I also had a discussion with Mr. Jeff Pfeifer, Senior Director of Baseball Operations at Major League Baseball, in which Mr. Pfeifer provided answers to specific questions related to codes contained within the anonymized player transaction records produced by Defendants.

1

### D.      Overview and Methodology

2

3      9.      As stated above, TMF was retained by Defendants to address issues related to

4  Plaintiffs' Renewed Motion for Class and Collective Certification, including Plaintiffs' proposed

5  definition of the California Class,[1] which Plaintiffs define as:

6

7          "Any person who, while signed to a Minor League Uniform Player Contract,
           participated in the California League on or after February 7, 2010, and had not signed a
           Major League Uniform Player Contract before then."[2]

8

9      10.     The California League is a Class A-Advanced classification within MLB's

10  affiliated minor league baseball system.[3]  As summarized in **Table 1** below, the California League

11  consists of 10 minor league affiliates, and from February 7, 2010 through the end of the 2015

12  Championship Season, 11 different MLB Clubs have been affiliated with those ten teams.

13

14

15

16

17

18

19

20

21

_____

22

[1] I understand that Plaintiffs proposed Arizona and Florida Classes, respectively, which purport to include minor
league players who participated in spring training, extended spring training and/or instructional leagues.  (*See*
23  Plaintiffs' Motion for Reconsideration Regarding Class and Collective Certification, September 14, 2016 at p. i.)
Unlike a minor league player's participation in the California League during the Championship Season, a player's
24  participation in spring training, extended spring training and/or instructional leagues is not reflected on the transaction
histories that I reviewed.

25

[2] *See id.*

26

[3] *See* <http://www.milb.com/milb/info/teams.jsp>.

27

28

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL
PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

**Table 1: MLB Clubs with Minor League Affiliates in the California League
(2010 – 2015 Championship Seasons)**

| | MLB Club | Championship Season | | | | | |
|---|---|---|---|---|---|---|---|
| | | 2010[4] | 2011[5] | 2012[6] | 2013[7] | 2014[8] | 2015[9] |
| 1. | Arizona Diamondbacks | √ | √ | √ | √ | √ | √ |
| 2. | Cincinnati Reds | | √ | √ | √ | √ | |
| 3. | Colorado Rockies | √ | √ | √ | √ | √ | √ |
| 4. | Houston Astros | √ | √ | √ | √ | √ | √ |
| 5. | Los Angeles Angels of Anaheim | √ | √ | √ | √ | √ | √ |
| 6. | Los Angeles Dodgers | √ | √ | √ | √ | √ | √ |
| 7. | Oakland Athletics | √ | √ | √ | √ | √ | √ |
| 8. | San Diego Padres | √ | √ | √ | √ | √ | √ |
| 9. | San Francisco Giants | √ | √ | √ | √ | √ | √ |
| 10. | Seattle Mariners | √ | √ | √ | √ | √ | √ |
| 11. | Texas Rangers | √ | | | | | √ |

11.     I have been asked by counsel for Defendants to analyze player transaction records for the 11 MLB Clubs that had a minor league baseball affiliate in the California League between the 2010 and 2015 Championship Seasons.  To perform these analyses, the detailed anonymized player transaction records produced by Defendants were utilized.[10]  In total, over 469,000 data rows of player transaction history information were analyzed.

---

[4] *See* <http://www.baseball-reference.com/register/league.cgi?id=23787a29>.

[5] *See* <http://www.baseball-reference.com/register/league.cgi?id=e699968f>.

[6] *See* <http://www.baseball-reference.com/register/league.cgi?id=665f8df1>.

[7] *See* <http://www.baseball-reference.com/register/league.cgi?id=ea2e05e0>.

[8] *See* <http://www.baseball-reference.com/register/league.cgi?id=2a5fd2d9>.

[9] *See* <http://www.baseball-reference.com/register/league.cgi?id=605e809a>.

[10] *See* MLB0003903 - MLB0003923, MLB0006627.

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL
PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

12.     The individualized transaction records for each player cover the time period from the beginning of the player's minor and/or major league baseball career through the earlier of either the end of the player's career or August 31, 2015.[11]  The detailed transaction records provide information on the affiliates and/or MLB Clubs to which a player was assigned, including when the player was transferred from one affiliate and/or MLB Club to another.  Additionally, these records contain player specific transaction information, such as when a player was:

- Signed to a Major or Minor League Uniform Player Contract ("UPC");
- Placed on the disabled list;
- Placed on a rehabilitation assignment;
- Placed on an inactive list (e.g., restricted list, military list, suspended list); or
- Released by a Club, among other transactions.

