UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON SENNE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KANSAS CITY ROYALS BASEBALL CORP., et al.,<br><br>Defendants. | Case No.  14-cv-00608-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RULE 23(B)(2) CLASS CERTIFICATION**<br><br>Re: Dkt. No. 923 |

## I.     INTRODUCTION

Plaintiff Cody Sedlock brings a Motion for Rule 23(b)(2) Class Certification ("Motion") in which he asks the Court to certify a proposed Rule 23(b)(2) class and appoint Korein Tillery LLC and Pearson, Simon & Warshaw, LLP as Co-Lead Class Counsel for the proposed (b)(2) class as well as the (b)(3) classes that have already been certified.[1]  A hearing on the Motion was held via Zoom webinar on June 25, 2021 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[2]

## II.     BACKGROUND

### A.   Procedural Background Related to Class Certification under Rule 23[3]

Plaintiffs are minor league baseball players who assert claims under the federal Fair Labor Standards Act ("FLSA") and the wage-and-hour laws of California, Arizona, and Florida against

---

[1] These firms were appointed as interim co-lead counsel at the outset of the case.  *See* dkt. no. 236. Defendants have not opposed their appointment as class counsel for the (b)(3) classes or the proposed (b)(2) class.

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

[3] Because the instant motion addresses only the propriety of certifying a class under Rule 23(b)(2), the Court does not include herein the procedural background relating to class certification under the FLSA.

United States District Court
Northern District of California

1    Major League Baseball ("MLB"), MLB Commissioner Bud Selig, and 22 MLB franchises

2    ("Franchise Defendants").[4]  Plaintiff Cody Sedlock is a current minor league baseball player; the

3    remaining plaintiffs are former minor league baseball players.

4           Early on in the case, the Franchise Defendants brought a Motion to Dismiss the Second

5    Consolidated Amended Complaint in Part for Lack of Subject Matter Jurisdiction and for Failure

6    to State a Claim. Dkt. No. 410.  In that motion, the Franchise Defendants asked the Court to

7    dismiss certain state law causes of action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules

8    of Civil Procedure on the basis that Plaintiffs lacked standing as to these claim and/or that they

9    failed to state a claim.  *Id.* at 1. Both arguments were based on the premise that in order to have

10   standing to assert a claim against a particular defendant under a particular state's law there must be

11   a named Plaintiff who is alleged to have performed work for that defendant in that state.  *Id.*  at 4.

12   The Franchise Defendants argued that the standing question had to be resolved prior to class

13   certification as a threshold matter of jurisdiction.  The Court disagreed, concluding that it was

14   appropriate to defer ruling on standing until the class certification stage of the case.  Dkt. No. 420

15   ("Article III Standing Order").

16          While the Court did not decide the standing question in its Article III Standing Order, it

17   "summarize[d] . . . the relevant case law on standing in Rule 23 class actions and addresse[d] some

18   of the cases cited by the parties in support of their positions."  *Id.* at 15-16.  It observed that

19   addressing standing in the class action context "is 'complicated . . . because a named plaintiff

20   seeks to litigate the claims of others . . . .' "  *Id.*  at 16 (quoting Newberg on Class Actions § 2.6).

21   "Thus, while the 'underlying standing principle is that the injury that a plaintiff suffers defines the

22   scope of the controversy she is entitled to litigate,' in the class context there is a 'disjuncture'

23   because 'the class representative may seek to litigate harms not precisely analogous to the ones

24   she suffered but harms that were nonetheless suffered by other class members.' "  *Id.* (quoting

25   Newberg on Class Actions § 2.6).  Thus, "courts have 'grapple[d] with whether this type of

26

27   ─────────────────────────
     [4] While there are currently 22 Franchise Defendants, Plaintiffs originally named 30 Franchises as
28   defendants.  The Court dismissed eight of the franchises for lack of personal jurisdiction in its
     May 20, 2015 Order, dkt. no. 379.

1  dispute is really one of standing or more properly one of typicality and adequacy of representation

2  in the class certification phase.' " *Id.* at 17 (quoting *Ogden v. Bumble Bee Foods, LLC*, Case No.

3  C-12-1828 LHK, 292 F.R.D. 620, 623 (N.D. Cal. 2013)).

4      The undersigned described the tension in the Supreme Court's decisions, the lack of clear

5  guidance in the Ninth Circuit's decisions and the split of authority among district courts in the

6  Ninth Circuit.   It noted that some Ninth Circuit decisions "support the conclusion that it is

7  enough, in a class action, to demonstrate that 'at least one named Plaintiff meets the

8  requirements.'" *Id.*  at 20 (quoting *Bates v. United Parcel Service, Inc*., 511 F.3d 974, 985 (9th

9  Cir. 2007)) and found that "[u]nder this approach, Plaintiffs' allegations in the SCAC may be

10  sufficient to show Article III standing because all of the Franchise Defendants are alleged to have

11  employed one or more named Plaintiff, there is a named Plaintiff who has standing to invoke

12  every state's law and all Plaintiffs have demonstrated actual injury by alleging that one of the

13  Franchise Defendants failed to pay them at all for some work and also failed to pay them required

14  overtime." *Id.*  The Court declined to decide the question, however, because it found that "at a

15  minimum, it is appropriate to address whether there is standing to assert the claims that are

16  challenged by the Franchise Defendants after class certification." *Id.*

17      In March 2016, Plaintiffs moved the Court to certify Rule 23(b)(3) and Rule 23(b)(2)

18  classes under the laws of eight states' laws to pursue minimum wage and overtime violation

19  claims for baseball activities performed throughout the year. Dkt. No. 496. The Court denied the

20  motion in full.  Dkt. No. 687 ("First Class Certification Order"). The Court found, *inter alia*, that

21  because Plaintiffs sought compensation for work players performed during the off season, it would

22  be difficult to determine class membership. *Id.*  at 59-60.  The Court reasoned that in contrast to

23  the activities players engage in during spring training, the championship season and instructional

24  leagues, "there appear to be wide variations in the types of activities in which minor league

25  players engaged to meet their winter training obligations, the degree of discretion players had as to

26  how they conducted their winter training and the degree of supervision over the players by the

27  Clubs.  As a consequence, to evaluate which of the players' winter training activities constituted

28  'work' would be much more likely to involve highly individualized inquiries that make the class

United States District Court
Northern District of California

3

definition 'unworkable.'" *Id.* at 60. The Court further concluded that Plaintiffs failed to satisfy the typicality and adequacy requirements of Rule 23, as Plaintiffs could not demonstrate that "the representatives, as a group, [could] assert timely claims based on all of the various types of activities that [were] the subject of the class claims asserted under the state's laws." *Id.* at 65-66, 68. The Court denied certification of the Rule 23(b)(2) classes for the additional reason that all of the named Plaintiffs at that time were former minor league players and therefore, they did not have standing to seek injunctive and declaratory relief.  *Id.* at 92-93.

Plaintiffs subsequently brought a motion for reconsideration, asking the Court to certify narrower classes under Rule 23(b)(2) and (b)(3). Dkt. No. 720.   In particular, Plaintiffs asked the Court to certify under Rule 23(b)(3) an Arizona class and a Florida class for work performed in those states during spring training, extended spring training, and the instructional leagues. Plaintiffs also asked the Court to certify under Rule 23(b)(3) a California class that included players who participated in the California League during the championship season. In addition, Plaintiffs requested certification of Rule 23(b)(2) injunctive relief classes consisting of current minor league players who participate in spring training, extended spring training, or the instructional leagues in Florida and Arizona. To address the Court's concerns about standing, four then-current minor league players moved to intervene to represent the proposed (b)(2) class. Plaintiffs pointed to the results of a survey conducted by their expert ("the Main Survey") and other documentary evidence such as training schedules to show that the average hours worked during spring training, instructional leagues and the championship season could be quantified on a classwide basis such that Plaintiffs' claims were amenable to class treatment.

In its March 17, 2017 Order, the Court found that the Main Survey was admissible under *Daubert*, denying Defendants' motion to exclude it, and concluded that in combination with other evidence, it was sufficient to show that Rule 23(b)(3)'s predominance requirement was met as to the proposed California class.  Dkt. No. 782 ("Second Class Certification Order") at 56-57.  The Court also found that as to all of the proposed classes, Rule 23(a)'s numerosity, commonality and typicality requirements were met.  *Id.* at 49.  The Court found, however, that with respect to the Florida and Arizona classes, the adequacy requirement of Rule 23(a) and the predominance

United States District Court
Northern District of California

1  requirement of Rule 23(b)(3) were defeated by choice of law concerns.  *Id.* at 50-51, 63-65.

2  Similarly, the Court concluded that certification of Plaintiffs' proposed Rule 23(b)(2) classes was

3  inappropriate because the Court "could not necessarily adjudicate the claims of the Rule 23(b)(2)

4  classes or fashion a remedy . . . based on the law of only one or two states" but instead "could

5  potentially be required to apply the law of numerous states to Plaintiffs' claims, which

6  undermine[d] the cohesiveness of the class."  *Id.* at 66.

7          At Defendants' request, the district court certified the Second Class Certification Order for

8  interlocutory review under 28 U.S.C. § 1292. The Ninth Circuit granted both Defendants' petition

9  for permission to appeal the certification of the California class and Plaintiffs' petition for

10  permission to appeal the denial of certification for the Arizona, Florida, and Rule 23(b)(2) classes

11  and the appeals were consolidated.   The Ninth Circuit affirmed this Court's certification of the

12  California class but reversed as to its denial of certification of the Arizona, Florida and (b)(2)

13  classes, concluding that the Court's choice of law analysis was incorrect.  *Senne v. Kansas City

14  Royals Baseball Corp.*, 934 F.3d 918, 933-937 (9th Cir. 2019), cert. denied, 141 S. Ct. 248 (2020).

15          In its decision, the Ninth Circuit found that Plaintiffs' proposed Florida and Arizona (b)(3)

16  classes would not raise choice of law problems because the claims for each of these classes would

17  be governed by the law where the work occurred for all class members, that is, the law of Florida

18  and Arizona.  *Id.*  It further found that the Court's "errors in its choice-of-law analysis relating to

19  the proposed Arizona and Florida Rule 23(b)(3) classes appl[ied] equally to its refusal to certify

20  the proposed Rule 23(b)(2) class."  *Id.*  at 937.  In addition, it concluded the Court "erred in

21  imposing a 'cohesiveness' requirement for the proposed Rule 23(b)(2) class[,]" explaining as

22  follows:

23          Although we have never explicitly addressed whether
         "cohesiveness" is required under Rule 23(b)(2), courts that
24          have imposed such a test treat it similarly to Rule 23(b)(3)'s predominance
         inquiry—something we have previously rejected in no uncertain
25          terms. *See Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)
         ("[W]ith respect to 23(b)(2) in particular, the government's dogged
26          focus on the factual differences among the class members appears to
         demonstrate a fundamental misunderstanding of the rule. Although
27          common issues must predominate for class certification under Rule
         23(b)(3), no such requirement exists under 23(b)(2)."); *see also* 2
28          Newberg on Class Actions § 4:34 (5th ed. 2012) (describing similarity
         between predominance under Rule 23(b)(3) and "cohesiveness"

5

under Rule 23(b)(2) in courts that have adopted it).

