Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

August 23, 2021

Elise M. Bloom
Member of the Firm
d +1.212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

<u>Via ECF</u>

The Honorable Joseph C. Spero
U.S. District Court, Northern District of California
San Francisco Courthouse, Courtroom F – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *Senne, et al. v. Office of the Commissioner of Baseball, et al.,*
             <u>No. 3:14-cv-00608-JCS</u>

Dear Judge Spero:

Pursuant to Section E of the Court's Civil Standing Orders, the parties submit this joint letter concerning the production of materials relating to Plaintiffs' expert Dr. Dennis' report.

**<u>Defendants' Position</u>**

Plaintiffs should be compelled to produce: (i) the identities of players that Dennis invited to participate in the main survey; (ii) the identities of the survey respondents and their responses; (iii) the invitees that affirmatively opted out of the survey; and (iv) all of Dennis' communications with survey invitees. Dennis relied on the foregoing information in reaching his conclusions and therefore is required by law to produce it.

Dennis asked each survey respondent to provide his name and to confirm his identity by providing his initials (*See* Dennis Dec. Attachment 5 (Dkt. 696-5), at 3)—and then relied on that data in preparing his report. Dennis attempted to test for non-response bias by comparing certain attributes of players that responded to his survey against players that did not respond. (Dkt. 696 ¶¶ 22-25.) He did this by looking up players on Baseball-Reference.com to determine if there were any noticeable difference in response rates based on age, number of games played, most recent year played, fielding position, and Major League club—information he was able to obtain *only* because he knew the players' identities. (*Id.*) Dennis relied on this information to support his conclusions regarding non-response bias and the reliability of the main survey. (*Id.* ¶¶ 8-9.) In his declaration submitted in connection with this dispute, Dennis does not refute his reliance on players' identities.

The identities of players who responded to Dennis' survey bear directly on: (i) the number of respondents who played in the California League and whether Dennis' sample is representative of the California class; and (ii) whether non-response bias exists in Dennis' results based on variables that actually matter and that Dennis ignored. In order to challenge the survey at summary judgment and/or trial—as this Court expressly contemplated ("certification of the proposed classes will not preclude Defendants from challenging the sufficiency of the Main Survey and Plaintiffs' damages model on summary judgment and/or trial.") (Dkt. 782 at 56)—Defendants must be able to replicate Dennis' analysis in all respects, which requires the disclosure of player identities and responses so they can compare responses using Baseball-Reference.com as Dennis did. That is impossible without the identities, and would deprive Defendants of due process in challenging the main

**Proskauer**»

Honorable Joseph C. Spero
August 23, 2021
Page 2

survey.   Plaintiffs' offer to provide a spreadsheet that identifies players in the California League proves the point:  information that was not collected in the survey (such as affiliate level) is known to Plaintiffs based on the names that were collected.

In addition, Kriegler's August 13, 2021 supplemental damages report relies heavily on the main survey and further underscores the need for disclosure of the identities of survey respondents. Kriegler now relies on a subset of just 245 respondents derived from Dennis' sample, which, as explained above, was obtained by using player identities.  Kriegler relies on this sample to justify his calculations for hundreds of millions of dollars in alleged class-wide damages. Defendants are therefore entitled to the underlying information used by Dennis and Kriegler in identifying this sample in order to compare this subset to other respondents and invitees.

The fact that Dennis relied on player identities in forming his conclusions renders any best practices concerning respondent confidentiality irrelevant.  Principles of survey research regarding confidentiality do not override Dennis' disclosure obligations under Rule 26.  *See, e.g.*, *Lopez v. Liberty Mut. Ins. Co.*, No. CV 14-05576-AB (JCx), 2018 WL 6137130, at *1-3 (C.D. Cal. Jan. 10, 2018) (compelling production of identities "because the survey relie[d] on the individuals' responses").[1]   In addition to relying on player identities in his report, Dennis failed to promise respondents confidentiality, which courts in this district have found to be dispositive.[2] *See In re: Autozone, Inc.*, No. 10-md-02159-CRB (JSC), 2016 WL 4136520, at *2 (N.D. Cal. May 16, 2016) (rejecting plaintiffs' argument that confidentiality of respondents is an accepted best practice and ordering disclosure of survey respondents where there was no promise of confidentiality). Even if Dennis had promised confidentiality, such an assurance is irrelevant in the context of litigation. *See Nau Holdings LLC v. Dlorah, Inc.*, No. 08-cv-02743-CMA-BNB, 2010 WL 3322713, at *2 (D. Colo. Aug. 20, 2010) ("promise of confidentiality" to survey respondents was "not binding on the court" and ordering disclosure of the identity of a survey participant "to address the reliability of the survey"); *U.S. Surgical Corp. v. Orris, Inc.*, 983 F. Supp. 963, 970 (D. Kansas 1997) (compelling the production of the identities of survey respondents despite promise of confidentiality).  Furthermore, any purported concerns about confidentiality and public disclosure can be addressed by the robust confidentiality order in this case. (Dkt. 233.)

