# EXHIBIT 107



**Proskauer Rose LLP**  Eleven Times Square  New York, NY 10036-8299

Elise M. Bloom
Member of the Firm
d 212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

November 9, 2020

*By Email*

Garrett Broshuis
Korein Tillery
One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101-1625
GBroshuis@KoreinTillery.com

      Re:   *Senne, et al. v. Office of the Commissioner of Baseball, et al.*
              No. 3:14-cv-00608-JCS

Dear Garrett:

Thank you for your October 21, 2020 letter. Defendants likewise hope that you and your team are doing well. We write in response to the discovery issues raised in your letter. Our responses are without waiver of or prejudice to raising any timeliness issues with the Court in the event that becomes necessary.

***Redacted rosters and invitation lists for spring training, extended spring training, instructional league.*** The Defendant Clubs agree to unredact minor league players' names that had been previously redacted on rosters and invitation lists that were previously produced for spring training, extended spring training and instructional league, respectively, that are applicable to the Arizona and Florida Classes and/or the FLSA Collective.

The Defendant Clubs will also conduct a good-faith, reasonable search for rosters and invitation lists for minor league players for spring training, extended spring training and instructional league, respectively, from the period of the close of fact discovery on June 13, 2016 through the present.[1]

***California League Game Schedules***. We looked into your request for the production of California League game schedules for the 2010 Rancho Cucamonga Quakes and the 2011 Inland Empire 66ers. Those schedules have already been produced. (*See* LAA0024650-53 and 24612-615.) In addition, the Defendant Clubs with California League affiliates from 2017 through

---

[1] The Clubs' agreement to produce certain documents "through the present" is without waiver of or prejudice to any argument that Plaintiffs do not have viable claims under federal and/or certain state laws in certain of those years.

**Proskauer»**

Garrett Broshuis, Esq.
November 9, 2020
Page 2

2019 will conduct a good-faith, reasonable search for California League affiliate game schedules for the 2017 through 2019 championship seasons.[2]

***eBis and Payroll Data***.  As indicated in our April 21, 2017 letter, Defendants agree to produce a key, reflecting the names and eBis numbers of the FLSA collective and putative class members for purposes of de-anonymizing the eBis and payroll data Defendants produced.

In addition, the Defendant Clubs agree to supplement their payroll productions for the FLSA collective and putative class members from the date after each Club's payroll data was previously produced through the present.  MLB also agrees to supplement its production of the eBis transaction histories for the period of September 1, 2015 through the present for FLSA collective and putative class members.

***Seasonal Amusement or Recreational Establishment Exemption***.  As reflected in the parties' extensive prior correspondence concerning discovery related to the seasonal amusement or recreational establishment exemption (including but not limited to Defendants' letters dated December 22, and 31, 2015; May 31, 2016; June 13, 2016; and April 21, 2017), Plaintiffs have improperly characterized the Clubs' productions related to the exemption.

Plaintiffs baldly claim, without any supporting legal authority, that production of information related to the "receipts" prong should "not be limited to just the spring training sites" because "[t]he identification of the appropriate establishment for purposes of this exemption remains in dispute."  It is unclear what additional "gross receipts" information Plaintiffs seek and as to what "establishment."  In any event, "gross receipts" information related to "establishments" other than the Clubs' Arizona or Florida training facilities have no bearing on the "identification of the appropriate establishment for purposes of this exemption."

As we have stated on numerous occasions, the Clubs intend to rely upon the "receipts" prong only as to the Club training facilities in Arizona and Florida, respectively.  As we have stated previously, in the event the Court defines the "establishment" more broadly than those facilties, Defendants will not invoke the "receipts" prong of the exemption.

Plaintiffs' request for underlying documents supporting the "receipts" prong and Plaintiffs' assertion that "[i]nterrogatory answers alone will not suffice" ignores the fact that in Defendants' prior correspondence, dated April 21, 2017, the Clubs stated that they would undertake a good-faith, reasonable search for the underlying documents used to calculate the "gross receipts" summarized in the Defendant Clubs' interrogatory answers and in the dismissed Clubs' declarations as to the relevant establishments.  The Clubs agree to produce such documents with the "Confidential Restricted – Attorneys' Eyes Only" designation pursuant to the amended stipulation for confidentiality.  (*See* Dkt. 637.)  The Clubs also agree to supplement their

---

[2] The 2020 California League championship season was not played.

**Proskauer»**

Garrett Broshuis, Esq.
November 9, 2020
Page 3

production of "gross receipts" (in summary form as well as the underlying documents per the above) to account for any additional years since the close of fact discovery on June 13, 2016 for which the defense will apply.

