STEPHEN M. TILLERY *(pro hac vice)*
  stillery@koreintillery.com
GARRETT R. BROSHUIS (Bar No. 329924)
  gbroshuis@koreintillery.com
MARC WALLENSTEIN *(pro hac vice)*
  mwallenstein@koreintillery.com
DIANE MOORE (Bar No. 214903)
  dmoore@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone:  (314) 241-4844
Facsimile: (314) 241-3525


CLIFFORD H. PEARSON (Bar No. 108523)
  cpearson@pswlaw.com
DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
BOBBY POUYA (Bar No. 245527)
  bpouya@pswlaw.com
THOMAS J. NOLAN (Bar No. 66992)
  tnolan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

BENJAMIN E. SHIFTAN (Bar No. 265767)
  bshiftan@pswlaw.com
JILL M. MANNING (Bar No. 178849)
  jmanning@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
350 Sansome Street, Suite 680
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

Plaintiffs' Co-Lead Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON SENNE, et al., Individually and on Behalf of All Those Similarly Situated;<br><br>Plaintiffs,<br><br>vs.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL; et al.;<br><br>Defendants. | CASE NO. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' TRIAL PLAN**<br>Courtroom: F, 15th Floor<br>Judge: Honorable Joseph C. Spero |

In its November 17, 2020 Order (ECF No. 843), the Court directed Plaintiffs to file a trial plan within two weeks of the Court's summary judgment decision. In accordance with that directive, Plaintiffs' trial plan is as follows.[1]

I. **THE ISSUES THAT REMAIN TO BE TRIED FOR THE CLASSES AND COLLECTIVE.**

Two recent orders from the Court have significantly reduced the number of issues to be resolved at the June 1, 2022 trial. First, on February 11, 2022, the Court bifurcated Plaintiffs' individual claims from the class and collective claims for purposes of pretrial matters and trial. ECF No. 1047. The June 1 trial will focus solely on the class and collective claims, while the individual claims will be tried at a later date. This trial plan therefore focuses on the class and collective claims that are the subject of the June 1 trial.[2]

Second, the Court's summary judgment order (ECF No. 1071) resolved key liability issues and most of Defendants' defenses. The Court held that players are "employees," that they perform at least some "work," and that MLB jointly employs players. *See id.* Liability has been established for the Arizona Class: "[T]he Court concludes that Plaintiffs are entitled to summary judgment on their claim for violation of Arizona's minimum wage law and therefore are liable for treble the amount of unpaid

---

[1] This trial plan presents a roadmap of Plaintiffs' current plan for issues that are the focus of the trial, and it is not intended to limit or change the scope of the trial. Plaintiffs reserve the right to present additional or different evidence or arguments during the course of the trial as permitted by law.

[2] There are three Rule 23(b)(3) classes, an FLSA collective, and a (b)(2) class. In its summary judgment order, the Court summarized the classes as follows: "The (b)(2) class and the Arizona and Florida (b)(3) classes assert claims under Arizona and Florida law concerning the work that minor leaguers perform during spring training, extended spring training, and instructional leagues in those two states. The claims of the (b)(2) class also cover work performed during the Championship Season in Arizona and Florida. Because Arizona and Florida do not have overtime laws, the claims asserted by these classes only involve alleged minimum wage violations and derivative claims. The California (b)(3) class asserts claims under California law concerning the work that minor leaguers perform during the regular Championship Season in the California League. The claims asserted by this class involve both minimum wage and overtime violations. It also asserts derivative claims under California's Labor Code, such as waiting time penalties (§§ 201-203) and wage statement penalties (§ 226)." ECF No. 1071 at 8. The FLSA collective covers "the same scope of work as is captured in the Rule 23(b)(3) classes and include both minimum wage and overtime claims under the FLSA." *Id.*

wages, attorneys' fees and costs as to that claim." *Id.* at 141. The jury is simply left to determine the amount of damages and penalties owed. For the California Class, the Court has ruled in favor of Plaintiffs on the threshold liability issues and on the wage statement claims. All that remains is a determination of hours worked and how much in damages and penalties are owed. For the Florida Class and the FLSA Collective, Defendants' seasonal and amusement defense, 29 U.S.C. § 213(a)(3), remains to be tried, along with the amount of damages.