13.     Each player's transaction history was individually analyzed in order to determine which players were assigned to affiliates in the California League during the 2010 through 2015 Championship Seasons.  I identified players who were assigned to a California League affiliate based on the "DATE," "ORG/CLUB FROM" and "ORG/CLUB TO" columns contained in the player transaction records.[12]     Based on Plaintiffs' proposed definition of the California Class, I

---

[11] I understand from counsel for Defendants that the transaction history data was produced to Plaintiffs on September 3, 2015 and includes transactions up to August 31, 2015.  Therefore, I have assumed there were no additional player transactions after August 31, 2015 through the end of the 2015 Championship Season on September 7, 2015.  For instance, I have assumed that all players on a California League affiliate as of August 31, 2015, remained assigned to the California League affiliate for the remainder of the 2015 Championship Season.

[12] I understand the following 15 team codes designate minor league baseball affiliates in the California League during the 2010 through 2015 Championship Seasons: ARI/VISALI (Arizona Diamondbacks/Visalia Rawhide); CIN/BAKERS (Cincinnati Reds/Bakersfield Blaze); COL/MODEST (Colorado Rockies/Modesto Nuts); HOU/LANCAS (Houston Astros/Lancaster JetHawks); LA/INLAND (Los Angeles Dodgers/Inland Empire 66ers); LA/RANCHO (Los Angeles Dodgers/Rancho Cucamonga Quakes); LAA/INLAND (Los Angeles Angels of Anaheim/Inland Empire 66ers); LAA/RANCHO (Los Angeles Angels of Anaheim/Rancho Cucamonga Quakes); OAK/STOCKT (Oakland Athletics/Stockton Ports); SD/LK ELI (San Diego Padres/Lake Elsinore Storm); SEA/BAKERS (Seattle Mariners/Bakersfield Blaze); SEA/HI DES (Seattle Mariners/High Desert Mavericks); SF/SAN JO (San Francisco Giants/San Jose Giants); TEX/BAKERS (Texas Rangers/Bakersfield Blaze); TEX/HI DES (Texas Rangers/High Desert Mavericks).  I further understand that there were more than 10 unique minor league affiliates in the California League across the 2010 through 2015 Championship Seasons because MLB Clubs can change minor league affiliates.  For example, the Rancho Cucamonga Quakes were affiliated with the Los Angeles Angels of Anaheim during the 2010 Championship Season, but switched their affiliation to the Los Angeles Dodgers starting in the 2011 Championship Season.  *See* <http://www.baseball-reference.com/register/team.cgi?id=b1d2fe83> and <http://www.baseball-reference.com/register/team.cgi?id=cce6c703>.

---

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL
PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

was then instructed by counsel for Defendants to remove the following groups of players from my

analysis:

- Players who signed a Major League UPC prior to or on February 7, 2010;
- Players who signed a Major League UPC prior to their first assignment to an affiliate in the California League; and
- Players who were placed on an inactive list (e.g., restricted list, military list, suspended list) during the entirety of their assignment to a California League affiliate.

14.     Additionally, for players who were assigned to a California League affiliate and

signed a Major League UPC after February 7, 2010, based on Plaintiffs' proposed definition of the

California Class, I was asked by counsel for Defendants to only analyze their transactions prior to

signing their Major League UPC.

15.     Based on these parameters, a total of 2,113 unique players were assigned to

affiliates in the California League during the 2010 through 2015 Championship Seasons.  **Table 2**

below summarizes the total number of players for each Championship Season based on the

parameters addressed above.