*Id.* at 937-938.  For these reasons, the Ninth Circuit reversed this Court's denial of certification of the Rule 23(b)(2) classes and remanded for further consideration of whether they should be certified.

**B.    The Motion**

In the Motion, Plaintiffs ask the Court to certify the following (b)(2) class:

> Any person who is or will in the future be signed to a Minor League Uniform Player Contract and performs services pursuant to that contract in Florida, Arizona, or California.

Motion at 1. According to Plaintiffs, "The primary differences between the (b)(2) class and the already-certified (b)(3) classes are the forms of relief sought and membership in the classes." *Id.* In particular, while the (b)(3) classes are composed of current and former players seeking retrospective relief, namely damages, the proposed (b)(2) class will include current and future players seeking "prospective relief in the form of an injunction, enjoining Defendants' unlawful wage practices, and corresponding declaratory relief." *Id.*

Plaintiffs contends the requirements of Rule 23(b)(2) and all the requirements of Rule 23(a) are satisfied.  They further contend the proposed class representative, Cody Sedlock, has standing to represent the (b)(2) class.[5]

According to Plaintiffs, the requirements of Rule 23(b)(2) are "plainly met." *Id.* at 3.  Rule 23(b)(2) provides that "[o]ne or more members of a class may sue … as representative parties on behalf of all members only if … the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Plaintiffs contend this requirement is satisfied here because the proposed (b)(2) class seeks " 'uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole.' "

---

[5] Sedlock, who is currently a minor league player for a team affiliated with the Baltimore Orioles, seeks to represent the (b)(2) class because the four putative (b)(2) representatives who sought certification in 2016 have ended their minor league careers.

United States District Court
Northern District of California

1   *Id.* at 3 (quoting *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014)).  Specifically, Plaintiffs

2   point to the Court's finding in its First Class Certification Order "that Defendants' uniform wage-

3   and-hour policies and practices apply to all minor leaguers: Defendants do not pay minimum

4   wages during training seasons, overtime during any season, and they do not keep time records."

5   *Id.* (citing First Class Certification Order at 62-63; *Senne*, 934 F.3d at 923, 944).  Thus, Plaintiffs

6   contend, the Court could award indivisible relief to the (b)(2) class as a whole in the form of "[a]

7   judicial declaration that Defendants are bound by the wage-and-hour laws of Florida, Arizona, and

8   California and an injunction mandating Defendant's compliance with the wage and record-keeping

9   requirements of those laws." *Id.*

10      Plaintiffs further assert that the numerosity and commonality requirements of Rule 23(a)

11   are satisfied by the proposed (b)(2) class.  *Id.* at 4-5.  As to numerosity, they note that the Court

12   found that all previously proposed classes were sufficiently numerous, and Defendants never

13   disagreed. *Id.* at 4 (citing First Class Certification Order at 55; Second Class Certification Order at

14   49).  Likewise, they point to the Court's findings in its First and Second Class Certification Orders

15   that the commonality requirement was met.  *Id.*  According to Plaintiffs, in those Orders, the Court

16   found that the class claims raised common issues at to "whether the Clubs and MLB are joint

17   employers;"  "whether the activities Minor League players perform at the ballpark and/or in

18   connection with games constitute 'work' for the purposes of the applicable wage and hour laws;"

19   and "whether the common compensation policies applied to Minor Leaguers by Defendants under

20   the Minor League Rules and Uniform Player Contracts—including failure to pay players a salary

21   outside the championship season and failure to pay minimum wage and overtime during the

22   championship season—violate the applicable wage and hour laws." *Id.*  Plaintiffs contend

23   "[t]hose are the same key questions that will need answering to provide the relief sought in the

24   proposed (b)(2) class" and therefore, that commonality is satisfied here as well.  *Id.* at 5.

25      Next, Plaintiffs address the question of Sedlock's standing to represent the proposed (b)(2)

26   class, pointing to the Court's observation that courts have "grappled" with the question of whether

27   a class representative's ability to represent class members whose claims are not identical to those

28   of the class representative should be treated as a question of standing or rather, as a matter of

United States District Court
Northern District of California

7

adequacy and typicality under Rule 23. *Id.* at 5 (citing Article III Standing Order at 16). Plaintiffs contend, "Mr. Sedlock plainly has standing to represent a class of employees working in Florida for MLB like himself" but recognize that "his standing to represent employees working in California and Arizona or working in any state for any of the twenty-two Franchise Defendants may be less immediately apparent." *Id.* at 5. Plaintiffs argue, however, that Sedlock's "individual standing should be beyond legitimate dispute" because he is currently a minor league pitcher for an MLB affiliate who is entering his sixth season under the same Uniform Players Contract that binds all class members and he participates in spring training in Florida (where he was, in fact, training when the Motion was filed). *Id.* at 5-6.

Further, Plaintiffs assert, "the question of whether Sedlock can represent injunctive relief claims against the twenty-two Franchise Defendants or seek relief under Arizona and California law is a Rule 23 question, not a question of standing." *Id.* at 6 (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting Newberg on Class Actions § 2:6)). Plaintiffs recognize that some courts within this district have "continued to take divergent approaches to such issues when a plaintiff with standing seeks to represent class members whose claims arise under a different state's law." *Id.* at 6-7 (citing *Rivera v. Invitation Homes, Inc*., No. 18-cv-03158-JSW, 2019 WL 11863726, at *4 (N.D. Cal. 2019) (applying a standing approach) and *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, and Prods. Liab. Litig*., 295 F. Supp. 3d 927 (N.D. Cal. 2018) (applying a class certification approach)). They argue, however, that the class certification approach is correct, having been explicitly endorsed by the Ninth Circuit, the Supreme Court and most other federal courts to have addressed the issue. *Id.* (citing *Melendres*, 784 F.3d at 1262).

Plaintiffs argue that even if the Court were to conclude that these questions implicate Article III standing, it should take the approach that was taken by the First Circuit in *In re Asacol Antitrust Litig.*, in which the court concluded that the Article III standing inquiry "track[ed]" the Rule 23 analysis, leading the court to conclude that the named plaintiffs had standing to represent class members whose claims were asserted under parallel laws of other states that were not materially different from the laws governing the named plaintiffs' claims because they nonetheless

had a personal stake in the outcome of the case. *Id.* at 10-11 (citing 907 F.3d 42, 49 (1st Cir. 2018)).

Under the class certification approach, Plaintiffs contend, Sedlock meets both the typicality and adequacy requirements of Rule 23. *Id.* at 12-17. As to typicality, Plaintiffs argue that Sedlock's claims against MLB are typical of the claims of class members who work or will work in Florida because he is a minor league player who, like other players who work in Florida, has been underpaid in violation of Florida's wage-and-hour laws. *Id.* at 12-13. Plaintiffs contend Sedlock's claims against MLB are also typical of the claims of class members against MLB who play or will play in California and Arizona because those states have parallel wage and reporting laws that are not materially different from Florida law and all minor leaguers who are being and will be underpaid under the three states' laws have a substantial and shared interest in proving that the underpayments are the result of MLB's unlawful wage practices and can be redressed by a judicial decision. *Id.* at 13-15.

Plaintiffs argue further that "the differences among the three states' wage laws—different wage rates and differences in recordkeeping requirements—are not relevant to the proposed (b)(2) class" because the class will seek only prospective relief, namely, "1) a declaration that Defendants' wage policies—not to pay players in compliance with applicable wage-and-hour laws and not to keep time records—are unlawful, and 2) an injunction, both prohibitory and mandatory, forbidding continued enforcement of those wage policies and mandating compliance with applicable wage and record-keeping requirements." According to Plaintiffs, "[a] single declaration and injunction can accomplish those objectives, whether based on Arizona, Florida, or California law—or all three." *Id.* at 15.

Plaintiffs also argue that Sedlock's claims against the Franchise Defendants are typical of the claims of class members who play or will play in Florida, California, and Arizona because under Rule 65(d)(2), injunctive relief is binding not only on "(A) parties" and "(B) their officers, agents, servants, employees, and attorneys[,]" but also on "(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)" so long as they receive "actual notice" of the injunction. *Id.* at 15. According to Plaintiffs, the Franchise Defendants

9

United States District Court
Northern District of California

1  meet these requirements because, as parties, they will receive actual notice of any injunction the

2  Court enters in this litigation and they have admitted that they are "in active … participation" with

3  MLB.  *Id.* (citing MLB's Answer (Dkt. No. 386) at 15 ¶ 62 ("admit that the Office of the

4  Commissioner of Baseball, d/b/a MLB, is an unincorporated association, also doing business as

5  Major League Baseball, and it is currently comprised of 30 Major League Baseball Clubs");

6  Giants' Answer (Dkt. No. 407) at 13 ¶ 62 (same)).

7          Plaintiffs argue further that Sedlock meets the typicality requirement despite the general

8  rule that " 'typicality is lacking when the representative plaintiff's cause of action is against a

9  defendant unrelated to the defendants against whom the cause of action of the members of the

10  class lies.' "  *Id.*  at 16 (quoting *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir.

11  1973)).  This is because there is an exception where " 'all injuries are the result of a conspiracy or

12  concerted schemes between the defendants at whose hands the class suffered injury' or 'in

13  instances in which all defendants are juridically related in a manner that suggests a single

14  resolution of the dispute would be expeditious.' "  *Id.* (quoting *La Mar*, 489 F.2d at 466).

15  According to Plaintiffs, the Court has already found that the first exception applies because

16  "Defendants 'have come together to form MLB by enacting the MLB constitution and have jointly

17  issued the MLB rules and UPC pursuant to that constitution.' "  *Id.*  at 16 (quoting First Class

18  Certification Order at 64).

19          Plaintiffs argue that Sedlock also satisfies Rule 23(a)'s adequacy requirement, which

20  requires that the named plaintiff have no conflicts of interest with any other class member and that

21  the named plaintiff and plaintiff's counsel will vigorously prosecute the action on behalf of the

22  class.  *Id.* at 17 (citing *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 566 (9th Cir.

23  2019)).   The first requirement is met, Plaintiffs contend, because Sedlock "is signed to the same

24  Uniform Player Contract as all other players, and his 'primary goal in pursuing this lawsuit is to

25  bring a stop to the unlawful and unfair employment and compensation policies that Defendants

26  have subjected upon [himself] and other minor leaguers.'"  *Id.* (quoting Sedlock Decl. ¶ 11).

27  Plaintiffs further assert that the very fact Sedlock came forward to represent the class after the

28  former (b)(2) representatives' careers ended is an indication that he will vigorously prosecute the

action as he is the only current player with the "mettle" to risk jeopardizing his career to represent the class. *Id.*

Finally, Plaintiffs ask the Court to formally appoint the firms Korein Tillery, LLC and Pearson, Simon & Warshaw LLP, which were previously appointed as interim co-lead counsel, as class counsel for the (b)(3) classes and the (b)(2) class. *Id.* at 17.