Additionally, Dennis should be compelled to produce all communications with survey invitees. Although Dennis states in his report that he sent "[u]p to three emails" to survey invitees to encourage responses, he provided only his initial email.  (Dennis Dec. Attachment 7 (Dkt. 696-7), at *5-7.)   Defendants, however, recently became aware of at least one additional survey communication to invitees that encouraged players to "mak[e] [your] voice heard"—which, in the context of a pending litigation, bears on the survey's purpose and self-interest bias.  (*See* Ex. A.) Dennis also admits that he had additional communications with respondents. (*See* Ex. C.) Dennis

---

[1] The cases Plaintiffs cite are distinguishable because the survey respondents were non-parties that deserved a heightened level of protection.  *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810-HSG, 2020 WL 7025089, at *3 (N.D. Cal. Nov. 30, 2020). Or the survey expert never possessed respondents' identities in the first instance. *Oklahoma v. Tyson Foods, Inc.*, 2009 WL 10271835, at *6 (N.D. Okla. Mar. 11, 2009).  Neither factor is present here.

[2] Neither the main survey nor the invitations that players received contained any promise of confidentiality.  (*See* Dennis Dec. Attachment 6 (Dkt. 696-6, 696-7)—a fact Dennis does not dispute here.

**Proskauer»**

Honorable Joseph C. Spero
August 23, 2021
Page 3

should produce all communications to/from survey invitees to understand what invitees were informed regarding the purpose of the survey and any instructions for the survey.

In a last-ditch attempt to avoid disclosure, Plaintiffs suggest that Defendants' request is untimely. This claim fails for two reasons. *First*, Plaintiffs offer the survey to prove class-wide liability and, as noted above, Defendants are entitled to challenge its reliability on summary judgment and/or trial. (Dkt. 782 at 56.) Kriegler's reliance in his August 13, 2021 supplemental report on a new subset of survey respondents further undermines Plaintiffs' position. *Second*, Dennis has an independent and continuing obligation under Rule 26 to disclose all information that he relied upon in reaching his conclusions at the time he provided his report on August 4, 2016. Plaintiffs' suggestion that Defendants somehow waived Dennis' obligations under Rule 26 by stipulating that the report was sufficiently disclosed misses the point. The Court and Defendants were clear that such a stipulation obviated the need for Plaintiffs to re-disclose the same report. Moreover, the back-up Dennis provided in 2016 was incomplete. Indeed, the metadata for the spreadsheet Plaintiffs provided for Dennis' non-response analysis reveals that it was created well *after* Dennis disclosed his report, meaning it was different from what Dennis used.

Defendants respectfully request that Dennis be required to produce all of the information Defendants requested within 24 hours of a decision in favor of Defendants. Defendants should be afforded a sufficient amount of time to review and analyze the information requested above in advance of Dennis' deposition.[3]

**<u>Plaintiffs' Position</u>**

Defendants seek production of materials not relied upon, and that are confidential, unnecessary, irrelevant and—if truly needed—should have been requested five years ago before their rebuttal reports were due. As the Federal Judiciary Center's *Reference Manual on Scientific Evidence* recognizes, "the professional standards for survey researchers generally prohibit disclosure of respondents' identities."[4] "The use of survey results in a legal proceeding does not relieve the Survey Research Organization of its ethical obligation to maintain in confidence all Respondent-identifiable information or lessen the importance of Respondent anonymity," and "identifying information … should be removed to ensure respondent confidentiality." *Id.* The ethical code from the American Association for Public Opinion Research echoes this: "a legal proceeding does not relieve us of our ethical obligation to protect participant privacy." Ex. C ("Dennis Decl.") at ¶ 3. Dr. Dennis is thus obligated to keep this information confidential. *Id.*