In addition, as Defendants have stated previously, to the extent any documents concerning activities that occurred at the "establishments" were in Defendants' possession, custody or control and uncovered during hard copy and ESI production, they have been produced. Defendants also note that the topic of activities occurring at each "establishment" was the subject of Rule 30(b)(6) deposition testimony from the Clubs (*i.e.,* Topic 28). Defendants will endeavor to supplement their productions during the relevant time period and conduct a good-faith reasonable search for responsive documents from the close of fact discovery on June 13, 2016 through the present.

Thus, we believe any purported issues related to the Clubs' productions concerning the seasonal amusement or recreational establishment exemption have been resolved.

***Supplementing Production of Other Documents.*** Defendants agree to produce the following hard-copy documents from the close of fact discovery on June 13, 2016 through the present, to the extent they can be located in Defendants' possession, custody and control following a good-faith reasonable search:

- Daily schedules and itineraries for California League affiliates, spring training, extended spring training, and instructional league;

- Major League Rules, Major League Constitution, the Professional Baseball Agreement, and the Basic Agreement, to the extent any supplemental versions of these documents exist that were not already produced;

- Player guides or handbooks applicable to minor league players; and

- Policies and procedures that concern the discipline and behavior of minor league players, such as drug, tobacco, on-field behavior policies, social media policies, and other disciplinary policies.

Defendants object to Plaintiffs' requests that MLB and the Defendant Clubs supplement their productions from the close of fact discovery on June 13, 2016 through the present with "documents and other communications between MLB and its 30 franchises or between MLB and minor leaguers concerning minor league compensation or the minor league UPC (including the suspension of the UPC in 2020)," "other memos or communications from MLB to minor leaguers," and "documents sufficient to show the types of materials collected in MLB's Draft Prospect Link." Plaintiffs' supplemental requests are inappropriate after the close of fact discovery, vague and ambiguous, overbroad and unduly burdensome, and not proportional to the needs of the case in light of the documents Defendants have already produced and have already

**Proskauer»**

Garrett Broshuis, Esq.
November 9, 2020
Page 4

agreed to supplement, including but not limited to payroll records, eBis transaction histories, player guides, handbooks, and the Major League Rules.

Finally, Defendants object to Plaintiffs' request for "policies and procedures for the Rule 4 draft and for the signing of international players not subject to the Rule 4 draft" on grounds that the request is inappropriate after the close of fact discovery, overbroad, vague and ambiguous, and not relevant to the FLSA collective and putative class members' claims. Moreover, the information Plaintiffs seek is largely encompassed by the Major League Rules and policies Defendants have already produced.

For the categories of hard-copy documents to which Defendants have objected above, subject to and without waiver of Defendants' objections, Defendants request that Plaintiffs articulate what specific additional documents they seek and the need for those documents in light of the voluminous documents Defendants have already produced in this action.

*Answers to Interrogatories.* Defendants will identify the documents by bates number that were relied upon pursuant to Federal Rule of Civil Procedure 33(d) in response to Interrogatories 2-4, 6, 8-10, 12 and 14-20. Notwithstanding the foregoing, Defendants reserve all rights to rely on any other documents produced, documents that will be produced, as well as deposition testimony in response to the Interrogatories. Defendants will also remove any redactions of minor league players' names on such documents (if any), and undertake a good-faith, reasonable search to determine whether any responsive information was inadvertently redacted on such documents.

Defendants also agree to supplement their answers to Interrogatories 2 and 6 with additional information since Defendants initially served their most recent Interrogatory Answers, subject to and without waiving Defendants' objections to Plaintiffs' Interrogatories.

*Requests for Admission*. Defendants disagree with Plaintiffs' objections to Defendants' answers to the Second Set of Requests for Admissions ("RFAs"). As we have stated previously, the Court permitted Plaintiffs – based on Plaintiffs' representations to the Court that they needed additional time to serve RFAs related to documents produced during each Defendant's ESI production – to serve RFAs after the close of fact discovery for the limited purpose of determining whether those documents satisfied the requirements for a business record under the Federal Rules of Evidence. (*See* Dkt. 672 at 33-34; *see also* Dkt. 681 (the parties' joint case management statement submitted to the Court on June 30, 2016, which stated that Defendants would agree to accept service of "requests for admission related to establishing the *authenticity* of documents produced as part of *Defendants' ESI production as business records*" after the close of fact discovery; emphasis added).) Plaintiffs' RFAs were overbroad to the extent they went beyond the scope of that limited purpose, and to the extent they sought admissions concerning hard copy documents produced prior to each Defendant's ESI production; indeed, Plaintiffs had ample opportunity during fact discovery to serve RFAs regarding the hard copy documents Defendants produced.