The (b)(3) claims and FLSA Collective claims are summarized as follows:

|       | Training Seasons | Championship Season | Minimum Wage | Overtime | Other Statutory Violations | Statutory Liquidated Damages | Seasonal and Amusement Defense? |
|-------|------------------|---------------------|--------------|----------|----------------------------|-------------------------------|----------------------------------|
| AZ    | Yes              | No                  | Yes          | No       | Recordkeeping (§23-364)    | Yes (treble damages)          | No                               |
| CA    | No               | Yes                 | Yes          | Yes      | Waiting Time (§201, 202 and 203); Wage Statement (§226) | Yes (double damages on minimum wage claims) | No |
| FL    | Yes              | No                  | Yes          | No       | No                         | Yes (double damages)          | Yes                              |
| FLSA  | Yes              | No                  | Yes          | Yes      | Recordkeeping (29 U.S.C. § 211(c)) | Yes (double damages)   | Yes                              |

## II. PLAN FOR TRYING THE CLASS AND COLLECTIVE CLAIMS.

For the class and collective claims, the following are issues for the jury to decide:

- Whether Defendants' conduct was willful;
- The amount of work performed by class members, and the resulting damages for the minimum wage violations in all Classes and the FLSA Collective, and overtime violations for the California Class and FLSA Collective;
- Whether Defendants are entitled to any wage credits;
- Arizona recordkeeping penalties under A.R.S. § 23-364;

- Whether, for the Florida Class and the FLSA Collective, Defendants' seasonal and amusement exemption (29 U.S.C. § 213(a)(3)) bars any claims.

Plaintiffs propose that the Court will decide the following issues for the class and collective claims:

- Liquidated damages, prejudgment and post-judgment interest, attorneys' fees and costs as permitted by law for all Classes and the Collective;
- An updated amount of wage statement penalties under California Labor Code § 226 to take into account the 2021 California League season (the Court already awarded these penalties through 2020).
- Waiting time penalties under California Labor Code § 203.
- What injunctive or declaratory relief to award to the (b)(2) class after the jury reaches its verdict.
- The penalties to award under California's Private Attorneys General Act for Defendants' violations of Labor Code §§ 201-204, 208, 226, 510, 558, 1194, and 1197.

Plaintiffs' case-in-chief will focus on the issues that will be tried to the jury for which Plaintiffs have the burden of proof: the amount of work performed by players, and the minimum wage violations, overtime violations, and penalties that result.

The evidence of hours worked will match the legal principles set forth by the Ninth Circuit in this case. As the Ninth Circuit held, the continuous workday rule eliminates any need for an activity-by-activity tracing of the workday because the workday includes all time between the beginning and end of the workday "whether or not the employee actually engages in work throughout that entire period." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 941 (9th Cir. 2019). The Ninth Circuit further explained that under the "suffer or permit" standard of hours worked, there are two possible ways for the workday to begin. If players "were required to report" at a certain time, then the workday would begin. *Id.* at 943. Or if players "arrived of their own volition but engaged in work activities," then the workday would begin. *Id.* at 943-44. Either way, "the continuous workday doctrine eliminates the need for plaintiffs to prove which activities they engaged in throughout the day." *Id.* at 944. And the Ninth Circuit noted the possibility that the jury could decide that activities like early "hitting

practice with coaches" or "supervised weightlifting" started the workday. *Id.* at 944 n.24. The Ninth Circuit approved of Plaintiffs' plan to use representative evidence and averages to prove these matters for the Classes and Collective. *Id.* at 943-47.

Because Defendants did not keep records of the hours worked by a particular player on a given day, the estimate of hours worked need not be precise. "Defendants should not 'be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [they] kept records in accordance with the [statutory] requirements,' even if their 'lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work.'" *Id.* at 944 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).

Plaintiffs will offer multiple layers of evidence to meet their burden. Witnesses, including minor league players and their supervisors, will provide testimony regarding the work performed during the work periods at issue. Class representatives will confirm what is commonly known in the industry: players work long hours during the work periods at issue, quite often without pay. Such testimony from the named Plaintiffs will be the starting point of evidence of work routines.

Testimony from Defendants' own witnesses will also be presented; indeed, many of those witnesses already confirmed that there is a core work routine in each of the work periods at issue. *See* Kriegler Supp. Rep. at Exs. 10A-10D, ECF No. 984-2 (summarizing testimony on work routines from Defendant witnesses). Some of that testimony will be presented through deposition designations, and some of it will be presented live. Plaintiffs anticipate that certain former minor league coaches and other personnel will willingly testify live at trial, and Plaintiffs anticipate calling other coaches and supervisors by trial subpoena.

Another layer of evidence will be presented through Plaintiffs' experts. Plaintiffs' survey expert, Dr. J. Michael Dennis, collected responses from 720 Minor Leaguers. ECF No. 782 at 6. The survey collected data for each type of season, for home versus away game days, and for game days versus non-game days during the training seasons. Plaintiffs' expert statistician, Dr. Brian Kriegler, then created a model of hours worked by combining the survey evidence with several other types of evidence, including game schedules (showing when games took place and the type of game that took