**Table 2: Total Number of Unique Players in the California League by Championship Season Based on Plaintiffs' Proposed California Class Definition 2010 Through 2015 Championship Seasons**[13]

| Championship Season | Total Number of Unique Players Each Season |
|---|---|
| 2010 | 501 |
| 2011 | 479 |
| 2012 | 489 |
| 2013 | 482 |
| 2014 | 497 |
| 2015 | 517 |
| **Total Unique Players** | **2,113**[14] |

**E.    California League Championship Season Related Analyses and Results**

**1.    The Majority of Players Assigned to California League Affiliates Were Also Assigned to Affiliates in Other States During the Same Championship Season**

16.    For the 2010 through 2015 Championship Seasons, I have been asked to determine the number of players in each season who were assigned to a California League affiliate and who also were assigned to a minor league affiliate in another state (other than California) during the same Championship Season.  To perform this analysis, I individually analyzed each of the 2,113 players' respective transaction histories during the 2010 through 2015 Championship Seasons to determine whether or not the player was transferred out of the California League and assigned to an affiliate in another state and/or vice versa.

---

[13] *See* **Exhibit 4**.

[14] Since players may be assigned to a California League affiliate in multiple seasons, the total number of players in each season cannot be added together to determine the total number of unique players across the 2010 through 2015 Championship Seasons.

17.    As summarized on **Table 3** below and on **Exhibit 4**, during the 2010 through 2015 Championship Seasons, the percentage of players who were assigned to an affiliate in the California League and were also assigned to an affiliate in another state during the same season ranged between 68% and 75%, depending on the season.[15]

**Table 3: Minor League Baseball Players Who Were Assigned to a California League Affiliate and an Affiliate in Another State During the Same Season[16]**

| Championship Season | Number of Players Who Were Assigned to a California League Affiliate and an Affiliate in Another State During the Same Season[17] | Total Number of Players Assigned to the California League | % of Total |
|---|---|---|---|
| | A | B | C=A/B |
| 2010 | 364 | 501 | 72.7% |
| 2011 | 334 | 479 | 69.7% |
| 2012 | 353 | 489 | 72.2% |
| 2013 | 331 | 482 | 68.7% |
| 2014 | 369 | 497 | 74.2% |
| 2015 | 386 | 517 | 74.7% |

---

[15] This analysis does not capture players who were transferred to and from a California League affiliate on the same day.  Such instances would require additional highly-individualized investigation and analysis to determine the nature of the transfer (e.g., whether it was purely administrative) and if the player actually reported to and played for the California League affiliate.  That information could not be determined based solely on the player transaction histories.

[16] *See* **Exhibit 4**.

[17] These amounts include players who were assigned to both a California League affiliate and a Pacific Coast League ("PCL") affiliate based in California (*i.e.,* the Sacramento River Cats and/or the Fresno Grizzlies) during the same Championship Season.  For example, 4 players assigned to a California League affiliate were also assigned to a California based PCL affiliate during the 2010 Championship Season.  The PCL includes affiliates in 12 states other than California.

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

1

2

**2.     For Players Who Were Assigned to Affiliates in Multiple States During the Same Championship Season, The Number of Days Those Players Were Assigned to an Affiliate in the California League Varied by Player**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

        18.     For players who were assigned to a California League affiliate and an affiliate in another state during the same Championship Season, I have been asked to analyze the number of days those players were assigned to a California League affiliate during the season.  To perform this highly-individualized analysis, I first determined the date when each player's assignment(s) to a California League affiliate began during the Championship Season.  Next, I determined the corresponding date when each player's assignment(s) to a California League affiliate ended during the Championship Season.   To determine the end date of a player's assignment(s) to a California League affiliate during the Championship Season, I identified the earliest date on which one of the following actions occurred during each Championship Season for every player: the player was transferred to a non-California League affiliate; the player was released by a California League affiliate; the player became a free agent; the player retired; or the Championship Season ended. Based on the start and corresponding end date of each player's assignment(s) to a California League affiliate during the Championship Season, I then calculated the number of days each player was assigned to a California League affiliate.  Adjustments were made to each player to remove periods of time when a player was placed on an inactive list (*e.g.,* the restricted list, military list, suspended list, temporarily inactive list, etc.).[18]

19

20

21

22

23

24

        19.     As illustrated below, the number of days each player was assigned to an affiliate in the California League varied extensively by player and by season.  As illustrated on **Figure 1** below and **Exhibit 5**, during the 2010 Championship Season, of the 364 players who were assigned to a California League affiliate as well as an affiliate in another state, the number of days a player within that group was assigned to a California League affiliate varied from 1 day to 151 days.  Additionally, 40 of the 364 players (approximately 11%) were assigned to an affiliate in the

25

26

27

28

--------

[18] If a player had multiple assignments to a California League affiliate during the same Championship Season, I included the duration of each of those assignments in my analysis.