### C.    The Opposition

In their Opposition, Defendants contend Sedlock does not have Article III standing to represent the proposed (b)(2) class or to pursue claims under California or Arizona law and that the proposed (b)(2) class also does not meet the requirements of Rule 23.  With respect to standing, Defendants assert that "a plaintiff lacks Article III standing to seek an injunction against any entities which do not imminently threaten to harm him, or with respect to injuries which he has not personally experienced[,]" citing past decisions by the undersigned.  Opposition at 5 (citing *Bowler v. Home Depot USA Inc*., No. C-09-05523, 2010 WL 3619850 (N.D. Cal. Sept. 13, 2010); *Ctr. for Biological Diversity v. Envtl. Protection Agency*, No. 11-cv-00293, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013)).

Defendants also point to the Court's discussion of Article III standing in the Article III Standing Order.  *Id.* at 6.  According to Defendants, in that Order, the Court recognized that "in order to establish threshold Article III standing in a case involving multiple defendants, there must be 'at least one named Plaintiff who is alleged to have suffered direct injury as a result of the conduct of each Franchise Defendant . . . .' "  *Id.* (quoting Article III Standing Order at 26; and citing *id.* at 21 (finding that the Ninth Circuit's ruling in *Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 2004) stands for the "unremarkable proposition that for a class action to proceed between the named parties, each named plaintiff must have standing to sue at least each named defendant…") (quoting *In re Carrier IQ, Inc*., Case No. C-12-MD-2330 EMC, 2015 WL 274054, at *10 (N.D. Cal., Jan. 21, 2015)).  Defendants further assert that this Court held in the Article III Standing Order that in "order to have threshold Article III standing to bring class claims under multiple states' laws, 'at least one named plaintiff' must have 'performed work for each individual defendant in the state whose law is being invoked.' "  *Id.* (citing Article III Standing

1    Order at 18 (citing *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal. 2008)).

2    Based on these "well-settled principles," Defendants assert that it is clear that Sedlock

3    lacks "threshold Article III standing." *Id.* at 7.  According to Defendants, because Sedlock has

4    played exclusively for a team affiliated with the Baltimore Orioles (a club that is no longer a

5    defendant in this case),[6] he "has no wage-and-hour injury traceable to any Defendant in this case,

6    or traceable to any baseball activities in Arizona or California." *Id.* To establish Article III

7    standing as to the proposed (b)(2) class, Defendants contend, Plaintiffs must "proffer at least one

8    current player who alleges injury by each of those 22 Club Defendants, and at least one current

9    player who alleges injuries under each of the wage-and-hour laws of Florida, Arizona and

10   California." *Id.*  Defendants argue that because Plaintiffs have failed to meet that burden, the

11   (b)(2) class cannot be certified. *Id.* at 7-8.

12   Defendants reject Plaintiffs' arguments that Sedlock's claims against MLB under Florida

13   law are sufficient to confer standing to represent the proposed (b)(2) class and that "the Article III

14   deficiencies at issue should be analyzed under the Rule 23 framework." *Id.* at 8.  As to the first

15   argument, which is based on the assertion that MLB is Sedlock's joint employer along with the

16   Baltimore Orioles, Defendants point to deposition testimony by Sedlock in which he allegedly

17   admitted that MLB is not his employer and is "not responsible for any of the conduct underlying

18   his minimum wage and overtime claims in this case." *Id.* at 9 (citing Bloom Decl., Ex. A

19   (Sedlock Depo.) at 12:9-20, 104:6-15, 124:6-11, 14:21-24). Moreover, Defendants contend, a

20   named plaintiff must have standing to sue under all of the states' laws at issue, which Sedlock

21   does not. *Id.* Defendants argue, "Even if Sedlock did have standing with respect to MLB (which

22   he does not), it is plainly insufficient for a class representative to have standing with respect to

23   only one Defendant out of twenty-three against whom he seeks an injunction, and under only one

24   state's law out of the three states' laws under which he seeks injunctive relief." *Id.* at 10.

25   Defendants also reject Plaintiffs' argument that the question of standing should be

26

27   _____

     [6] Plaintiffs named the Baltimore Orioles in their Second Amended Class Action Complaint. Dkt.
28   No. 57.  However, the Court dismissed the Baltimore Orioles in 2015 based on lack of personal
     jurisdiction.  Dkt. No. 379.

reframed as a Rule 23 certification issue but argue that even under that approach Sedlock cannot represent the class because he does not satisfy Rule 23's typicality and adequacy requirements.  *Id.* As to whether the Court should apply an Article III standing approach or instead apply Rule 23 standards, Defendants argue that Plaintiffs' reliance on *Melendres v. Arpaio* in support of the latter approach is misplaced because in that case, "the parties did not dispute that the individual named plaintiffs had 'individual standing to bring their own claims.' "  *Id.* at 11-12 (citing 784 F.3d 1254, 1262 (9th Cir. 2015)). Regarding whether the proposed (b)(2) class satisfies the requirements of Rule 23(a), Defendants argue that findings by the Ninth Circuit on this question do not apply because Plaintiffs have broadened the class definition by "seek[ing] certification of a class that includes claims under California law in addition to claims under the laws of Arizona and Florida, and have greatly expanded the types of activities that would be covered by the proposed injunction to encompass all activities performed by any player – without regard to whether they were 'team-related activities' performed during the team training periods at Club facilities, which is how Plaintiffs proposed to remedy the defects associated with their initial class certification bid."  *Id.* at 13.

Even if Plaintiffs sought certification of the narrower (b)(2) classes previously proposed and considered by this Court and the Ninth Circuit, Defendants assert that they still would not satisfy the requirements of Rule 23(b)(2) because Sedlock is "purporting to seek injunctive relief against 22 Defendants with whom he alleges to have no relationship, under the laws of states in which he admits he has never played baseball."  *Id.*  at 13-14.  According to Defendants, in its First Class Certification Order, the Court "identified a nearly identical deficiency with respect to the 'typicality' of Plaintiffs' proposed classes under Rule 23(a)."  *Id.* at 14.  In particular, Defendants assert that even though the Court found that Defendants were "juridically related," it "nonetheless concluded that the proffered class representatives were not typical of the absent class because the class representatives did not have cognizable claims under the laws of the states they purported to represent."  *Id.*  (citing First Class Certification Order at 66).  Defendants point to the example offered by the Court of Plaintiff Ryan Khoury, "who sought to represent a class seeking recovery under the wage-and-hour laws of New York despite having only played baseball in New

United States District Court
Northern District of California

York during occasional away games." *Id.*  According to Defendants, the Court found that "Khoury was not 'typical' of the proposed class due to his lack of contact with the state of New York." *Id.* (citing First Class Certification Order at 66).  Defendants contend Sedlock's situation is "even more extreme" because he "admits that he never played baseball in the minor leagues in the states of California or Arizona." *Id.*

Defendants reject Plaintiffs' assertion that the Court's previous concerns about typicality are "no longer pertinent because at the time of their first certification motion, Plaintiffs had previously proposed 'much broader classes' involving state laws with substantive 'variance,' which they claim to have cured here." *Id.* at 15 (citing Motion at 14).  In fact, Defendants argue, the broader (b)(2) class Plaintiffs now propose, "seeking relief for any and all baseball activities, without limiting what type of activities are to be covered, including individual (rather than team-related) activities, and without providing a minimum amount of time to be spent in each state in order for that state's law to apply[,]"  "now bears a much closer resemblance to the classes they had initially proposed." *Id.* As to the variances between states' laws, Defendants argue that the Court's previous ruling "did not turn on the number of state laws under which Plaintiffs were proposing classes" but instead was based on "the fact that Plaintiffs proffered representatives for claims brought under the laws of states in which the representatives themselves had little or no contact" – a problem that remains because Sedlock has had no contact with California or Arizona as a minor leaguer.  *Id.*

Defendants also challenge Plaintiffs' assertion that typicality is met because the laws of the three states are not materially different. *Id.*  at 16.  According to Defendants, Plaintiffs ignore the Ninth Circuit's finding that the wage and hour laws of the three states are, in fact, materially different.  *Id.* (citing 934 F.3d at 933).  Defendants argue further that *In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018), upon which Plaintiffs rely, "actually confirms the fact that where state laws materially differ, a class representative may not bring claims under the laws of states in which he has had no contact." *Id.*  In *Asacol*, Defendants contend, "the First Circuit permitted class representatives in an antitrust suit to bring claims arising under [the laws of] states in which the representatives had no contact, because the laws at issue were all 'parallel' to federal

14

law, and thus the judgments under each state's law would all look the same." *Id.* at 16-17 (citing 907 F.3d at 49). On the other hand, Defendants assert, "To the extent New York law did differ materially compared to the others . . . the First Circuit concluded that the plaintiffs had waived any opposition to their lack of standing to pursue claims under that law." *Id.* at 17.

Defendants also contend there is "ample evidence" that Sedlock will not prosecute the case vigorously and therefore will not be an adequate class representative. *Id.* at 17. They point to Sedlock's insistence that his deposition – which occurred during spring training – be conducted on an off day. *Id.* (citing Bloom Decl., Ex. A (Sedlock Depo.) at 16:10-17:11, 21:9-19). Defendants also point to deposition testimony indicating that Sedlock intends to seek individual damages under Maryland law for his offseason activities, creating a substantial risk that he will have different priorities and litigation interests than the (b)(2) class members. *Id.* at 17-18. Defendants also challenge Sedlock's adequacy as a class representative because the claims he asserts under Florida and Maryland law are materially dissimilar from the claims of absent class members under Arizona and California law. *Id.* at 18.

Defendants also assert that there "are no common answers to the questions raised in Plaintiffs' request for injunctive relief, since determining which activities constitute compensable work, and under which state laws, requires highly individualized analysis that cannot be conducted on a classwide basis." *Id.* at 18-19. Therefore, Defendants assert, Plaintiffs have "reintroduced" a lack of commonality. *Id.*

Defendants also do not agree that Plaintiffs "easily" satisfy Rule 23(b)(2) in light of their "broadened" class definition. *Id.* at 20-24. First, Defendants contend Sedlock cannot seek any of the injunctive relief Plaintiffs seek for the (b)(2) class, addressing Defendants' alleged failure to pay minimum wage or overtime or keep time records, because it is undisputed that "MLB is not responsible for payment of Sedlock's wages and does not have any control over the number of hours Sedlock allegedly worked – the two levers of any minimum wage and overtime claim." *Id.* at 19 (citing Bloom Decl., Ex. A (Sedlock Depo.) at 12:12-20; 47:21-25; 121:25-126:10; 138:13-139:8). Likewise, Defendants assert, MLB is not responsible for payment of wages or the number of hours minor leaguers in the proposed (b)(2) class work. *Id.* at 19-20. Because it is the

15

1    Franchises that are responsible for these things, Defendants assert, and Sedlock has no connection

2    to the 22 Franchise Defendants, he will not be able to obtain any injunctive relief for the proposed

3    (b)(2) class. *Id.* (quoting Rule 23(b)(2) (requiring that "the party opposing the class has acted or

4    refused to act on grounds that apply generally to the class, so that final injunctive relief or

5    corresponding declaratory relief is appropriate respecting the class as a whole.").