Defendants claim courts regularly require production of these materials, but as Judge Gilliam recently held, Rule 26 does not require the production of survey respondents' identities, the

---

[3] Defendants have proposed a brief two-week adjournment of the deadlines for rebuttal reports, expert discovery, summary judgment, and *Daubert* briefing in light of this dispute and other scheduling issues. Plaintiffs did not consent. Accordingly, Defendants intend to move pursuant to Local Rule 6.3 for a two-week extension such that all briefing will be complete by December 10, 2021, which is more than seven weeks before the January 28, 2022 hearing. *See* Ex. B.

[4] Third Edition, (2011), at 417, *available at* https://www.nap.edu/read/13163/chapter/9#417. Defendants wrongly state in note 1 that Plaintiffs do not oppose production of requested items 1 and 3. Those materials are likewise confidential; providing a list of invitees and non-participants would allow a person to ascertain the participants.

**Proskauer»**

Honorable Joseph C. Spero
August 23, 2021
Page 4

researcher's "original notes," and similar materials. *Exeltis USA Inc. v. First Databank, Inc.*, 2020 WL 7025089, at \*7 (N.D. Cal. Nov. 30, 2020). The policy reason is a strong one: "[i]f courts routinely allowed disclosure of the identities of [a] survey's participants, it is unlikely that people would agree to participate in surveys." *Id.*; *see also Applera Corp. v. MJ Research Inc.*, 389 F. Supp. 2d 344, 350 (D. Conn. 2005); *Oklahoma v. Tyson Foods, Inc.*, 2009 WL 10271835, at \*6 (N.D. Okla. Mar. 11, 2009).

Defendants claim there was no assurance of confidentiality because Dr. Dennis failed to make the assurance explicit, but that is backwards. Confidentiality is the norm in survey research unless research subjects consent to disclosure. Dennis Decl. ¶¶ 2, 3. Thus, it is the consent to disclosure that must be made explicit—not the guarantee of confidentiality. *Id.*

In the face of this strong need to maintain confidentiality, Defendants have not identified any true need for the materials. If they had a real need, they would have filed this motion before their rebuttal reports were due five years ago. The pilot of [a] survey was served in March 2016. Dkt. 498. A few days later, Defendants demanded respondents' identities, and Plaintiffs explained that it was standard practice to not provide that information. That was the end of the request.

Then on August 4, 2016, Plaintiffs served the main survey. Dkt. 696. Defendants soon demanded production of various items that they believed were not provided, including backup data for the non-response analysis. Plaintiffs produced spreadsheets containing codebooks and all data Dr. Dennis relied upon to conduct the non-response analysis, including age, year, affiliation, position, games played, and whether the person took the survey. (A sample of this data is attached as Ex. D). The next day, Defendants demanded an emergency hearing with the Court. They requested the native versions of the data, which Plaintiffs said could be produced (and were produced) within 24 hours. *See* Dkt. 713. On September 14, 2016, Defendants filed a *Daubert* motion and a rebuttal report. Dkt. 724, 726. They devoted several pages in both the motion and rebuttal report to non-response bias. A month later, Defendants filed two more rebuttal declarations, with one examining the variation in responses across MLB teams, Dkt. 749. On October 28, they filed a reply report that again devoted multiple pages to the potential for non-response bias. Dkt. 761. Throughout this process, Defendants and their experts never mentioned a need for names or communications to further assess the validity of the main survey—despite discussing in *Daubert* briefing the *Autozone* case upon which they now rely. *See* Dkt. 724 at 23.

During a scheduling conference after the appeal, Defendants stipulated that the main survey "has been sufficiently disclosed." Dkt. 843. And because Defendants have already rebutted the main survey, the only rebuttal report that Defendants may make is "an expert report in rebuttal to the updated Kriegler report." *Id.* Despite that history, Defendants now urgently demand production of this information in advance of expert depositions. Yet their failure to previously demand this information should not be exploited to delay depositions or alter the case management order.