**Proskauer»**

Garrett Broshuis, Esq.
November 9, 2020
Page 5

Plaintiffs' demands that Defendants substantiate their bases for denials in response to Plaintiffs' requests are improper in light of Local Civil Rule 36-2. In the interest of resolving this dispute, however, and without waiver of or prejudice to Defendants' position that, among other things, Plaintiffs' requests exceeded the scope for which the Court permitted Plaintiffs to serve RFAs after the close of fact discovery, Defendants will reconsider their timeliness objections, provided that Plaintiffs narrow the universe of documents that were identified for purposes of Plaintiffs' RFAs which Defendants produced as part of their hard-copy document productions—indeed, more than one-half of the more than 3,400 documents Plaintiffs identified were produced in Defendants' hard copy productions, many months before the close of fact discovery on June 13, 2016.

*Redactions.* As we have stated previously, Defendants disagree with Plaintiffs' untimely objections to Defendants' redactions, and reiterate that Defendants' redactions were entirely consistent with the parties' heavily-negotiated ESI Protocol and in light of the confidentiality issues prevalent under California law. (*See, e.g.,* Dkt. 310 at 9 ("Documents shall be redacted for privilege and non-privileged information pertaining to an individual that, if disclosed, could cause harm, embarrassment, inconvenience, or unfairness to that individual (e.g., social security number, credit card number, medical history)."; Dkt. 310 at 10, Section V.A. ("Nothing in this Protocol shall be interpreted to require the disclosure of…*irrelevant* information…"); *see also* Dkt. 310 at 1, Section I.A.1, 3, Section I.F.8).)

Nonetheless, in your letter, you asked that "Defendants review their redactions to determine whether documents were wrongly redacted for relevance." Please be assured that Defendants have been reviewing and will continue to review the document productions to determine whether any responsive documents or information have been inadvertently redacted. Defendants agree to supplement their productions if they discover that responsive material was inadvertently redacted, and expect Plaintiffs to do the same, as they have indicated.

*Dismissed MLB Clubs*. The dismissed Clubs agree to supplement their document productions and undertake a good-faith reasonable search for rosters, report dates, invitation lists and game schedules for spring training, extended spring training and instructional league from February 2009 through the present for Clubs with Florida training facilities and from February 2011 through the present for Clubs with Arizona training facilities, as well as produce payroll data with respect to the FLSA collective and putative class members (which may be determined after the opt-out period has closed) during the relevant limitations period.

However, the dismissed Clubs object to producing daily schedules and itineraries for the training periods,[3] minor league player guides and handbooks because Plaintiffs' requests are overbroad, unduly burdensome and not proportional to the needs of the case, particularly for the non-parties. The dismissed Clubs also object to appearing for corporate representative depositions because the

---

[3] None of the dismissed Clubs have had California League affiliates during the relevant limitations period, and thus Plaintiffs' request for documents reflecting schedules or itineraries for the California League is misplaced.

**Proskauer»**

Garrett Broshuis, Esq.
November 9, 2020
Page 6

significant burden attendant to the non-parties, particularly during the COVID-19 pandemic, vastly outweighs whatever minimal relevance would be obtained by the deposition testimony Plaintiffs seek.[4] The dismissed Clubs are willing to discuss ways in which they can provide documents and information in lieu of live deposition testimony to resolve this issue and avoid motion practice in multiple jurisdictions.

*   *   *   *   *

Defendants reserve all rights to request written discovery, document production and depositions regarding class members after the opt-out period has closed and as to the intervenor plaintiffs (assuming the intervenor plaintiffs intend to remain part of this action) based on the claims the intervenor plaintiffs intend to assert. Defendants also intend to address under separate cover the deficiencies in the Named Plaintiffs' and Opt-In Plaintiffs' document productions and discovery responses, and identification of discovery that the Named Plaintiffs and Opt-In Plaintiffs must supplement from the close of fact discovery on June 13, 2016 through the present.

Sincerely,

*/s/ Elise M. Bloom*
Elise M. Bloom

cc:   Adam M. Lupion, Esq.
      Rachel S. Philion, Esq.
      Joshua S. Fox, Esq.
      Noa M. Baddish, Esq.
      Bobby Pouya, Esq.
      Daniel L. Warshaw, Esq.
      Cliff Pearson, Esq.
      Robert King, Esq.
      Jamie Boyer, Esq.

---

[4] Notwithstanding the foregoing, in the event the depositions proceed, the topics the parties conditionally agreed to limit deposition testimony in 2016 (prior to the Court's July 21, 2016 class and collective certification rulings) are overbroad to the extent the topics do not relate to spring training, extended spring training and instructional league of the dismissed Clubs during the relevant limitations period (*see* Topics 7, 8, 9, 10, and 14).