1  place), eBIS data and rosters, travel data, and game lengths. The resulting model shows the hours
2  worked by players for every type of workday at issue.
3        Plaintiffs will explain to the jury that when computing hours worked and the resulting damages,
4  Dr. Kriegler used two conservative percentiles of the survey data: the 10th and 25th percentiles. He
5  validated his use of those percentiles by comparing them to data drawn from another layer of
6  evidence—daily itineraries showing the work that took place on a given day. Dr. Kriegler analyzed
7  over 1,600 daily itineraries and coded the first required activity performed by any player according to
8  the itinerary and the first required activity performed by *every* player according to the itinerary. *See*
9  Kriegler Supp. Rep. at 50-53, ECF No. 984-2. The latter evinced the latest possible start of the
10 workday for *all* players on a given day, while the former evinced the time by which at least some
11 players began work on a given day according to an itinerary. Although the daily itineraries do not
12 include all work routinely performed by players,[3] the data drawn from them matched the percentiles
13 used by Dr. Kriegler. The average latest start time from the itineraries matched the survey data's 10th
14 percentile, while the average earlier start times from the itineraries matched the survey data's 25th
15 percentile. Dr. Kriegler further supports his methodology with analysis of other evidence in the
16 record, such as an examination of the deposition testimony.
17       In addition to Dr. Kriegler's summary of his daily itinerary analysis, actual daily itineraries will
18 be submitted into evidence. Defendants' own witnesses have already confirmed that they could think
19 of no better document to show what took place on a given day. Witnesses will further confirm that
20 the events on the daily itineraries typically took place, and additional work typically occurred outside
21 the itineraries as well. Linked together, the itineraries, testimony, and expert evidence will be weaved
22 into a powerful rope of proof at trial.
23       That proof of hours worked will be compared to Dr. Kriegler's analysis of payroll data, and
24 both liability and damages will be established. Indeed, Dr. Kriegler's analyses show rampant minimum

---

[3] Daily itineraries generally do not include time spent donning and doffing, performing strength training that is supervised by coaches, and certain types of early work that regularly take place (like early hitting in the cages with coaches or early bullpen work for pitchers). *See* Kriegler Supp. Rep. at 25 n.36, ECF No. 984-2.

wage violations in the Arizona and Florida Classes (during which wages were hardly ever paid), and show rampant minimum wage and overtime violations in the California Class. Through Dr. Kriegler, Plaintiffs will also present evidence of the number of Arizona recordkeeping penalties.

In their own case-in-chief, Defendants will have a chance to try to show that Plaintiffs' evidence of hours worked is not reasonable. And Defendants can present evidence going to the seasonal and amusement exemption recognized under Florida law and the FLSA. Because it is an affirmative defense, Defendants will have the burden of proving what the establishments are, that the establishments are "frequented" by the public for an "amusement" or "recreational" purpose, and that "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of the year." *See* ECF No. 1071 at 125-38 (Court's summary judgment order on the defense).[4] Defendants will also have the burden of showing that they are entitled to any wage credits from per diems that were purportedly provided during training seasons. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474 (11th Cir. 1982) (defendant has burden of showing wage credits). To do so, they must show that the per diems qualify as wages, and that they have provided sufficient evidence of the amount in per diems provided and any debits made from them.

Plaintiffs believe that Defendants will not meet their burden on some or all of these issues, and plan to move for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 as necessary. Plaintiffs also plan to reserve time for a rebuttal case to, if needed, present evidence rebutting the seasonal and amusement exemption and Defendants' wage credit defense.

After the jury enters its verdict, the Court will adjudicate the remaining issues: liquidated damages, prejudgment and post-judgment interest, attorneys' fees and costs permitted by law; the

---

[4] Of note, Defendants are not invoking the seven-month operational test for the purported establishments at issue in this initial trial, which will focus on the training seasons and the California League. *See* ECF No. 1071 at 126, 133 (explaining that Defendants rely on the seven-month operational test with respect to the minor league affiliates during the championship season, but are relying on the receipts test with respect to the training seasons); *see also id.* at 105 n.27 (granting summary judgment on the defense with respect to the California League because California law does not recognize the defense).

additional wage statement penalties under Labor Code § 226 owed for the 2021 California League season (the Court already awarded these penalties through 2020); the waiting time penalties under California Labor Code § 203; the injunctive or declaratory relief to award to the (b)(2) class; and the California PAGA penalties to award.

DATED: March 24, 2022                                  Respectfully submitted,

                       /s/ *Garrett R. Broshuis*

                     PEARSON, SIMON & WARSHAW LLP
                     CLIFFORD H. PEARSON
                     THOMAS J. NOLAN
                     DANIEL L. WARSHAW
                     BOBBY POUYA
                     BENJAMIN E. SHIFTAN
                     JILL M. MANNING

                     KOREIN TILLERY, LLC
                     STEPHEN M. TILLERY (pro hac vice)
                     GARRETT R. BROSHUIS
                     MARC WALLENSTEIN (pro hac vice)
                     DIANE MOORE

                     *Plaintiffs' Co-Lead Class Counsel*

# CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

                  /s/ *Garrett R. Broshuis*
                  Garrett R. Broshuis