10

California League during the 2010 Championship Season for one week or less (*i.e.,* 1 to 7 days). As summarized in **Exhibit 5**, similar observations can be made for the 2011 through 2015 Championship Seasons.

**Figure 1: Number of Days Players Were Assigned to a California League Affiliate For Players Who Were Assigned to Affiliates in Multiple States 2010 Championship Season[19]**



**3.**     **For Players Who Were Assigned to Affiliates in Multiple States During the Same Championship Season, The Majority of Their Time Was Spent Assigned to an Affiliate Outside of the California League**

20.     For players who were assigned to a California League affiliate and an affiliate in another state during the same Championship Season, I have been asked to analyze the total

---

[19] *See* **Exhibit 5.**  These figures only include players who were assigned to affiliates in multiple states during the same Championship Season.

number of days in aggregate that those players were assigned to an affiliate outside of the California League during the Championship Season.  To perform this highly-individualized analysis, I reviewed each player's transaction history in the same manner as I calculated the number of days each player was assigned to a California League affiliate.  However, instead of identifying the start date and corresponding end date for an assignment(s) to a California League affiliate, I determined the start date and corresponding end date for each player's assignment(s) to non-California League affiliate(s).   The total number of days for each of the relevant players were then added together to calculate an aggregate amount of days for each Championship Season.

21.     As summarized on **Table 4** below and **Exhibit 6**, the percentage of time that these players spent assigned to an affiliate outside the California League in another state ranged between 52% and 56%, depending on the season.  In other words, in total, these players spent more time assigned to an affiliate outside of California than they did to a California League affiliate.

**Table 4: Total Number of Days Players Were Assigned to an Affiliate Outside of the California League During the 2010 Through 2015 Championship Seasons** [20]

| Championship Season | Total Number of Days Assigned to an Affiliate Outside of the California League | Total Number of Days | % of Total |
|---|---|---|---|
| | A | B | C=A/B |
| 2010 | 29,733 | 53,264 | 55.8% |
| 2011 | 24,891 | 47,367 | 52.5% |
| 2012 | 26,275 | 49,881 | 52.7% |
| 2013 | 25,925 | 48,305 | 53.7% |
| 2014 | 28,016 | 52,946 | 52.9% |
| 2015 | 30,412 | 55,369 | 54.9% |

[20] *See* **Exhibit 6**.  These figures only include players who were assigned to affiliates in multiple states during the same Championship Season.

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

**4.     The Number of Different States Players Were Assigned to During the Championship Season Varied by Player and by Season**

22.     For the 2010 through 2015 Championship Seasons, I have been asked to identify the number of different states players were assigned to in a given season.  I note at the outset that this analysis focuses only on the home state of the affiliate to which a player was assigned, and, therefore, does not take into account the extent to which players may have engaged in interstate travel throughout the Championship Season.  To perform this highly-individualized analysis, I first analyzed each player's individual transaction history during each Championship Season to determine the affiliate(s) that each player was assigned to during that season.  Next, I identified the states in which each minor league affiliate was located.  After identifying the relevant minor league affiliate(s) for each player, and the state in which each of the relevant minor league affiliates is located, I then calculated the number of different states to which a player was assigned during each Championship Season.[21]

23.     As summarized on **Exhibit 7**, the number of different states to which players were assigned to minor league affiliates during a given season varied between one and six states, depending on the player and season.  Additionally, as illustrated in **Table 5** below, between 25% and 32% of players were only assigned to a California League affiliate during a given Championship Season.  In other words, between 68% and 75% of players were assigned to affiliates in more than one state during the Championship Season, and many players played in multiple states during the same season.

---

[21] I note that certain players were assigned to affiliates outside of the U.S.  Specifically, certain players were assigned to affiliates in Mexico, the Dominican Republic and British Columbia, Canada.  I have included these assignments in my analysis.