6          Defendants further contend Rule 23(b)(2) is not met because the relief a (b)(2) class seeks

7    must be indivisible. *Id.* at 20. According to Defendants, that requirement is not satisfied because

8    Plaintiffs seek relief for the proposed (b)(2) class under "three different state laws, including

9    California law, which is different in material respects from Arizona and Florida law such that

10   different injunctions would be necessary to provide class members with any purported relief." *Id.*

11   In addition, Defendants argue, because Plaintiffs have broadened the class to "seek injunctive

12   relief for all 'services' performed in Florida, Arizona, or California pursuant to a Minor League

13   Uniform Player Contract," they have "necessarily revive[d] the choice-of-law and compensability

14   problems that doomed Plaintiffs' first unsuccessful attempt at class certification given that this

15   proposed class encompasses activities performed during the championship season and offseason,

16   including individual activities." *Id.* Defendants point out that minor leaguers train in many states

17   during the off season, not just in California, Florida or Arizona, and argue that the Court would be

18   required to engage in choice-of-law analysis as to those activities. *Id.* at 21.

19         Defendants also argue that the injunctive relief Plaintiffs seek is impermissibly vague and

20   is nothing more than a bare injunction to follow the law, which is disfavored. *Id.* (citing *Roman v.*

21   *MSL Cap., LLC*, No. EDCV172066JGBSPX, 2019 WL 3017765, at *5 (C.D. Cal. July

22   9, 2019), aff'd, 820 F. App'x 592 (9th Cir. 2020) (denying permanent injunction "to prevent future

23   violations of the fair housing laws" because such an "obey the law" injunction is disfavored and at

24   odds with Rule 65(d)."); *Comm. Concerning Cmty. Improvement v. City of Modesto*, No. CV-F-

25   04-6121 REC/DLB, 2004 WL 7334944, at *18 (E.D. Cal. Dec. 30, 2004)). Defendants contend,

26   "Plaintiffs . . .  fail to specify the conduct that they seek to enjoin or how Defendants must comply

27   with the 'wage-and-hour laws' of the three states at issue." *Id.*  at 22.

28         Finally, Defendants argue that Rule 23(b)(2) is not satisfied because the injunctive relief

*United States District Court*
*Northern District of California*

the proposed class seeks is a "thinly-veiled request for monetary damages." *Id.* Defendants assert

that "Rule 23(b)(2) certification is not appropriate where, as here, 'the plaintiff has ostensibly

disavowed any claim for damages, but where the nature of [the] claim says otherwise.' " *Id.*

(quoting *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co*., 938 F.3d 1170, 1177

(11th Cir. 2019)). Defendants point to deposition testimony of Sedlock in which he stated that he

was seeking to recover minimum wage and overtime for time spent playing baseball with the

Orioles since 2016. *Id.* at 22-23 (quoting Bloom Decl., Ex. A at 104:6-106:19). According to

Defendants, other courts have denied (b)(2) class certification under similar circumstances. *Id.*

(citing *Gomez v. J. Jacobo Farm Labor Contractor,Inc.,* 334 F.R.D. 234, 253 (E.D. Cal. 2019);

*Gonzales v. Comcast Corp.,* No. 10-cv-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012)).

### D. The Reply

In their Reply, Plaintiffs reject Defendants' argument that Sedlock does not have standing

to assert his claims against the 22 Franchise Defendants, asserting that it is "hornbook law" that

"an unincorporated association is not a legal entity apart from its members [and that] the members

of an unincorporated association may be held civilly liable as individuals for the acts or omissions

of the association, whether in contract or tort." Reply at 1 (citing 6 AM. JUR. 2D Associations and

Clubs § 27). That is the law in Florida (where Sedlock's individual claims arose) as well,

Plaintiffs assert. *Id.* (citing 3A FLA. JUR. 2D Associations and Clubs §§ 16-17). Thus, Sedlock

"clearly has standing to assert his individual claims not only against MLB but against all 22 other

defendants, as well." *Id.* at 2.

Plaintiffs also reject Defendants' argument that the Court should decline to certify a (b)(2)

class because there is "no meaningful relief the Court could ever grant to the proposed class." *Id.*

This is incorrect, Plaintiffs assert, because (b)(2) allows the Court to award both injunctive and

declaratory relief and Defendants have made no argument that declaratory relief is unavailable.

*Id.* Further, they assert, Defendants implicitly concede that Sedlock has Article III standing to sue

MLB as his joint employer under Florida law. *Id.* Consequently, they contend, "there is

meaningful, classwide, declaratory relief the Court could grant." *Id.* For example, Plaintiffs

assert, "the Court could declare that Sedlock's and class members' services under the Uniform

Player Contract constitute compensable work; that MLB is Sedlock's and class members' joint employer; and that Florida's record-keeping and wage-and-hour requirements apply to MLB." *Id.* Thus, at a minimum the Court should certify a (b)(2) class under Florida law, Plaintiffs argue, defined as "[a]ny person who is or will in the future be signed to a Minor League Uniform Player Contract and performs services pursuant to that contract in Florida." *Id.*

Plaintiffs argue that Defendants implicitly concede that Sedlock has standing to assert his claims against MLB as a joint employer and that they mischaracterize his testimony in asserting that he conceded that MLB is not his joint employer. *Id.* at 3-4. Rather, Plaintiff's contend, Sedlock testified that MLB *was* his joint employer. *Id.* at 3 (citing Broshuis Decl.), Ex. A (Sedlock Depo.) at 125-127).

They further assert that to the extent that the (b)(2) class is certified only under Florida law, many of Defendants' objections do not apply. In particular, Plaintiffs argue that Defendants' assertion that Sedlock's claims are not "typical" of those of class members who worked for any of the 22 Franchises or who worked in Arizona or in California "obviously [is] not an objection to the typicality of Plaintiff's claims based on Florida law." *Id.* at 4. Likewise, they contend, the four arguments Defendants' advance to show that Rule 23(b)(2) is not satisfied also do not apply to such a class. *Id.*

Plaintiffs contend the first argument – that no classwide relief is available because Sedlock has no connection with the 22 Franchise Defendants and MLB is not responsible for the payment of his wages – has no merit because as to a Florida law (b)(2) class the lack of a connection to the Franchise Defendants is not relevant and moreover, Defendants are factually incorrect in asserting MLB is not responsible for payment of wages given that it determines minor leaguers' wages under the UPC and MLB Rules. *Id.* at 4-5. Plaintiffs also argue that as a joint employer MLB is legally liable for violations of applicable wage laws. *Id.* at 5. And in any event, Plaintiffs assert, this argument has no bearing on Plaintiffs' request for declaratory relief for the (b)(2) class. *Id.*

Plaintiffs also argue that Defendants' indivisibility objection fails as to a (b)(2) class under Florida law that seeks declaratory relief because it is based on the contention that Plaintiffs "seek injunctive relief under three different state laws," which in turn "revives the choice-of-law and

1   compensability problems." *Id.* at 5 (quoting Opposition at 20).  Obviously, that argument does not

2   apply if the class seeks only declaratory relief under the law of a single state's law (Florida),

3   Plaintiffs assert.  *Id.*

4       Plaintiffs contend Defendants' final two objections that subsection (b)(2) is not met – "that

5   'Plaintiffs' purported injunction is impermissibly vague and is nothing more than a bare injunction

6   to follow the law,' and 'Plaintiffs' requested injunction fails because it is a thinly veiled request

7   for monetary damages'" –  also have no bearing on certification of a (b)(2) class seeking

8   declaratory relief under Florida law as the first argument "applies only to injunctions, and the

9   second is inapplicable because a declaration will not compel a payment of money." *Id.*  at 5.

10      Plaintiffs also argue Sedlock meets the commonality and adequacy requirements.  *Id.*  at 5-

11  7.  Plaintiffs reject Defendants' argument that they "reintroduce" a lack of commonality by

12  broadening the proposed class definition, pointing out that the Court has never found a lack of

13  commonality under Rule 23(a), even when it denied class certification in 2016.  *Id.*  at 6.

14  Moreover, Plaintiffs argue, Defendants are incorrect in their assertion that the (b)(2) class should

15  not be certified because "determining which activities constitute compensable work, and under

16  which state laws, requires highly individualized analysis that cannot be conducted on a classwide

17  basis." *Id.*  at 6.  According to Plaintiffs, the Court's concern about individualized inquiries when

18  it declined to certify a (b)(3) class in 2016 (which was based on a lack of predominance for the

19  purposes of Rule 23(b)(3) rather than lack of commonality under Rule 23(a)) does not apply here

20  because it related to the need to determine which class members were entitled to compensation,

21  especially for winter training activities; the proposed (b)(2) class, however, does not seek any

22  damage recovery for the class.  *Id.* (citing First Class Certification Order at 81).  Plaintiffs

23  acknowledge that the named Plaintiffs "do intend to seek recovery for unpaid winter training

24  wages on an individual basis" and state that "if their individual evidence warrants individual

25  damage awards, then a declaration can likely be crafted to describe at least some forms of winter

26  training that constitute compensable work" but argue this is "not the primary focus of the

27  declaratory relief Plaintiff seeks under Florida law, which is predominantly about training season

28  work in Florida." *Id.*

1      Plaintiffs also reject Defendants' arguments that Sedlock will not adequately represent the

2   class.  *Id.*  at 6-7.  They contend the argument that he will not vigorously represent the class

3   because he refused to sit for his deposition during spring training and insisted on scheduling it on

4   an off day during the season is "facially absurd" as he offered to schedule the deposition in the two

5   months that preceded spring training but Defendants declined that offer; moreover, according to

6   Plaintiffs the deposition was conducted only two weeks after the date Defendants originally

7   requested.  *Id.* at 7.  Plaintiffs also contend Defendants' argument that Sedlock might "someday

8   sell out the class for a bigger individual settlement" is speculative and unsupported by his

9   testimony about the reason he has agreed to serve as class representative.  *Id.* (citing Broshuis

10  Decl.), Ex. A (Sedlock Depo.) at 230, 318).

11     Plaintiffs argue further that Sedlock can represent the (b)(2) class not only under Florida

12  law but also under Arizona and California's parallel wage and hour laws.  *Id.* at 7.  They point to

13  courts' recognition that "[t]he class action is an exception to the usual rule that litigation is

14  conducted by and on behalf of the individual named parties only."  *Id.* (quoting *Wal-Mart Stores,*

15  *Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation and citation omitted)).  Thus, Plaintiffs

16  contend, "the obvious truth [is] that class actions necessarily involve plaintiffs litigating injuries

17  that they themselves would not have standing to litigate."  *Id.* (quoting *Langan v. Johnson &*

18  *Johnson Consumer Cos*., 897 F.3d 88, 95 (2d Cir. 2018)).  Plaintiffs point to the statement in

19  *Langan* that "[s]ince class action plaintiffs are not required to have individual standing to press

20  any of the claims belonging to their unnamed class members, it makes little sense to dismiss the

21  state law claims of unnamed class members for want of standing when there was no requirement

22  that the named plaintiffs have individual standing to bring those claims in the first place."  *Id.*

23  (quoting 897 F.3d at 95).  They further contend the Court recognized these principles in its Article

24  III Standing order, quoting the Court's statement that "'[t]ransmogrifying typicality or

25  commonality into an issue of standing would undermine the well-established principles that in a

26  class action, standing is satisfied if at least one named plaintiff meets the requirements, … and that

27  [t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of

28  the individual named parties only.' "  *Id.* (quoting Article III Standing Order at 17) (quoting *Clancy*

United States District Court
Northern District of California

1   *v. The Bromley Tea Co*., 308 F.R.D. 564, 571 (N.D. Cal. 2013)).