And there are no grounds for obtaining this information. As established above, Rule 26 does not require its production, *see Exeltis*, 2020 WL 7025089, at \*7, and Defendants already stipulated that the survey has been properly disclosed. They say Dr. Dennis relied on identities when conducting his study and his non-response analysis. He did not. He relied upon the already-

**Proskauer**»

Honorable Joseph C. Spero
August 23, 2021
Page 5

produced survey responses[5] and the data in the already-produced spreadsheet. Thus, Defendants have all of the underlying data and the codebook that can be used to fully replicate the analyses.

Rule 26 in fact protects these materials because they are confidential and Defendants have not established any justification. Defendants' bias arguments have been fully presented, briefed and rejected. *See* Dkt. 782. Defendants now want to perform *further* non-response analyses, saying it would deprive them of due process otherwise. But due process does not require multiple bites at the same apple. Defendants chose not to perform further analyses or to demand further information for more analyses five years ago and then stipulated that the report was properly disclosed. Defendants argue they are entitled to challenge the survey's reliability at summary judgment and trial, but they can use their existing expert opinions and their cross examination of Plaintiffs' experts to do so. They should not be permitted to circumvent the case management order by creating new opinions for new expert reports aimed at the survey. Nor is there anything "new" about Dr. Kriegler's reliance on a subset of the respondents—Dr. Dennis discussed this "control group" at length in his report, Dkt. 696 at 2-3, 5-9, as did Defendants' primary rebuttal report without ever lodging a lack-of-information objection, Dkt. 726 at 5, 16-19.

Their other purported need is to assess whether the survey is representative of the California Class—something first relayed to Plaintiffs in this joint letter just days ago. That too is something Dr. Dennis did not rely upon. The underlying data, though, already includes the MLB club affiliated with each respondent and non-respondent, (*see* Ex. D), which allowed Defendants to already investigate differences in responses across MLB clubs. Dkt. 749. So Defendants have long had the ability to test for these types of things. But if needed, Plaintiffs can add a column to the spreadsheet showing which respondents participated in the California League, which could be provided in a reasonable amount of time without breaching confidentiality.

Nor is there any need for all communications with respondents. Dkt. 696. Dr. Dennis already provided the copy for the initial invitations and the script for telephone calls. Dkt. 696-7. Dr. Dennis's report noted that follow-up reminders would be sent, and Defendants have had the copy for one of those reminders for several months after an intervening plaintiff (Kyle Johnson) produced it. If other reminder emails deviated from that script (Plaintiffs do not believe so but are confirming) Plaintiffs will provide the copy in an anonymous manner. The copy for those reminder emails is sufficient—confidential communications are not needed. Indeed, Defendants have not cited any case that has ordered the production of such confidential communications.

As Defendants previously informed the Court, the privacy interests of players "is of paramount importance, and is consistent with the constitutional right to privacy" under California law. Dkt. 655 at 5. That interest is even more acute here, where some respondents were (and likely are) current players, and the fear of reprisal is quite real. It is also essential for survey research that this information be kept private. Dr. Dennis did not rely on these materials, Defendants have no real need for it, and the case management order should remain unaltered and the request denied.

---

[5] *See* Dkt. 696-08. The day this letter brief was filed, Defendants added the request for "responses" to their requests, but they have had this information for five years.

Proskauer≫

Honorable Joseph C. Spero
August 23, 2021
Page 6

Respectfully submitted,

PEARSON, SIMON & WARSHAW, LLP          PROSKAUER ROSE LLP

*/s/ Bobby Pouya*                                     */s/ Elise M. Bloom*

BOBBY POUYA,                                      ELISE M. BLOOM
*Interim Co-Lead Counsel for Plaintiffs*          *On behalf of Defendants*


**Filer Attestation**

I, Elise M. Bloom, am the ECF user whose identification and password are being used to file this joint letter brief.  In compliance with Local Rule 5-1(i)(3), I hereby attest that the counsel listed above concur in this filing. I will maintain an executed copy of this filing in our files that can be made available for inspection upon request.


Dated:  August 23, 2021                    _____*/s/  Elise M. Bloom*_____

                                                              Elise M. Bloom