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL
PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

**Table 5: Percentage of Players Who Were Assigned to a Different Number of States During the 2010 Through 2015 Championship Seasons**[22]

| Championship Season | California League Only | 2 States | 3 States | 4 States | 5 States | 6 States | Total More Than One State |
|---|---|---|---|---|---|---|---|
| | *A* | *B* | *C* | *D* | *E* | *F* | *G = B+C+D+E+F* |
| 2010 | 27.3% | 43.9% | 21.6% | 6.0% | 1.2% | 0.0% | 72.7% |
| 2011 | 30.3% | 42.2% | 21.3% | 5.4% | 0.8% | 0.0% | 69.7% |
| 2012 | 27.8% | 48.9% | 18.2% | 4.5% | 0.6% | 0.0% | 72.2% |
| 2013 | 31.3% | 44.2% | 20.7% | 3.1% | 0.6% | 0.0% | 68.7% |
| 2014 | 25.8% | 47.5% | 20.9% | 5.0% | 0.8% | 0.0% | 74.2% |
| 2015 | 25.3% | 43.9% | 22.8% | 7.4% | 0.4% | 0.2% | 74.7% |

24.     Additionally, I was asked to quantify the total number of different states which players were assigned to an affiliate in during the 2010 through 2015 Championship Seasons.  As summarized on **Exhibit 8**, there are 38 different states and 3 different countries (41 different locations in total) with affiliates in which players were assigned during the 2010 through 2015 Championship Seasons.[23]  Additionally, as summarized in **Table 6** below, there were between 27 and 33 different states in which players were assigned to affiliates during each season between 2010 and 2015.

---

[22] *See* **Exhibit 7**.

[23] As noted above, certain players were assigned to affiliates outside of the U.S.  Specifically, certain players were assigned to affiliates in Mexico, the Dominican Republic and British Columbia, Canada.

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

**Table 6: Number of Different States Other Than California Which Players Were Assigned to During the 2010 Through 2015 Championship Seasons**[24]

| Championship Season | Number of Different States Which Players Were Assigned To |
|---|---|
| 2010 | 33 |
| 2011 | 27 |
| 2012 | 29 |
| 2013 | 30 |
| 2014 | 29 |
| 2015 | 32 |

**5.     First-Year Players Comprised Less Than 5% of Players in the California League**

25.     For each of the 2010 through 2015 Championship Seasons, I have been asked to identify the number of first-year players assigned to California League affiliates.  To perform this highly-individualized analysis, I analyzed each player's individual transaction history to identify the year in which each player signed his first Minor League UPC, which I consider to be a player's "first-year."[25]  I then analyzed the composition of the players assigned to affiliates in the California League during the 2010 through 2015 Championship Seasons to determine the number of first-year players assigned to affiliates in the California League.

26.     As summarized on **Table 7** below and on **Exhibit 9**, during the 2010 through 2015 Championship Seasons, the percentage of players who were first-year players in the California League ranged between 2.4% and 5.1%, depending on the season.  Overall, during the 2010

---

[24] *See* **Exhibit 8**.  These figures only include players who were assigned to affiliates in multiple states during the same Championship Season.

[25] For purposes of my analysis, I consider each subsequent Championship Season after a player's first-year to be an additional year for a player (e.g., if a player signed his first Minor League UPC in 2011, I consider the 2014 Championship Season to be his "fourth-year").

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

through 2015 Championships Seasons, the total percentage of players that were assigned to an affiliate in the California League during their first year was 4.8%.

**Table 7: Percentage of First-Year Players in the California League 2010 Through 2015 Championship Seasons**[26]

| Championship Season | Number of First-Year Players | Total Number of Players | % of Total |
|---|---|---|---|
| | *A* | *B* | *C=A/B* |
| 2010 | 14 | 501 | 2.8% |
| 2011 | 20 | 479 | 4.2% |
| 2012 | 25 | 489 | 5.1% |
| 2013 | 14 | 482 | 2.9% |
| 2014 | 12 | 497 | 2.4% |
| 2015 | 17 | 517 | 3.3% |
| **Total Unique Players** | **102** | **2,113**[27] | **4.8%** |

[26] *See* **Exhibit 9**.

[27] Since players may be assigned to a California League affiliate in multiple seasons, the total number of players in each season cannot be added together to determine the total number of unique players across the 2010 through 2015 Championship Seasons.

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3         Executed on October 14, 2016, at San Francisco, California.

4

5

6                                                    _____

7                                                    Paul K. Meyer

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF PAUL K. MEYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RENEWED MOTION FOR CLASS AND COLLECTIVE CERTIFICATION UNDER FEDERAL RULE OF CIVIL
PROCEDURE 23 AND THE FLSA
- CASE No. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)