2       Plaintiffs argue that Defendants' "binary" approach under which "a dissimilarity or

3   'disjuncture' between the claims of named and unnamed plaintiffs is dispositive" ignores " 'the

4   obvious truth that class actions necessarily involve plaintiffs litigating injuries that they

5   themselves would not have standing to litigate.' " *Id.* at 8 (quoting *Langan*, 897 F.3d at 95). It is

6   also inconsistent with the Ninth Circuit's reasoning in *Melendres* and *Snyder*, they contend. *Id.* at

7   9 (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015); *B.K. by next friend Tinsley*

8   *v. Snyder*, 922 F.3d 957 (9th Cir. 2019)). Plaintiffs also argue that Defendants do not meaningfully

9   address the out-of-circuit authority that supports their position, namely, *Langan*, *Morrison v. YTB*

10  *Intern., Inc*., 649 F.3d 533 (7th Cir. 2011), and *In re Asacol Antitrust Litig*., 907 F.3d 42 (1st Cir.

11  2018). *Id.* at 9-10.

12      Plaintiffs contend Defendants' arguments that injunctive relief is unavailable for their

13  proposed (b)(2) class fail as to a class that seeks relief under the laws of Florida, Arizona and

14  California just as they would fail as to a Florida-only class. *Id.* at 11-14. As a preliminary matter,

15  Plaintiffs contend, Defendants' arguments are aimed entirely at injunctive relief and thus, even if

16  they had merit, the (b)(2) class should still be certified as to declaratory relief. *Id.* at 11. Plaintiffs

17  reject Defendants' argument that an injunction entered against MLB would be ineffectual,

18  asserting that this argument "simply misconceives MLB's liability as a joint employer." *Id.*

19  According to Plaintiffs, a " 'joint employer is jointly and severally liable with the employer and

20  any other joint employers for compliance with all of the applicable provisions of the Act.' " *Id.*

21  (quoting 29 C.F.R. § 791.2). Thus, Plaintiffs assert, whether the MLB is responsible for paying

22  Sedlock's wages or determines the hours he works is not dispositive of whether MLB is his joint

23  employer. *Id.* In any event, Plaintiffs contend, this is a merits question rather than a class

24  certification issue: "If MLB is found at trial to be a joint employer, then it will be liable for

25  compliance with applicable wage laws that it can be enjoined to obey." *Id.* at 11-12 (citing

26  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)).

27      Plaintiffs also reject Defendants' argument that the relief requested by their proposed

28  (b)(2) class runs afoul of the indivisibility requirement. *Id.* at 12. According to Plaintiffs, that

United States District Court
Northern District of California

requirement "does not preclude state-specific provisions in a final injunction" but rather, "merely prohibits individualized, class-member-by-class-member relief: '[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' " *Id.* at 12 (quoting *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted)). Although Plaintiffs contend state-specific injunctions will likely be unnecessary, there is no reason why such relief could not be awarded under Rule 23(b)(2) if after trial such relief were deemed appropriate. *Id.* The possibility that such relief might be appropriate should not defeat class certification, Plaintiffs argue. *Id.*

Plaintiffs also argue that Defendants overstate the significance of any variations between the laws of the three state and fail to demonstrate that as to at least two of the common questions the Court has identified – whether MLB is a joint employer and what constitutes "work" – there are any outcome-determinative differences. *Id.* at 12-13. If these questions give rise to common answers, Plaintiffs contend, "the answer to the third common question this Court identified – 'Do MLB's compensation policies violate applicable wage and hour laws?' – would also be the same." *Id.* at 13.

Further, Plaintiffs reject Defendants' argument that that they seek an " 'injunction[] requiring that all minor league players are paid minimum wage and overtime for any base-ball activities they perform in any of these three states irrespective of when, where, or why they perform them.'" *Id.* (quoting Opposition at 21). According to Plaintiffs, they have identified the "when, where, and why" because they seek "relief for services [Sedlock] and class members are performing and will perform (when? now and in the future) pursuant to the Uniform Player Contract (why? because the services were performed for Defendants) in Arizona, California, or Florida (where)." *Id.* at 13-14. Likewise, Plaintiffs reject Defendants' argument that their proposed (b)(2) class "revives the choice-of-law questions," arguing that "[b]ecause the primary focus in Florida and Arizona is training seasons, and the primary focus in California is the California League's championship season, Florida, Arizona, and California law apply." *Id.* at 14.

Plaintiffs also contend Defendants' argument that the (b)(2) class impermissibly seeks a

United States District Court
Northern District of California

1  bare injunction to follow the law fails, pointing to an injunction in a federal wage an hour case

2  similar to what Plaintiffs in this case might seek.  *Id.* at 14 (quoting consent judgment in *Pizzella*

3  *v. Tequila's Mexican Bar & Grill, Inc.*, No. 19 CV 1272 (C.D. Ill.), attached to Broshuis Reply

4  Decl., Ex. B)).  According to Plaintiffs, the district court cases cited by Defendants to support their

5  position are not on point and were neither wage and hour cases nor class actions.  *Id.* at 14-15

6  (citing *Roman v. MSL Capital, LLC* 2019 WL 3017765, at *4 (C.D. Cal. 2019); *Comm.*

7  *Concerning Cmty. Improvement v. City of Modesto*, 2004 WL 7334944 (E.D. Cal. 2004)).

8  Finally, Plaintiffs argue that Defendants are incorrect in their assertion that Plaintiffs'

9  request for injunctive relief is " 'a thinly veiled request for monetary damages.' "  *Id.* at 15.

10  According to Plaintiffs, "An injunction commanding an employer to comply with applicable

11  wage-and-hour laws is not a money judgment for damages, even though its effect if the employer

12  complies is payment of money from the employer to the employee for services rendered."  *Id.*

### III.    ANALYSIS

#### A.    General Legal Standards Under Rule 23

A class action may be maintained under Rule 23 of the Federal Rules of Civil Procedure if all of the requirements of Rule 23(a) are satisfied and the plaintiff demonstrates that one of the requirements of Rule 23(b) is met as well. Rule 23(a) requires that a plaintiff seeking to assert claims on behalf of a class demonstrate: 1) numerosity; 2) commonality; 3) typicality; and 4) fair and adequate representation of the interests of the class. Fed. R. Civ. P. 23(a). Plaintiffs seeks certification under Rule 23(b)(2), which allows a class action to be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

#### B.    General Legal Standards Governing Article III Standing

Standing is a threshold jurisdictional requirement derived from Article III's case-or-controversy requirement. *See* U.S. Const. art. III, § 2, cl. 1.  In *Lujan v. Defs. of Wildlife*, the Supreme Court found "that the irreducible constitutional minimum of standing contains three elements." 504 U.S. 555, 561 (1992).  First, the plaintiff must have suffered an "injury in fact"—

23

1    an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

2    imminent, not conjectural or hypothetical.  *Id.* (citations omitted).  Second, there must be a causal

3    connection between the injury and the conduct complained of, that is, the injury has to be fairly

4    traceable to the challenged action of the defendant, and not the result of the independent action of

5    some third party not before the court.  *Id.* (citations omitted).  Third, it must be likely, as opposed

6    to merely speculative, that the injury will be redressed by a favorable decision. *Id.*

7          **C.    The Relationship Between Rule 23 and Article III Standing**

8                As this Court discussed in its Article III Standing Order, application of the Article III

9    standing test in the class context is "complicated . . . because a named plaintiff seeks to litigate the

10   claims of others . . . ." Newberg on Class Actions § 2.6. Thus, while the "underlying standing

11   principle is that the injury that a plaintiff suffers defines the scope of the controversy she is

12   entitled to litigate," in the class context there is a "disjuncture" because "the class representative

13   may seek to litigate harms not precisely analogous to the ones she suffered but harms that were

14   nonetheless suffered by other class members." *Id.*  In this context, the Ninth Circuit has endorsed

15   what it has described as the "class certification approach" over the so-called "standing approach"

16   at least twice.  *See Melendres,* 784 F.3d at 1262; *Snyder*, 922 at 967.

17               In *Melendres*, the court described the two approaches as follows:

18                     The "standing approach" treats dissimilarities between the claims of
                       named and unnamed plaintiffs as affecting the "standing" of the
19                     named plaintiff to represent the class. In other words, if there is a
                       disjuncture between the injuries suffered by named and unnamed
20                     plaintiffs, courts applying the standing approach would say the
                       disjuncture deprived the named plaintiff of standing to obtain relief
21                     for the unnamed class members. *See, e.g., Blum v. Yaretsky,* 457 U.S.
                       991, 999–1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The "class
22                     certification approach," on the other hand, "holds that once the named
                       plaintiff demonstrates her individual standing to bring a claim, the
23                     standing inquiry is concluded, and the court proceeds to consider
                       whether the Rule 23(a) prerequisites for class certification have been
24                     met." Newberg On Class Actions § 2:6.

25   784 F.3d at 1261-1262.   The court found that the class certification approach "has been embraced

26   several times (though not always) by the Supreme Court, and is the one adopted by 'most' other

27   federal courts to have addressed the issue."  *Id.* (quoting Newberg on Class Actions § 2:6; and

28

United States District Court
Northern District of California

1    citing *Sosna v. Iowa*, 419 U.S. 393, 397–403 (1975); *Novella v. Westchester Cnty.*, 661 F.3d 128,

2    149–50 & n. 24 (2d Cir.2011); *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80

3    (11th Cir. 2000) (a court must first determine whether "at least one named class representative has

4    Article III standing," then "question whether the named plaintiffs have representative capacity, as

5    defined by Rule 23(a), to assert the rights of others" (internal quotation marks omitted)); *Fallick v.*

6    *Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998); *Cooper v. Univ. of Tex. at Dallas*,

7    482 F.Supp. 187, 191 (N.D.Tex.1979)).

8            The plaintiffs in *Melendres* brought a class action against Sheriff Joseph Arpaio and the

9    Maricopa County Sheriff's Office for declaratory and injunctive relief, alleging that the defendants

10   had a "custom, policy and practice" of "racially profiling Latino drivers and passengers, and of

11   stopping them pretextually under the auspices of enforcing federal and state immigration-related

12   laws." 784 F.3d at 1258 (citation omitted).  The district court entered a judgment against the

13   defendants enjoining them from using race as a factor in deciding whether to stop any vehicle with

14   a Latino occupant.  *Id.* The injunction applied to stops during both "saturation patrols"—when the

15   defendant officers would saturate a particular area for the purpose of enforcing immigration

16   laws—and nonsaturation patrols.  *Id.*  The defendants appealed, arguing *inter alia*, that the

17   plaintiffs lacked standing to bring constitutional claims on behalf of class members stopped during

18   nonsaturation patrols because the named plaintiffs had been stopped only during saturation patrols.

19   *Id.*  at 1259.

20           Applying the class certification approach discussed above, the court in *Melendres*

21   concluded that "the individually named plaintiffs . . . had individual standing to bring their own

22   claims under the Fourth and Fourteenth Amendments" and that they could represent the absent

23   class members whose claims were based on stops conducted during nonsaturation patrols because

24   the named plaintiffs' claims did not "implicate a significantly different set of concerns" than the

25   unnamed plaintiffs' claims.  *Id.* at 1263 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003)).

26   While the *Melendres* court applied the class certification approach, it indicated that it would have

27   reached the same conclusion even if it had applied the standing approach.  *Id.* ("Under the class

28   certification approach, *or the standing approach for that matter*, the named plaintiffs in this case, .

United States District Court
Northern District of California

1    . . . are adequate representatives because the named plaintiffs' claims do not 'implicate a

2    significantly different set of concerns' than the unnamed plaintiffs' claims.") (emphasis added).

3    The court went on to caution that "[i]n determining what constitutes the same type of relief or the

4    same kind of injury, 'we must be careful not to employ too narrow or technical an approach.

5    Rather, we must examine the questions realistically: we must reject the temptation to parse too

6    finely, and consider instead the context of the inquiry.'" *Id.* (quoting *Armstrong v. Davis*, 275

7    F.3d 849, 867 (9th Cir. 2001)).

8           As discussed further below, the Ninth Circuit has not addressed whether the class

9    certification approach applied in *Melendres* also applies in a case where, as here, the named

10    plaintiff has individual standing to assert claims under the laws of one state but seeks to represent

11    class members who assert claims under a different state's laws.  There is disagreement among

12    district courts in the Ninth Circuit that have addressed this question.

13        **D.   Whether Sedlock Has Standing to Represent the Proposed Class**

14           In this case, Defendants' standing challenges are asserted on two main grounds.  First, they

15    object that Sedlock does not have standing to assert the claims of the putative class because

16    although he is playing under a contract with MLB, he does not play for *any* of the Clubs that are

17    defendants in this case.  Second, they contend Sedlock may not assert the claims of the (b)(2) class

18    members that arise under California and Arizona law because he has never worked as a minor

19    league player in either state.  The Court concludes that as to the first question, although Sedlock

20    has standing to assert his claims against MLB, he does not have standing to assert any claims

21    against the Franchise Defendants.  The Court concludes that the second question is governed by

22    Rule 23 rather than Article III but that even if this question is addressed as a matter of standing,

23    Sedlock has standing to represent class members' claims under the laws of Arizona and California

24    (as well as Florida, where he performs services under the UPC). Nonetheless, the Court concludes

25    the scope of the (b)(2) class must be narrowed in order to satisfy the requirements of Rule 23.

26

27

28

1

### 1.  Whether Sedlock has standing to assert claims on behalf of the (b)(2) class against MLB[7] and the Franchise Defendants

Regardless of whether or not the Court applies the class certification approach or the standing approach, Sedlock must, as a threshold matter, establish that he has individual standing to pursue his claims against Defendants, that is, that he has suffered an "injury in fact" that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.

The Court has no difficulty finding that Sedlock has standing to sue MLB as a joint employer.  The question of whether MLB is a joint employer will turn on, *inter alia*, whether MLB has the power to hire and fire Sedlock, the degree to which it supervises and controls his work schedule and conditions of employment, whether it determines the rate and method of payment, and the employment records it maintains.  *See* First Class Certification Order at 79 (addressing joint employer doctrine under the FLSA).  Contrary to Defendants' assertion, Sedlock did not concede at his deposition that MLB is not his joint employer. *See* King Reply Decl., Ex. A (Sedlock Depo.) at 125-126. Rather, he testified that while he "only played" for the Baltimore Orioles, he performed services for MLB and the Office of the Commissioner during spring training because the Office of the Commissioner oversaw policies governing drug testing, per diem payments and "not being paid a salary."  *Id.* Therefore, Sedlock has individual standing to assert his claims against MLB.

The more difficult question is whether he has individual standing to assert his claims against the Franchise Defendants, which requires that he have suffered an injury that is "fairly traceable" to those defendants.  Plaintiffs rely on partnership law to establish that Sedlock can assert his claims against the Franchises, pointing to the general rule "that an unincorporated association is not a legal entity apart from its members, [and therefore that] the members of an unincorporated association may be held civilly liable as individuals for the acts or omissions of the association, whether in contract or tort." 6 AM. JUR. 2D Associations and Clubs § 27. They have

---

[7] Plaintiffs stipulated at the hearing that they do not assert their injunctive relief claims against Defendant Bud Selig, who was the Commissioner of Baseball at the time this action was initiated but no longer holds that position.

not, however, pointed to any authority applying this rule in the context of Article III standing, much less holding that because a member of an unincorporated association is liable for the acts of the partnership, a named plaintiff has standing to sue that member on behalf of other class members who were injured by the association member even if the named plaintiff sustained no injury directly traceable to that member.

A case that addresses a similar question, albeit in dicta, is the Second Circuit's decision in *Langan v. Johnson & Johnson Consumer Companies, Inc*., 897 F.3d 88, 92 (2d Cir. 2018). As discussed further below, the *Langan* court found that the question of whether class representatives can assert claims under the laws of other states even though their own claims did not arise under those states' laws is a Rule 23 question rather than a question of standing. In reaching that conclusion, however, the court distinguished the situation where the claims of the putative class are asserted against "a particular defendant when that defendant did not actually injure a named plaintiff." 897 F.3d at 94 (citing *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 62 (2d Cir. 2012)). The *Langan* court observed:

> We have held that the claims of putative class members are too dissimilar to support standing against a particular defendant when that defendant did not actually injure a named plaintiff. In *Mahon*, we considered a putative consumer class action against title insurance companies that allegedly concealed the availability of reduced rates. *See id.* at 60. The district court denied certification as to one of the defendant companies that had not actually sold insurance to the plaintiff, and we affirmed. *See id*. at 60–61. *Even though the company used forms and practices that were similar to those used by the company that did sell to the plaintiff and was owned by the same parent company, we held that the plaintiff lacked standing to sue the company that had not actually misled her because, "with respect to each asserted claim" against each defendant, "a plaintiff must always have suffered a distinct and palpable injury to herself." Id*. at 64 (alterations, quotation marks, and emphasis omitted).

897 F.3d at 94 (emphasis added)). The holding of *Mahon* and the reasoning in *Langan*, which the Court finds persuasive, suggests that class representatives who seek to assert claims on behalf of class members must establish, as a threshold matter of standing, that at least one named class representative was injured by each defendant against whom class claims are asserted.

Here, as in *Mahon*, Sedlock seeks to represent class members who played for other Franchises, which admittedly did not injure Sedlock. Moreover, the Franchise he plays for (the

Baltimore Orioles) is not a Defendant in this action.   Under these circumstances, the Court concludes that Sedlock cannot satisfy the "fairly traceable" requirement of Article III standing as to the Franchise Defendants.

This conclusion is not changed by the fact that the court has previously found that the MLB and the Clubs are "juridically linked" and therefore, that typicality under Rule 23 was not defeated by the fact that there were was not a named plaintiff employed by each of the Franchise Defendants.  *See* First Class Certification Order at 63-65 ("the Court finds that MLB and the franchise Defendants are 'juridically related,' because they have come together to form MLB by enacting the MLB constitution and have jointly issued the MLB rules and UPC pursuant to that constitution.").   "[T]he juridical link doctrine relates only to the question of class certification under the Federal Rules and thus has no bearing on the Article III standing inquiry." *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59, 61 (2d Cir. 2012).   Therefore, the Court declines to certify the (b)(2) class as to claims asserted against the Franchise Defendants.

### 2.   Whether Sedlock has standing to assert claims on behalf of the (b)(2) class that arise under Arizona and California law

"At least historically, '[c]ourts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce.' " *Kutza v. Williams-Sonoma, Inc*., No. 18-CV-03534-RS, 2018 WL 5886611, at *2 (N.D. Cal. Nov. 9, 2018) (quoting *Corcoran v. CVS Health Corp*., 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) (citing *In re Aftermarket Auto. Lighting Products Antitrust Litig.*, 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009)).   District courts in the Ninth Circuit have disagreed, however, whether *Melendres* casts doubt on this approach.   As courts on both sides of this issue have acknowledged, in *Melendres* the claims "were federal and constitutional claims, so standing to assert state-law claims was not at issue, and the 'disjuncture' involved differing factual situations, rather than the differing laws." *Id.* at *3 (concluding that under *Melendres*, whether a class can assert "sister circuit claims" is governed by the class certification approach); *c.f.  Jones v. Micron Tech. Inc*., 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) (distinguishing *Melendres* on the basis that the "plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances.").   The question is whether this

distinction matters.

In *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, in which Judge Chen took the class certification approach in addressing this issue, the named plaintiffs sought to "bring claims under the laws of states where they reside[d] or transacted with defendants, as well as under the laws of states where they [did] not reside and where they did not transact with defendants, but where other putative class members do or did." 295 F. Supp. 3d 927, 955 (N.D. Cal. 2018). Judge Chen concluded that while the "disjuncture" in *Melendres* was "different" because it was "factual" and did not involve sister circuit claims, "[u]ltimately . . .this distinction appear[ed] immaterial." *Id.*   He found that "[a]s in *Melendres*, there [was] a 'disjuncture between the claims of the named plaintiffs and absent class members[ ]' . . . [a]nd when such a disjuncture exists, *Melendres* requires courts in the Ninth Circuit to apply the 'class certification approach.' " *Id.* (quoting *Melendres*, 784 F.3d at 1261);  *see also Kutza v. Williams-Sonoma, Inc.,* 2018 WL 5886611, at *2.

On the other hand, Judge White reached the opposite conclusion in *Jones v. Micron Technology Inc.*, concluding that the holding of *Melendres* does not extend to the sister circuit scenario:

> [I]n *Melendres*, all plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances. Here, because Plaintiffs bring claims under the laws of multiple states (some antitrust and some not), Plaintiffs technically invoke different legally protected interests. *See* Restatement (Second) of Torts § 7 cmt. a (1965) (noting that injury involves an actionable invasion of a legally protected interest, while harm denotes personal loss or detriment).

400 F. Supp. 3d 897, 909 (N.D. Cal. 2019). The court reasoned that the plaintiffs "must show they have standing for each claim they raise, and Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection." *Id.* (citing *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1096–97 (S.D. Cal. 2017) (discussing *Melendres*, 784 F.3d at 1261-62)).

The undersigned agrees with the courts in *Kutza v. Williams-Sonoma Inc.*  and *In In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Product Liability. Litigation* that

although the disjuncture in *Melendres* was factual, the reasoning of that case applies equally to disjunctures based on sister circuit claims.  As the court in *Jones* acknowledges, the state law claims of putative class members "*technically* involve different legally protected interests," 400 F. Supp. 3d at 909 (emphasis added), yet the Ninth Circuit in *Melendres* cautioned courts not to take "too narrow or technical an approach" in determining  "what constitutes the same type of relief or the same kind of injury."  784 F.3d at 1263.  Rather, the *Melendres* court concluded that even under the standing approach, the named plaintiffs were adequate representatives of the putative class because "the named plaintiffs' claims do not implicate a significantly different set of concerns[.]"  *Id.* at 1263 (internal quotations and citations omitted).  Here, it is clear that Sedlock has standing, at a minimum, to assert his wage and hour claims under Florida law against MLB.  As these claims do not implicate a significantly different set of concerns than the claims of the putative class members under Arizona and California law, the Court concludes any further inquiry as to whether Sedlock should be permitted to represent the proposed (b)(2) class in pursuing the sister circuit claims is appropriately addressed under Rule 23.[8]

This conclusion is consistent with the reasoning in *Langan*, which addressed "whether there is a standing problem when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws that generally prohibit the same conduct."  897 F.3d at 95. The court found that this question should be addressed under Rule 23, an approach that "makes sense" because it "acknowledges the obvious truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate."  *Id.* Moreover, the court found, "[t]his approach also accords with the Supreme Court's preference for dealing with

---

[8]At oral argument, Defendants argued that it is already "law of the case" that there must be a named plaintiff for each of the states whose laws are being invoked, citing the Article III Standing Order.  As noted above, in that Order, the Court observed that Plaintiffs' "allegations in the SCAC may be sufficient to show Article III standing because all of the Franchise Defendants are alleged to have employed one or more named Plaintiff, there is a named Plaintiff who has standing to invoke every state's law and all Plaintiffs have demonstrated actual injury by alleging that one of the Franchise Defendants failed to pay them at all for some work and also failed to pay them required overtime."  Article III Standing Order at 20.  The Court expressly declined to decide the question of Article III standing, however, and was not called upon to address the situation that is presented here, where there is *not* a named plaintiff who can invoke every state's law.  Therefore, the Court rejects Defendants' assertion that the Court has already decided this question.

United States District Court
Northern District of California

1   modest variations between class members' claims as substantive questions, not jurisdictional

2   ones." *Id.* (citing *Gratz v. Bollinger*, 539 U.S. 244, 266 (2003) (explaining that differences in use

3   of race between transfer- and freshman-admissions policies "clearly ha[d] no effect on petitioners'

4   standing to challenge the [policies]" but "might be relevant to a narrow tailoring analysis"); *Lewis*

5   *v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("The standing determination is quite separate from

6   certification of the class.")). Finally, the court in *Langan* pointed out that "the only other circuit to

7   have addressed this issue has reached the same conclusion." *Id.* at 95-96 (citing *Morrison v. YTB*

8   *Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (explaining that whether plaintiff could bring putative

9   class action on behalf of out-of-state class members "ha[d] nothing to do with standing, though it

10  may affect whether a class should be certified—for a class action arising under the consumer-fraud

11  laws of all 50 states may not be manageable, even though an action under one state's law could

12  be")). The undersigned finds the reasoning in *Langan* on this question to be persuasive.

13      Accordingly, the Court addresses the question of whether Sedlock can represent the class

14  members' claims under California and Arizona law under Rule 23.

15  **E.      Whether the Proposed Class Satisfies the Requirements of Rule 23(b)(2)**

16      Plaintiffs' proposed (b)(2) class may be certified if it satisfies all of the requirements of

17  Rule 23(a) (numerosity, commonality, typicality and adequacy) as well as the requirements if

18  subsection (b)(2).

19          **1.   Numerosity**

20      It is undisputed that Rule 23(a)(1)'s numerosity requirement is satisfied.

21          **2.   Commonality**

22      Likewise, the Court finds that the proposed class satisfies the commonality requirement.

23  As the Court discussed in its First Class Certification Order, the threshold for meeting the

24  commonality requirement is relatively low.  First Class Certification Order at 63.  Plaintiffs are

25  required to demonstrate only that their claims "depend upon a common contention 'such that

26  determination of its truth or falsity will resolve an issue that is central to the validity of each

27  [claim] with one stroke.' " *Id.* at 62 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588

28  (9th Cir. 2012) (internal citation omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

United States District Court
Northern District of California

32

1    350 (2011)).   " 'The existence of shared legal issues with divergent factual predicates is sufficient,

2    as is a common core of salient facts coupled with disparate legal remedies within the class.' "   *Id.*

3    (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

4            In the First Class Certification Order, the Court found that even though the proposed

5    classes did not meet the more stringent predominance requirement under Rule 23(b)(3), they met

6    the commonality requirement, explaining its conclusion as follows:

7                    [Plaintiffs] have asserted three core claims that arise from the
                     compensation policies set forth in the UPC and MLRs, namely, failure
8                    to pay players a salary outside the championship season, failure to pay
                     overtime, and failure to pay minimum wage during the championship
9                    season. Plaintiffs present common evidence to show that all minor
                     league players are subject to these policies and therefore, their legality
10                   will raise common questions of law that are likely [to] drive the
                     resolution of the litigation.
11

12   *Id.* at 62-63.  The same is true here. Further, the Court rejects Defendants' argument that Plaintiffs

13   have "reintroduced" a lack of commonality by broadening the proposed class definition to include

14   off-season work, similar to Plaintiffs' original proposed classes.  As Plaintiffs point out, even

15   though the Court declined to certify the original classes under Rule 23(b)(3) for failure to meet the

16   predominance requirement, it found that those classes satisfied the commonality requirement.

17   While the breadth of the proposed class definition raises questions as to typicality and adequacy, it

18   does not defeat commonality.

19           **3.  Typicality**

20           Under Rule 23(a)(3), "the [legal] claims or defenses of the representative parties [must be]

21   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the

22   nature of the claim or defense of the class representative and not on facts surrounding the claim or

23   defense." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007) (citing *Hanon

24   v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other

25   members have the same or similar injury, whether the action is based on conduct which is not

26   unique to the named plaintiffs, and whether other class members have been injured by the same

27   course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). The purpose

28   of the typicality requirement is closely related to the adequacy requirement under Rule 23(a)(4) in

United States District Court
Northern District of California

33

1  that it ensures that "the named plaintiff's claim and the class claims are so interrelated that the

2  interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel.*

3  *Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and adequacy

4  requirements "tend to merge[,]" "although the [adequacy] requirement also raises concerns about

5  the competency of class counsel and conflicts of interest.").

6       In the Court's Second Class Certification Order, the Court found that the claims of the four

7  then-current players who sought to represent the proposed classes met this requirement "because

8  they [were] 'reasonably coextensive with those of the absent class members.' " Second Class

9  Certification Order at 49 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998);

10  and citing Broshuis Decl., Exs. E & F).  The Court's conclusion was based, in part, on the fact that

11  Plaintiffs had narrowed the proposed classes to exclude off-season work. *Id.* at 49-50 ("To the

12  extent that the Court expressed concern regarding the typicality of Named Plaintiffs' claims in

13  connection with off-season training performed in different states, Certification Order at 65, that

14  concern has been addressed by Plaintiffs' new Rule 23 Classes, which do not seek to assert claims

15  based on off-season training on a classwide basis.").  Likewise, in addressing the choice-of-law

16  concerns expressed by the dissent on appeal, the Ninth Circuit relied on those same limitations:

17      The California class consisted of those players who participated in the
   California League, which plays games exclusively within California
18  during the championship season. The Arizona and Florida classes
   consisted of those who performed during spring training, extended
19  spring training, and the instructional leagues in those states. Thus, the
   dissent's fear that employers will be required to research applicable
20  state laws whenever an employee crosses state lines is overstated.

21  F.3d 918, 932 n. 8 (9th Cir. 2019), cert. denied, 141 S. Ct. 248 (2020).

22       The Court concludes that to the extent Plaintiffs' proposed (b)(2) class seeks to include *all*

23  activities performed under the UPC by minor leaguers in the three states rather than limiting the

24  proposed class to the activities that the Court previously found satisfied the typicality requirement,

25  the concerns it previously expressed with respect to individual inquiries and choice of law once

26  again apply.  Nothing in the Ninth Circuit's opinion suggests that the performance of a wide

27  variety of off-season activities by minor leaguers who happen to be in one of these states for

28

1    varying periods of time will not raise choice-of-law questions as to individual class members.[9]

2    Therefore, the Court finds that the proposed (b)(2) class must be limited to services performed

3    under the UPC during spring training, the championship season and the instructional leagues to

4    meet the typicality requirement.

5        Even with that limitation, the Court must address whether Sedlock's claims are

6    "reasonably coextensive" with the claims of minor league player who played in Arizona and

7    California given that he has no connection to either of those states.  Defendants argue that they are

8    not, pointing to the Ninth Circuit's conclusion that the relevant wage and hour laws of California,

9    Arizona and Florida are materially different to support its argument.  In particular, the Ninth

10   Circuit stated:

> [W]e agree with defendants that the differences in state law are
> "material," meaning that "they make a difference in this litigation."
> *Mazza*, 666 F.3d at 590. For example, some states have more
> expansive definitions of "work," others have differing available
> defenses, and we have previously held that the elements for a quantum
> meruit claim—alleged in both the Arizona and Florida classes—"vary
> materially from state to state." *Id.* at 591 (citing Candace S. Kovacic,
> A Proposal to Simplify Quantum Meruit Litigation, 35 Am. U.L. Rev.
> 547, 558–60 (1986)).

16   934 F.3d at 933.  Yet that discussion was in the context of applying California's choice of law

17   analysis, not in connection with determining typicality under Rule 23.  Rule 23 envisions that the

18   claims of the class members may not be identical to the named plaintiffs' claims, suggesting that

19   the claims of a named plaintiff *may* be typical of the class members' claims even if some class

20   members' claims are governed by the laws of other states.  Under *Melendres*, the question is

21   whether the claims of the named plaintiff implicate a significantly different set of concerns than

22   the unnamed plaintiffs' claims.

23       Here, the briefing as to the differences between the laws of the three states and how they

24   render Sedlock's claims "atypical" as to the claims of minor league players who play in Arizona

25   and California is scant.  Defendants point to the following examples in support of their position

26

27   [9] Although Plaintiffs' proposed (b)(2) class definition is broader than the one considered by the
     Ninth Circuit and thus arguably exceeds the scope of the remand, Defendants have cited no
     authority that suggests that the undersigned does not have discretion to consider certifying a (b)(2)
28   class that does not exactly match the definition that was the subject of the appeal.

United States District Court
Northern District of California

1    that Sedlock's claims under Florida law are not typical of class members' claims under Arizona

2    and California law:

3                Take, for instance, the fact that California requires the payment of
                daily overtime (*id.* at 245); that Arizona and Florida do not require
4                any overtime payment; that Florida law is interpreted under the FLSA
                which now exempts minor league players from overtime
5                requirements; and that each of the three states uses different tests to
                define compensable time (Ninth Circuit Remand at 29-30).
6

7    Opposition at 16.  The Court gives some weight to the difference between the laws of the three

8    states with respect to the availability of overtime.  To the extent that Sedlock may not seek

9    overtime under Florida law while class members who play in California law are entitled to

10   overtime, the Court finds that inclusion of class members whose claims are based on activities

11   performed in California defeats typicality.  In particular, as Sedlock has no claim for overtime, his

12   claims may implicate a significantly different set of concerns than those of the California class

13   members (though this problem does not seem to exist as to the Arizona class members).  On the

14   other hand, the Court is not persuaded that differences between the tests used to define

15   compensable time will defeat typicality if the (b)(2) class is narrowed to exclude off season work,

16   as discussed above.  Likewise, the Court is not convinced that the possible defense Defendants

17   may have under Florida law based on the Save America's Pastime Act is sufficient to defeat

18   typicality as to the claims of class members asserting claims under Arizona law.

19         Therefore, the Court finds that while Sedlock does not meet the typicality requirement as

20   to claims based on services performed under the UPC during the off-season or in California, he

21   meets the typicality requirement as to a narrowed (b)(2) class that limits membership to

22   individuals who perform services under the UPC during spring training, the championship season

23   and the instructional leagues in Florida and Arizona.

24              **4.  Adequacy**

25         Under Rule 23(a)(4), the class representative must "fairly and adequately protect the

26   interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether this requirement is met,

27   courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

28   class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously

1   on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

2   Defendants have not pointed to any conflicts of interest on the part of Sedlock or counsel, but

3   contend Sedlock will not adequately represent the class because: 1) he is seeking damages on his

4   individual claims for uncompensated work (including off-season work performed outside of

5   Florida) he has performed during the duration of his contract with MLB, casting doubt on his

6   representation that injunctive relief is the "primary" form of relief he seeks; 2) the problems

7   discussed above with respect to typicality also make Sedlock an inadequate class representative;

8   and 3) Sedlock allegedly "refused to sit for his seven hour deposition during spring training."

9   Opposition at 17-18.

10      The Court is not persuaded that Sedlock's pursuit of damages for past conduct that mirrors

11  the conduct that is the subject of his injunctive relief claims makes it any less likely that he will

12  vigorously pursue the interests of the (b)(2) class.  If anything, the overlap between the claims for

13  damages and the injunctive relief claims will likely increase his incentive to pursue injunctive

14  relief on behalf of the class. Moreover, Sedlock states in his declaration that he "plan[s] to

15  continue to seek to work for Defendants as a minor league player even if [he is] released or if [his]

16  UPC expires[,]" giving him an ongoing stake in MLB's policies and practices with respect to the

17  compensation of minor league players.  Sedlock Decl. [dkt. no. 923-1] ¶ 11.

18      As to the issues related to typicality that Defendants contend make Sedlock an inadequate

19  representative, the Court incorporates its conclusions on typicality here.  In other words, to the

20  extent Sedlock meets the typicality requirement, he is also an adequate class representative.

21      The Court rejects Defendants' reliance on what appears to be a garden-variety scheduling

22  dispute about the timing of Sedlock's deposition to suggest he will not adequately represent the

23  proposed class.  That argument is frivolous.  The Court notes that throughout this case, both

24  Plaintiffs and Defendants have agreed that spring training poses special scheduling challenges

25  which should, when possible, be accommodated.

26      **5.  Rule 23(b)(2)**

27      Defendants contend the proposed class should not be certified under subsection (b)(2)

28  because the relief it seeks is: 1) "antithetical" to the indivisibility requirement of Rule 23(b)(2); 2)

37

*United States District Court*
*Northern District of California*

1    vague and nothing more than a bare injunction to follow the law; and 3) a "thinly-veiled request

2    for monetary damages."  The Court rejects all three arguments.

3        As to indivisibility, Defendants point to the following discussion of the nature of relief that

4    may be sought by (b)(2) classes in *Wal-Mart Stores, Inc. v. Dukes*:

> Rule 23(b)(2) allows class treatment when "the party opposing the
> class has acted or refused to act on grounds that apply generally to the
> class, so that final injunctive relief or corresponding declaratory relief
> is appropriate respecting the class as a whole." One possible reading
> of this provision is that it applies only to requests for such injunctive
> or declaratory relief and does not authorize the class certification of
> monetary claims at all. We need not reach that broader question in
> this case, because we think that, at a minimum, claims for
> individualized relief (like the backpay at issue here) do not satisfy the
> Rule. The key to the (b)(2) class is "the indivisible nature of the
> injunctive or declaratory remedy warranted—the notion that the
> conduct is such that it can be enjoined or declared unlawful only as to
> all of the class members or as to none of them." Nagareda, 84
> N.Y.U.L.Rev., at 132. In other words, Rule 23(b)(2) applies only
> when a single injunction or declaratory judgment would provide relief
> to each member of the class. It does not authorize class certification
> when each individual class member would be entitled to a different
> injunction or declaratory judgment against the defendant. Similarly,
> it does not authorize class certification when each class member
> would be entitled to an individualized award of monetary damages.

16   564 U.S. 338, 360–61 (2011). While this discussion makes clear that it is improper to certify a

17   (b)(2) class that seeks individualized injunctive relief, it does not hold that injunctive relief may

18   not be tailored to address different claims and subsets of the class where appropriate, including

19   claims asserted under different states' laws.  Nor have Defendants cited any authority that supports

20   that conclusion.  The undersigned declines to adopt the expansive reading of *Dukes* proposed by

21   Defendants and rejects their argument that the proposed (b)(2) class is antithetical to the

22   indivisibility requirement.

23        Defendants also point to cases in which courts have held that so-called "obey-the-law"

24   injunctions are disfavored "as they are not narrowly tailored and are at odds [with] Federal Rule of

25   Civil Procedure 65(d), which requires that orders granting injunctive relief be 'specific in terms'

26   and 'describe in reasonable detail . . . the act or acts sought to be restrained.' " *Roman v. MSL*

27   *Cap., LLC*, No. EDCV172066JGBSPX, 2019 WL 3017765, at *5 (C.D. Cal. July 9, 2019), aff'd,

28   820 F. App'x 592 (9th Cir. 2020) (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

1   518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007)).  The cases Defendants cite are neither class actions

2   nor on point.

3           In *Roman*, the court denied a request for a preliminary injunction by a group of five

4   plaintiffs and their children who had prevailed in an action for housing discrimination under the

5   Fair Housing Act where the request was untimely.  *Roman*, 2019 WL 3017765, at *4. Even if the

6   request had been timely, the court found, the plaintiffs had not demonstrated that injunctive relief

7   was warranted because "[w]hile [the plaintiffs] [had] not clarified the scope of the injunction they

8   [sought], it appear[ed] that what they [sought was] effectively a blanket order enjoining [the

9   defendants] from breaking the law, in addition to some sort of mandatory training" for the

10   individual defendant in the case. *Id.* at *1, 4.  Nothing in *Roman* suggests that in this case

11   the injunctive relief the proposed (b)(2) class seeks cannot be crafted in a manner that is specific

12   enough to meet the requirements of Rule 65(d) or that this would be a legitimate reason to decline

13   to certify the (b)(2) class.

14           Likewise, *Committee Concerning Community Improvement v. City of Modesto*, does not

15   support Defendants' position. *See* No. CV-F-04-6121 REC/DLB, 2004 WL 7334944, (E.D. Cal.

16   Dec. 30, 2004), on reconsideration, No. CV-F-04-6121 REC/DLB, 2005 WL 8162414 (E.D. Cal.

17   Mar. 23, 2005)).  In that case, which was not a class action, the plaintiffs asserted housing

18   discrimination claims against the City of Modesto and other defendants under various statutes and

19   sought, *inter alia*, a preliminary and permanent injunction enjoining the defendants from

20   continuing to follow the illegal policies, practices, and procedures described in the complaint. *Id.*

21   at 1-3. On a motion to dismiss, the court recognized that "obey-the-law" injunctions are disfavored

22   but *rejected* the defendants' argument that the plaintiff's claim should be dismissed under Rule

23   12(b)(6) on that basis. *Id.* at *18 ("The court concurs with plaintiffs that the apparent

24   unavailability of the relief sought in connection with plaintiffs' claims against the City regarding

25   annexation do not compel dismissal of these claims pursuant to Rule 12(b)(6)").  It went on to

26   dismiss the plaintiffs' claim on the basis that they were time-barred. *Id.* at *18-19.  Here,

27   Defendants do not contend the claims of the (b)(2) class are time-barred or more broadly, that the

28   theories that underly their claims are flawed as a matter of law.  Therefore, *Committee Concerning*

United States District Court
Northern District of California

39

1   *Community Improvement v. City of Modesto* sheds no light on the question of whether the (b)(2)

2   class here should be certified.

3         Defendants' reliance on the Ninth Circuit's recent decision in *Hernandez Roman v. Wolf*,

4   829 F. App'x 165, 175 (9th Cir. 2020) is also misplaced.  In that case, the Ninth Circuit largely

5   affirmed the district court's decision granting a preliminary injunction requiring the government to

6   address claims of detained immigrants at a particular immigration facility (Adelanto) in the face of

7   a COVID-19 outbreak there.  It nonetheless "vacate[d] the provisions of the preliminary injunction

8   that ordered specific measures to be implemented at Adelanto" because "[t]he district court

9   tailored those measures to respond to the circumstances at Adelanto as of mid-April" and "[i]n the

10  intervening five months, those circumstances have changed dramatically." *Id.* at 173-174.  The

11  court remanded to the district court to consider what specific provisions were appropriate under

12  these changed circumstances and "ma[d]e some observations for the district court to consider on

13  remand." *Id.* at 174.  One of those observations was that the CDC's guidelines for correctional

14  and detention facilities, which the district court had incorporated into its preliminary injunction,

15  did "not provide a workable standard for a preliminary injunction" because of their "vagueness,"

16  leading the parties to strongly disagree on whether the defendant's practices were in compliance

17  with the preliminary injunction.  *Id.*  While this observation supports the general rule that an

18  injunction must "describe in reasonable detail . . . the acts restrained or required[,]" Fed. R. Civ.

19  Proc. 65(d)(1)(C), the court's observation was based on the specific facts of the case and those

20  facts are in no way similar to the facts here.

21        Finally, the Court rejects Defendants' argument that the injunctive relief claims are but a

22  "thinly veiled" attempt to obtain damages and therefore that a (b)(2) class should not be certified.

23  Defendants' argument appears to be based on the Supreme Court's holding in *Dukes* that "Rule

24  23(b)(2) does not authorize class actions 'when each class member would be entitled to an

25  individualized award of monetary damages.' . . .  [and that] 'only money damages that are

26  "incidental" to, as opposed to central to, the plaintiff's requested relief may be pursued in a class

27  action maintained under Rule 23(b)(2).' " *Gomez v. J. Jacobo Farm Lab. Contractor, Inc*., 334

28  F.R.D. 234, 253–54 (E.D. Cal. 2019), modified on reconsideration, No. 115CV01489AWIBAM,

United States District Court
Northern District of California

2020 WL 1911544 (E.D. Cal. Apr. 20, 2020), and modified, No. 115CV01489AWIBAM, 2021 WL 431402 (E.D. Cal. Feb. 8, 2021) (cited by Defendants in Opposition at 23) (quoting *Dukes*, 564 U.S. at 360).  Here, however, the proposed (b)(2) classes do not seek any damages.  Nor have Defendants cited any authority for the proposition that an injunction requiring Defendants to pay minimum wage and overtime amounts to an award of damages simply because it requires the payment of money.  Therefore, the Court rejects this argument.

## IV.   CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part.  The parties shall meet and confer to address the specific wording of the Rule 23(b)(2) class definition that the Court has approved, incorporating the limitations discussed above. If the parties can agree, a stipulation shall be filed with the Court by **August 27, 2021** containing the revised class definition. If the parties are unable to agree, they should jointly file by the same date a statement, not to exceed five pages, setting forth the competing proposed class definitions and explaining the basis for any disagreements. In addition, the Court approves the appointment of Korein Tillery, LLC and Pearson, Simon & Warshaw LLP as class counsel for all of the classes certified in this action.  The parties are requested to supply an agreed-upon proposed order appointing those firms as class counsel by **August 27, 2021.**

**IT IS SO ORDERED.**

Dated:  July 23, 2021

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

41