STEPHEN M. TILLERY (*pro hac vice*)
  stillery@koreintillery.com
GARRETT R. BROSHUIS (Bar No. 329924)(*pro hac vice*)
  gbroshuis@koreintillery.com
MARC WALLENSTEIN (*pro hac vice*)
  mwallenstein@koreintillery.com
DIANE MOORE (Bar No. 214903)
  dmoore@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone:  (314) 241-4844
Facsimile: (314) 241-3525


CLIFFORD H. PEARSON (Bar No. 108523)
  cpearson@pswlaw.com
DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pswlaw.com
BOBBY POUYA (Bar No. 245527)          BENJAMIN E. SHIFTAN (Bar No. 26576)
  bpouya@pswlaw.com                     bshiftan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**      **PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400     350 Sansome Street, Suite 680
Sherman Oaks, CA 91403                 San Francisco, CA 94104
Telephone: (818) 788-8300              Telephone: (415) 433-9000
Facsimile:  (818) 788-8104             Facsimile: (415) 433-9008


Plaintiffs' Co-Lead Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON SENNE, et al., Individually and on Behalf of All Those Similarly Situated;<br><br>Plaintiffs,<br><br>vs.<br><br>OFFICE OF THE COMMISSIONER OF BASEBALL, an unincorporated association doing business as MAJOR LEAGUE BASEBALL; et al.;<br><br>Defendants. | CASE NO. 3:14-cv-00608-JCS (consolidated with 3:14-cv-03289-JCS)<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing date: Aug. 19, 2022<br>Hearing Time: 2:00 p.m.<br>Courtroom: F, 15th Floor<br>Judge: Honorable Joseph C. Spero |

## NOTICE OF MOTION AND MOTION

Please take notice that Plaintiffs, on behalf of themselves, the certified classes, and the FLSA collective, will and hereby do move for preliminary approval of the settlement reached in this case. Plaintiffs request that this Motion be heard on August 19, 2022 at 2:00 p.m., with or without oral argument at the Court's discretion, (L.R. 7-1(b)), in Courtroom F, 15th Floor of the U.S. District Court for the Northern District of California, San Francisco Division, before the Honorable Joseph C. Spero.

This Motion is made pursuant to Federal Rule of Civil Procedure 23(e). This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities the Declaration of Garrett Broshuis ("Broshuis Decl."), the Declaration of Brian Kriegler ("Kriegler Decl."), the Declaration of Bobby Pouya ("Pouya Decl."), the Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl."), the records on file in this action, and upon additional argument as may be presented at or before the hearing on this Motion. The instant Motion is unopposed by Defendants.

## STATEMENT OF THE ISSUES TO BE DECIDED

Plaintiffs move the Court to:

- Preliminarily approve the proposed class action settlement embodied in the parties' Settlement Agreement, attached as Exhibit 1 to the Broshuis Decl.;

- Maintain the certification of the previously certified Rule 23(b)(3) classes. Plaintiffs ask that the Court consolidate the three current (b)(3) classes into a single (b)(3) class for settlement purposes (referred to hereafter as the "Rule 23(b)(3) Class"), and that the Court amend the deadline for membership in the class to allow membership through the date of preliminary approval;

**Motion for Preliminary Approval**

- Appoint the following Plaintiffs as class representatives of the Rule 23(b)(3) Class: Craig Bennigson, Daniel Britt, Matt Daly, Aaron Dott, Grant Duff, Matt Frevert, Lauren Gagnier, Jonathan Gaston, Nick Giarraputo, Brandon Henderson, Bryan Henry, Mitch Hilligoss, Ryan Hutson, Kyle Johnson, Jake Kahaulelio, Ryan Khoury, Ryan Kiel, Matt Lawson, Michael Liberto, Barret Loux, Aaron Meade, Justin Murray, Jeff Nadeau, Joseph Newby, Brett Newsome, Kyle Nicholson, Oliver Odle, Tim Pahuta, Dustin Pease, Brandon Pinckney, David Quinowksi, Gaspar Santiago, Cody Sedlock, Aaron Senne, Les Smith, Brad Stone, Kris Watts, Joel Weeks, and Kyle Woodruff;

- Re-appoint Korein Tillery, LLC and Pearson, Simon & Warshaw, LLP as Class Counsel;

- Maintain the certified status of the previously certified Rule 23(b)(2) class and the FLSA collective, *see* ECF Nos. 782, 946;

- Appoint JND Legal Administration as Class Administrator and order notice to the class in the form and manner requested by Plaintiffs;

- Preliminarily approve the allocation of $2,315,200 for class members' PAGA claims, 75% of which will go to the California Labor and Workforce Development Agency;

- Set a deadline of 60 days from the time notice is implemented for the notice campaign, the filing of objections to the settlement, the filing of requests for exclusion from the settlement, and set a schedule for the filing of Plaintiffs' petitions for attorneys' fees and costs and incentive awards, the filing of a motion for final approval of the settlement, and the hearing for the motion for final approval.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..................................................................................i

STATEMENT OF THE ISSUES TO BE DECIDED ........................................................i

TABLE OF AUTHORITIES.............................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY......................................3

SUMMARY OF THE PROPOSED SETTLEMENT ........................................................7

ARGUMENT.................................................................................................................... 12

    I.    All Considerations Weigh in Favor of Preliminary Approval. ........................... 13

        A.    The strength of the Plaintiffs' case and the risk, expense, and complexity of further litigation favor preliminary approval. ............................ 13

        B.    The relief provided by the settlement strongly favors preliminary approval. ................................................................................................ 14

        C.    The stage of proceedings and amount of discovery completed heavily favors preliminary approval. ......................................................... 16

        D.    The experience and views of counsel favor preliminary approval.................... 17

        E.    Government participant and reaction of class members are inapplicable.................................................................................................... 17

        F.    Other factors all weigh in favor of approval......................................... 18

    II.    The Court Should Maintain Certification of the Rule 23(b)(3) Class and Maintain Certification of the (b)(2) Class and FLSA Collective. .................................... 24

    III.    The Court Should Set a Schedule for Final Approval....................................... 24

CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
No. C-07-5944 JST, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016).......................................21

*Churchill Vill. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).................................................................................*passim*

*Frlekin v. Apple Inc.*,
No. C 13-03451 WHA, 2021 WL 6126961 (N.D. Cal. Dec. 28, 2021)............................15

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F.
App'x 452 (9th Cir. 2009) ............................................................................................22

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..........................22

*Johnson v. Serenity Transportation, Inc.*,
No. 15-CV-02004-JSC, 2021 WL 3081091 (N.D. Cal. July 21, 2021)........................ 1, 12

*Kim v. Allison*,
8 F.4th 1170 (9th Cir. 2021) ........................................................................................12

*Larsen v. Trader Joe's Co.*,
No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................21

*Low v. Trump Univ., LLC*,
881 F.3d 1111 (9th Cir. 2018)......................................................................................20

*Luz Bautista-Perez v. Juul Labs, Inc.*,
No. 20-CV-01613-HSG, 2022 WL 307942 (N.D. Cal. Feb. 2, 2022) ........................ 1, 12

*Magadia v. Wal-Mart Associates, Inc.*,
384 F.Supp.3d 1058 (N.D. Cal. 2019) .........................................................................15

*McMorrow v. Mondelez Int'l, Inc.*,
No. 17-CV-02327-BAS-JLB, 2022 WL 1056098 (S.D. Cal. Apr. 8, 2022) .....................21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)..................................................................................17

*Ridgeway v. Wal-Mart Stores Inc.*,
269 F. Supp. 3d 975 (N.D. Cal. 2017)..........................................................................23

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)......................................................................14, 17, 18, 19

*Sandoval Ortega v. Aho Enterprises, Inc.*,
    No. 19-CV-00404-DMR, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021)............... 12, 13, 16, 17, 23

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)..............................................................................12

*Talavera v. Sun-Maid Growers of California*,
    No. 115 Civ. 00842-DAD-SAB, 2020 WL 2195115 (E.D. Cal. May 6, 2020) ................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ........................22

*Toolajian v. Air Methods Corp.*,
    No. 18-CV-06722-AGT, 2020 WL 8674094 (N.D. Cal. Apr. 24, 2020)..........................15

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................22

*Villalpando v. Exel Direct Inc.*,
    Case No. 3:13-cv-03091-JCS (Dec. 9, 2016) ......................................................23

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)..............................................................................21

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................................19

**Statutory and Regulatory Authorities**

Cal. Lab. Code § 2699(e)(2) ....................................................................................15

California Private Attorney General Act ............................................................................7

Class Action Fairness Act of 2005, 28 U.S.C. § 1715.....................................................11

**Court Rules**

Federal Rule of Civil Procedure 23(a)............................................................................24

Federal Rule of Civil Procedure 23(b)(2)........................................................................16

Federal Rule of Civil Procedure 23(b)(3)........................................................................24

Federal Rule of Civil Procedure 23(c)(2)(B)...................................................................20

Federal Rule of Civil Procedure 23(e)............................................................................12

**Other Authorities**

4 Newberg on Class Actions § 13:44 (5th ed.) ...................................................................12, 19, 24, 25

5 Newberg on Class Actions § 17:6 (5th ed.)............................................................................22

Preliminary Fairness Review, Ann. Manual Complex Lit. § 21.632 (4th ed.).........................................12

**MEMORANDUM OF POINTS AND AUTHORITIES**

At the preliminary approval stage, a class "settlement need only be potentially fair." *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021). "Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez v. Juul Labs, Inc.*, No. 20-CV-01613-HSG, 2022 WL 307942, at *6 (N.D. Cal. Feb. 2, 2022).

This agreement easily meets that standard. After over eight years of hard-fought litigation, the parties have agreed to a settlement that provides tremendous benefits to the class. In the weeks leading up to trial, the parties and their experienced counsel engaged in round after round of mediation, spanning three full mediation days spread over approximately four weeks, with innumerable calls and back-and-forth communications in between. The mediation process was overseen by a respected professional mediator, and the parties also engaged in a settlement conference with a sitting United States District Judge of this Court. Given the risks of continued litigation, the settlement is fair and reasonable, both with respect to the significant financial benefits to the Class, and the historic prospective benefits to current and future minor league baseball players.

The financial benefit is apparent: a "Maximum Settlement Amount" of $185 million. None of that $185 million will revert back to Defendants. If, after deducting fees, costs, and paying class members, any money remains in the fund because some class members cannot be located or some checks remain uncashed, the remainder will be distributed pro rata to class members who cashed their initial checks. If at some point that process becomes economically infeasible, the remainder will be donated to a related charity under the doctrine of *cy pres*.

The prospective relief is just as important, as the settlement will spell the end of a contract clause that has been in place since the dawn of minor league baseball and that is at the heart of this case: Major League Baseball ("MLB") will rescind any contractual prohibitions against the MLB Clubs paying minor league players wages outside of the championship season. MLB will also issue a

**Motion for Preliminary Approval**

1   memorandum to the Clubs advising the Clubs that they must compensate minor league players in

2   compliance with wage-and-hour laws in effect in Arizona and Florida during spring training, extended

3   spring training, instructional leagues, and the championship season in those states, including any

4   minimum wage laws that apply. This is an historic outcome for current and future minor league

5   baseball players; it eliminates the main barrier towards ensuring that they are paid for the work that

6   they do.[1]

7       Class Counsel will file a motion seeking fees and reimbursement for costs at the appropriate

8   time. But for now the Court should be aware it is Class Counsel's intent to seek 30% of the common

9   fund for fees, and reimbursement of litigation costs in an amount not to exceed $5.5 million. A fee

10  award of 30% of the common fund is reasonable given the risk Class Counsel took in bringing this

11  novel wage-and-hour case, the effort they put into litigating the case for eight years through a lengthy

12  appeal and until the eve of trial, and the excellent result achieved. The reasonableness of Class

13  Counsel's anticipated fee request is supported not only by a lodestar cross-check but also by

14  comparison to other percentage-of-the-fund fee awards in the Ninth Circuit in similar cases.

15      The 45 named Plaintiffs, all of whom sat for depositions and were highly motivated and

16  actively involved in pursuing this litigation, will each seek a sensible incentive award. In light of the

17  services provided to the class and the reputational risks incurred, the 40 named Plaintiffs also serving

18  as class representatives will seek no more than $15,000 each. The other five named Plaintiffs who

19  ultimately did not serve as class representatives will seek no more than $7,500 each. Otherwise, the

20  named Plaintiffs are treated the same as all class members under the proposed settlement. Each class

21  member's individual recovery is calculated using an objective formula that accounts for the amount of

22  alleged work performed and the applicable state minimum wage hourly rates.

23  

24  

25  [1] The forward-looking injunctive relief in this case is only directed at MLB, not the individual Clubs. At the time of class certification and settlement, the class representative for the Rule 23(b)(2) class was employed by a Club that was previously dismissed from this lawsuit for lack of personal jurisdiction. The Court only certified the Rule 23(b)(2) class as to MLB—not the individual Clubs. Nothing in the settlement will require the payment of minimum wage or overtime where such payments are not required by applicable law.

26  

27  

28

The proposed manner of notice—via email and mail to class members using Defendants' database of minor league players' contact information—is slightly more robust than the method used for the last round of notice, and it will be effective under the circumstances. The form of notice, attached as an exhibit to the settlement agreement and the Proposed Order ("Proposed Notice"), is simple, easy to understand, and provides class members all they need to make an informed decision regarding participation in the settlement. It includes a summary of the litigation and the terms of the settlement, an explanation of the right to object or opt out, and sources to obtain further information regarding the litigation and the settlement. All of Rule 23's requirements are met.

The settlement of this novel case will provide relief to thousands of players. The Court should preliminarily approve it so that the next steps towards providing that relief can be taken.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court is intimately familiar with this litigation, but a brief summary follows. On February 2, 2014, Plaintiffs filed their original complaint in this Court. Though Plaintiffs subsequently amended the complaint many times, the fundamental claims remained the same. Plaintiffs, former and current minor league baseball players, alleged that Defendants failed to pay them minimum and overtime wages for the hours that they worked, seeking relief under the Fair Labor Standards Act ("FLSA") and the laws of eight states. Plaintiffs claimed that Defendants failed to pay minor leaguers during spring training, extended spring training, or instructional leagues, even though players are "employees" who "work" during those periods, and alleged various time- and record-keeping violations. Plaintiffs also alleged that while players were paid during the championship season, the wages sometimes fell below the minimum wage and overtime was never paid. Plaintiffs named as Defendants Major League Baseball ("MLB"), its 30 member Clubs, and the then-Commissioner (Bud Selig, who was later dismissed).

The Court (Seeborg, J.) consolidated this case with a related case (the "*Marti* action") and appointed Korein Tillery, LLC and Pearson, Simon & Warshaw, LLP to act as interim co-lead counsel. ECF No. 235. Eleven of the MLB Clubs moved to dismiss for lack of personal jurisdiction. All Defendants moved to transfer the case to the Middle District of Florida. On May 20, 2015, the

**Motion for Preliminary Approval**

1    Court denied the transfer motions, but granted dismissal of eight of the MLB Clubs (Atlanta,

2    Baltimore, Boston, Chicago White Sox, Cleveland, Philadelphia, Tampa Bay and Washington) for lack

3    of personal jurisdiction. ECF No. 379.

4           In the meantime, Defendants answered Plaintiffs' complaint, raising a number of defenses.

5    Defendants then moved to dismiss for failure to state a claim and lack of subject matter jurisdiction

6    on standing grounds. The Court denied the motion on July 13, 2015. ECF No. 420.

7           The parties then engaged in extensive fact discovery. The parties conducted 137 depositions,

8    served hundreds of sets of interrogatories and requests for production (totaling over 4,000 production

9    requests and over a thousand interrogatories), presented over a dozen discovery disputes to the Court,

10   and produced approximately 230,000 documents, spanning over a million pages. Broshuis Decl., ¶ 4.

11   While discovery remained ongoing, the parties briefed class certification—a battle that spanned many

12   years. The Court preliminarily certified an FLSA collective in October 2015 and ordered that notice

13   be sent to current and former minor league players via email with first-class mail follow-up. ECF No.

14   446. Around 2,300 players opted into the lawsuit.

15          In March 2016, Plaintiffs moved to certify Rule 23(b)(2) and (b)(3) classes under the laws of

16   eight states during Spring Training, Extended Spring Training, the Championship Season, the

17   Instructional Leagues and the off-season. Defendants opposed and moved to decertify the FLSA

18   collective. On July 21, 2016, this Court decertified the FLSA collective and denied Rule 23 class

19   certification for all claims. ECF No. 687.

20          Plaintiffs then narrowed the scope of their certification request—focusing on just the training

21   seasons and a single league during the championship season (the California League)—and moved for

22   reconsideration in September 2016, presenting a final survey of alleged hours worked by Dr. J.

23   Michael Dennis. Defendants opposed Plaintiffs' motion and moved to exclude Dr. Dennis's survey.

24   In March 2017, the Court recertified a narrowed FLSA collective and certified a California (b)(3) class

25   for the California League, but held that certification of Arizona and Florida (b)(3) classes and a (b)(2)

26   class was inappropriate based largely on choice-of-law concerns. ECF No. 782.

27

28

**Motion for Preliminary Approval**

The Ninth Circuit granted petitions for interlocutory cross-appeals and the District Court stayed proceedings. The cross-appeals were fully briefed, argued, and submitted on June 13, 2018. On August 16, 2019, the Ninth Circuit affirmed this Court's certification of the FLSA collective and California class and held that the Arizona and Florida (b)(3) classes, covering the training seasons, should have been certified as well. Defendants sought rehearing *en banc*, which was denied, and petitioned the U.S. Supreme Court for a writ of certiorari, which was also denied on October 5, 2020.

Plaintiffs moved to notify the certified classes of the pendency of this litigation. In January 2021, the Court approved the notice plan, and notice was provided to the classes in the court-approved form. In April 2021, Plaintiffs moved to certify a Rule 23(b)(2) class. The Court certified a (b)(2) class in July 2021, but limited it to activities in Florida and Arizona during training seasons and the championship season, and limiting its reach to MLB—not the other Defendants. ECF No. 946.[2]

---

[2] The current certified litigation classes are as follows:

California (b)(3) Class:
Any person who, while signed to a Minor League Uniform Player Contract, participated in the California League of Professional Baseball (the "California League") on or after February 7, 2010 for at least seven consecutive days, and had not signed a Major League Uniform Player Contract at any time before their time of participation in the California League.

Arizona (b)(3) Class:
Any person who, while signed to a Minor League Uniform Player Contract, participated in spring training, instructional leagues, or extended spring training in Arizona on or after February 7, 2011, and had not signed a Major League Uniform Player Contract before then.

Florida (b)(3) Class:
Any person who, while signed to a Minor League Uniform Player Contract, participated in spring training, instructional leagues, or extended spring training in Florida on or after February 7, 2009, and had not signed a Major League Uniform Player Contract before then.

The (b)(2) Class:
Any person who is or will in the future be signed to a Minor League Uniform Player Contract and participates in spring training, extended spring training, the championship season, or instructional leagues in Florida or Arizona.

The FLSA Collective:
Any person who, while signed to a Minor League Uniform Player Contract, participated in the California League, or in spring training, instructional leagues, or extended spring training, on or after February 7, 2011, and who had not signed a Major League Uniform Player Contract before then, and filed a timely consent to join the Action.

NO. 3:14-cv-00608-JCS

**Motion for Preliminary Approval**

1    During this time, the parties were also working with their experts to produce reports. A total

2    of six experts provided formal reports, and additional experts provided declarations during class

3    certification briefing. After experts were deposed, both parties filed 60-page summary judgment

4    motions raising numerous complex and often novel legal issues. Both parties also filed *Daubert*

5    motions aimed at the other side's experts. The Court heard argument on the parties' motions during a

6    two-day hearing and requested supplemental briefing on Defendants' seasonal and amusement or

7    recreational establishment exemption. On March 10, 2022, the Court issued a 181-page ruling on the

8    parties' respective motions. ECF No. 1063.

9    The Court's ruling narrowed the issues for trial, but it did not finally dispose of the case. Many

10   issues remained, including: whether Defendants were liable for minimum wage violations under the

11   FLSA, California, and Florida law; whether Defendants were liable for overtime violations under the

12   FLSA and California law; the amount of hours worked under these laws; whether the seasonal and

13   amusement or recreational establishment exemption acted as a defense to claims brought under the

14   FLSA and Florida law (and other laws for Plaintiffs' individual claims); whether Defendants should be

15   given a wage credit for per diem payments; whether Defendants' violations were willful; the amount

16   Defendants owed for unpaid wages, statutory liquidated damages, interest, attorney's fees and costs,

17   and at least four different types of possible civil penalties under Arizona and California law. *See* ECF

18   No. 1101 (proposed pretrial order).

19   The parties prepared for a June 1, 2022 trial, drafting trial plans, trial briefs, motions *in limine*,

20   exhibit lists, dueling sets of jury instructions and verdict forms, and a proposed juror questionnaire

21   and additional voir dire questions. Behind the scenes, Plaintiffs' counsel worked tirelessly towards trial

22   success, preparing fact and expert witnesses to testify, crafting an opening statement and outlines for

23   direct and cross-examination, and conducting mock exercises. *See* Broshuis Decl. at ¶ 7.

24   At the same time, the parties engaged in mediation, facilitated by renowned dispute resolution

25   specialist David Geronemus of JAMS. *Id.*, ¶ 8. Mr. Geronemus is a former Supreme Court clerk with

26   decades of mediation experience. *Id.* The mediation process lasted a month, with three full days of

27   formal sessions with Mr. Geronemus, one of which lasted more than 15 hours, along with countless

28

1   emails and calls. *Id.* The parties also participated in a settlement conference with U.S. District Court

2   Judge Jacqueline Scott Corley. *Id.* The mediation and settlement discussions were long and hard-

3   fought, and they resulted in the Settlement Agreement now before the Court.

4   **SUMMARY OF THE PROPOSED SETTLEMENT**

5   ***The Classes to Be Settled***. The proposed settlement contemplates the Court maintaining

6   certification of the Rule 23(b)(3) classes, but consolidating them into the following Rule 23(b)(3)

7   Class:

8   > All persons who: while signed to a Minor League Uniform Player Contract, participated
    > in the California League for at least seven days on or after February 7, 2010 through the
    > date of preliminary approval, participated in spring training, instructional leagues, or
9   > extended spring training in Florida on or after February 7, 2009 through the date of
    > preliminary approval, or participated in spring training, instructional leagues, or extended
10  > spring training in Arizona on or after February 7, 2011 through the date of preliminary
    > approval. Provided, however, that participation in the activities set forth above must have
11  > occurred prior to that person's signing a Major League Uniform Player Contract.

12  SA ¶ 1(nn). This proposed Class simply combines the (b)(3) classes already certified and extends them

13  through the date of preliminary approval. The Settlement Agreement also calls for the Court to

14  maintain the certification of the previously certified (b)(2) class and FLSA collective. SA ¶ 1(s & mm).

15  ***The Settlement Fund and Plan of Allocation***. Defendants have agreed to pay a "Maximum

16  Settlement Amount" of $185 million from which class members will be paid after deductions for

17  court-approved attorneys' fees, costs, incentive awards, and penalties under the California Private

18  Attorney General Act ("PAGA"). SA ¶ 1(x). If approved, and assuming the maximum off-the-top

19  deductions, the $185 million settlement fund will be allocated as follows: (a) an amount allocated for

20  payments to class members of $120,197,300; (b) $55,500,000 for Class Counsels' fees and up to

21  $5,500,000 for costs incurred; (c) an estimated amount of up to $450,000 to pay the costs of

22  settlement administration; (d) incentive awards for the class representatives of $637,500; (e) a

23  contingency fund of $400,000; and (f) a PAGA payment of $2,315,200. Kriegler Decl. at ¶ 5.

24  The amount of each class member's settlement payment will vary according to his length of

25  employment, the seasons during which he worked, and the state in which he worked, in order to

26  account for each applicable state's minimum hourly wage rate. Plaintiffs have asked their expert Dr.

27  Brian Kriegler to calculate individual settlement recovery amounts for each class member using a

28

7

methodology substantially similar to that used to calculate damages for trial. Vastly simplified, Dr. Kriegler estimated the hours worked by each class member on a given workday. Dr. Kriegler then input various data (number of years employed, types of seasons played, state(s) in which the class member played, minimum wage rate, and wages paid during the work period (if any)) into the model to arrive at the amount of unpaid wages owed to each player. He also calculated penalties and liquidated damages owed. That general formula will be used to calculate settlement payment amounts for each class member as well. *See* Kriegler Decl. at ¶¶ 5-12; *see also* SA ¶ 16.

The proposed notice form explains the formula to class members. *See* Proposed Notice, at Ex. A to SA. Notices will be individualized so that each class member is informed of the work periods that records indicate that he attended, which will be used to calculate his individual settlement amount unless a class member shows that he worked in additional work periods. Proposed Notice at 1 and ¶ 13; SA ¶ 5. The Settlement Agreement provides that $400,000 be set aside as a "contingency fund" to correct any errors or omissions in the allocation process.

No claim form will be needed to receive the money owed. The default is to send checks to a class member's last known address. To streamline payments, class members will have the opportunity to select an electronic transfer, or to update their addresses. Proposed Notice at 1 and ¶ 13. It is the parties' desire to pay every class member what they are owed under the settlement. In the event certain class members cannot be paid (if, for example, they do not cash their checks), their allocated share will be paid *pro rata* to class members who did cash their checks. *See* SA at ¶ 13. If that process at some point becomes impracticable, the residue will go to a related charity under the doctrine of *cy pres*. The parties have selected Legal Aid at Work, a legal clinic with a workers' rights program, as the *cy pres* recipient. SA ¶ 1(3). Critically, not a penny of the $185 million fund will revert to Defendants.

**The Proposed Form and Manner of Notice.** Plaintiffs seek notice to be provided to the class in the form proposed. *See* Proposed Notice, at Ex. A to SA. Plaintiffs propose a method that is more robust than that used for the last round of notice, sent in 2021. That notice was sent via email to each class member's last known email address from Defendants' records, supplemented by notice by first-class mail for invalid or absent email addresses. ECF No. 867. For the settlement notice, the

1    administrator plans to send the notice via both mail and email to all class members with known email

2    and mailing addresses. *See* Intrepido-Bowden Decl. at ¶ 17. The settlement administrator will use

3    forwarding addresses and will perform standard skip-tracing to try to ascertain the class member's

4    current address. *See id.* at ¶ 19.

5        The form notice is written in plain and understandable language. It will be provided in both

6    English and Spanish. *Id.* at ¶ 17. It describes the litigation, the terms of the settlement, and each class

7    member's options under the proposed settlement. *See* Proposed Notice. The notice clearly explains

8    the opt-out rights and repercussions: anyone who timely submits an opt-out form will not be bound

9    by the judgment, will not be entitled to settlement benefits, and will be deemed to have never

10   participated in this litigation. *Id.* The notice also clearly explains class members' right to object to the

11   proposed settlement, their option to participate in the case through counsel of their choosing at their

12   own expense, and the dates for objecting or opting out. *Id.* It will advise them of the date the Court

13   sets for the final approval hearing and that the date is subject to change without further notice to the

14   class such that class members should check the Court's docket and/or the settlement website for

15   updates. *Id.* It advises class members who make a timely objection that they are welcome to attend to

16   make their voice heard. *Id.*

17       The form notice also provides contact information for Class Counsel should class members

18   have questions. It provides a link to a case website created by the settlement administrator where class

19   members can easily access the notice, motions for approval of settlement, Class Counsel's petition for

20   fees and costs and other important documents in the case. *Id.* The notice also provides instructions as

21   to how class members can access the case docket directly, either in person or via PACER. *Id.* Via the

22   website, class members will be able to view an estimate of their estimated settlement payment. *See*

23   Intrepido-Bowden Decl. at ¶ 25.

24       Class Counsel has worked to ensure that for the vast majority of work periods, no claim

25   procedure will be needed. Anyone included in the classes will be automatically allocated a share of the

26   settlement fund using Dr. Kriegler's model. Class members will be given the opportunity to contest

27   the employment facts that Dr. Kriegler used to calculate their individual settlement amount, *i.e.*, the

28

training seasons worked and the state(s) in which they worked. *See* Proposed Notice at ¶ 13. The default is to mail checks to the last known address—though class members can choose to receive payments electronically or update their addresses if desired. *Id.*

**The Releases**. In exchange for the benefits provided under the settlement, participating Rule 23(b)(3) class members agree to release MLB and the MLB Clubs[3] from:

> any and all claims pled, or which could have been pled, in the Second Consolidated Amended Complaint (the "SCAC") arising out of and/or based on the facts alleged in the SCAC, whether known or unknown, for any wage-and-hour claims based on the performance of services pursuant to a Minor League Uniform Player Contract. This release includes claims for wages, penalties, interest, attorneys' fees, restitution, and/or costs, and including, without limitation, claims for: unpaid minimum wages, unpaid overtime, failure to provide meal periods or unpaid meal period premiums, failure to provide rest periods or unpaid rest period premiums, untimely final wages, untimely wages during employment, non-compliant itemized wage statements, failure to maintain required payroll records, and unreimbursed business expenses under any state, territory, or local wage-and hour-law and/or common law on behalf of the Named Plaintiffs, Class Representatives, and Participating Class Members.

SA ¶ 10. FLSA Collective members will release "any and all claims pled or which could have been pled in the SCAC arising out of and/or based on the facts alleged in the SCAC, whether known or unknown, for any services rendered pursuant to a Minor League Uniform Player Contract, under the FLSA." *Id.* Rule 23(b)(2) class members will release "any wage-and-hour claims for injunctive and/or declaratory relief which were pled, or could have been pled, in the SCAC arising out of and/or based on the facts alleged in the SCAC, whether known or unknown, for any services rendered pursuant to a Minor League Uniform Player Contract." *Id.* The releases are limited to wage-and-hour claims and do not extend to unrelated claims, such as those for workers' compensation. The releases will extend through October 31, 2022. *Id.*

**Attorneys' Fees and Costs and Incentive Awards**. The Settlement Agreement allows Class Counsel to petition for up to one-third of the Maximum Settlement Amount as attorneys' fees, but, as discussed further below, Class Counsel intends to petition for fees of 30%, along with actual costs.

---

[3] Including their "present and former direct and indirect owners, parents, subsidiaries and affiliates, and each of their present and former officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives.

1   Broshuis Decl. at ¶ 15(c). Class Counsel plans to petition for reimbursement of up to $5,500,000 in

2   cost incurred. *Id.* at ¶ 15(d). Plaintiffs will petition for incentive awards of $15,000 for class

3   representatives and $7,500 for the other five named Plaintiffs who are not class representatives. *Id.* at

4   ¶ 15(b). If approved, the incentive awards will be in addition to any distribution that Plaintiffs are

5   otherwise entitled to under the settlement to reflect the time and effort that each put into representing

6   the classes, as well as the risk incurred by suing MLB and its member Clubs.

7          ***Settlement Administration Fees and Proposed Administrator***. Plaintiffs recommend the

8   Court appoint the professional class action administration firm of JND Legal Administration as the

9   "Settlement Administrator" to assist Class Counsel in effectuating the notice program and handling

10  claims administration. Class Counsel engaged in a robust vetting process before selecting JND. Class

11  Counsel requested bids from JND and two other well-recognized and notable class action

12  administration firms. Broshuis Decl. at ¶ 13. Counsel carefully assessed the bids received from all

13  three firms. In deciding which firm to endorse, Class Counsel considered not only each firm's

14  estimated cost, but also its staffing, years of experience, and expertise in administering class actions of

15  this size and nature. JND has estimated administration costs of $148,000, which in Class Counsel's

16  experience is reasonable and in line with administration costs in other class actions of this size and

17  nature.[4] *Id.* JND intends to work with Dr. Brian Kriegler (plaintiffs' statistician) to determine the

18  payment amounts; Dr. Kriegler estimates that his firm's costs will amount to $175,000. *Id.* at ¶ 15.

19  Plaintiffs request that $450,000 be set aside to pay these administrative costs. *See id.*; SA ¶ 14.

20         ***Class Action Fairness Act***. Finally, the Settlement Agreement states that Defendants will

21  comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

22

23

24

25

26  [4] The settlement administration estimate includes assumptions regarding the number of hours the
    Settlement Administrator is required to expend on tasks, *inter alia,* responding to class member

27  inquiries and tax reporting. The actual hours and in turn the true cost of settlement administration
    may vary.

28

**ARGUMENT**

Generally, "the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." 4 Newberg on Class Actions § 13:44 (5th ed.). In the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The settlement of class actions requires court approval. Fed. R. Civ. P. 23(e). Likewise, FLSA claims cannot be settled without the supervision of either the Secretary of Labor or a U.S. District Court. *Talavera v. Sun-Maid Growers of California*, No. 115 Civ.  00842-DAD-SAB, 2020 WL 2195115, at *5 (E.D. Cal. May 6, 2020).

At this initial stage, "the settlement need only be potentially fair." *Johnson*, 2021 WL 3081091, at *4. "Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval." *Luz Bautista-Perez*, 2022 WL 307942, at *6; *see also* Preliminary Fairness Review, Ann. Manual Complex Lit. § 21.632 (4th ed.). The Ninth Circuit's "*Churchill*" factors guide the analysis:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citing *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)). The Rule 23(e)(2) factors should also be considered to the extent they do not overlap with the *Churchill* factors, and this District's Procedural Guidance for Class Action Settlements may also be considered. *Sandoval Ortega v. Aho Enterprises, Inc.*, No. 19-CV-00404-DMR, 2021 WL 5584761, at *5 (N.D. Cal. Nov. 30, 2021). All factors support approval in this case.

**Motion for Preliminary Approval**

**I.    All Considerations Weigh in Favor of Preliminary Approval.**

   **A.  The strength of the Plaintiffs' case and the risk, expense, and complexity of further litigation favor preliminary approval.**

The first *Churchill* factors collectively "weigh in favor of approving settlement when the defendant has plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *See Sandoval*, 2021 WL 5584761 at *6. Although the Court resolved several issues in Plaintiffs' favor at summary judgment, numerous other important issues remained to be tried. Plaintiffs remain confident in their positions, but had Defendants prevailed on their seasonal and amusement or recreational establishment defense—one of the most hotly contested and complicated issues in the case given the unique facts of the minor league baseball system—all of the Florida and FLSA damages would have been erased, and current players in Florida would face dim prospects of being paid in the future. Defendants were also poised to launch a strenuous attack on Plaintiffs' damages model, aimed in particular at Plaintiffs' survey evidence. Plaintiffs do not believe those attacks would have been successful at trial, but acknowledge there was at least some risk that Defendants would prevail in some or all of their attacks on the damages model. If that had happened, the jury could have found that Plaintiffs had not proven any damages at all, or could have reduced the damages to a much lower amount than the current settlement figure. Defendants were also requesting a reduction in damages based on purported credits for per diems, bonuses, and tuition reimbursement, which could have further reduced recovery. Although Plaintiffs sought liquidated damages, that issue remained an open question under the "good faith" doctrine under some laws, as did the length of the statute of limitations under the "willfulness" doctrine.

All of this was to be determined in a complicated, seven-week trial involving 68 parties, and implicating multiple work periods, multiple state laws, and a convoluted "establishment" exemption. Even though Plaintiffs won several issues at summary judgment, Defendants had vowed to appeal, and that presents its own set of risks (and delay). Again, Plaintiffs remain confident in their positions and were willing to fight to assert them to the end, including on appeal. But many of the issues required a novel analysis of the law, so there was no guarantee of success on appeal. And even if

13                          NO. 3:14-cv-00608-JCS
**Motion for Preliminary Approval**

1    Plaintiffs succeeded on appeal, that would have amounted to a partial loss, because it would have

2    resulted in significant delay. The case's first appeal took three-and-a-half years. Given the need for

3    post-trial motions, along with the extensive record that would be presented on appeal and the

4    likelihood of review by the *en banc* Ninth Circuit (and possibly the Supreme Court), a second appeal

5    may have taken even longer. For a case already entering its ninth year, eliminating another three-to-

6    four-year delay is a significant benefit to the Class and avoids the unnecessary expenditure of judicial

7    resources.

8         Had the case proceeded to its ultimate end, Plaintiffs believe they would have prevailed. But

9    that does not mean there was no risk of failure. The remarkable terms of this settlement adequately

10   take that risk into account, without meaningfully diminishing the recovery that Plaintiffs believe they

11   would have achieved. The first three *Churchill* factors thus weigh in favor of approval.

12        **B.   The relief provided by the settlement strongly favors preliminary approval.**

13        When assessing the relief provided by the settlement, there is no "particular formula" to be

14   used. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Instead, the "court's

15   determination is nothing more than an amalgam of delicate balancing, gross approximations and

16   rough justice." *Id.*

17        Defendants have agreed to establish a fund of $185 million. Before summary judgment, the

18   total alleged damages for the certified classes (including, e.g., Arizona and California penalties, PAGA

19   penalties, and liquidated damages, and updated through present) amounted to approximately $496

20   million. Kriegler Decl. at ¶ 16. At summary judgment, the Court disagreed with Plaintiffs' method of

21   calculating Arizona penalties; while Plaintiffs planned to appeal that ruling, it reduced the damages

22   that the certified classes could have recovered at trial to around $371 million. *Id.* ¶ 17. Of that, the

23   total approximate amount of unpaid wages alleged in the certified classes (updated through present)

24   was around $135 million. Kriegler Decl. at ¶ 14. That means that the settlement fund amounts to

25   around 50% of the total post-summary-judgment amount recoverable at trial, and around 137% of the

26   alleged unpaid wages. *Id.* at ¶¶ 15, 17. While Plaintiffs sought penalties and liquidated damages, those

27   types of damages were subject to more defenses. Even after off-the-top deductions (like fees and

28

costs), the relief will be nearly 90% of the amount of the alleged unpaid wages for the classes. It will provide an anticipated average recovery of between $5,000 and $5,500. *Id.* at ¶¶ 18. That is a sizable amount considering that most players were only paid between $3,000 and $10,000 per year. Similar cases that have received court approval involve settlements that are only a fraction of the recovery in this case. *See, e.g., Frlekin v. Apple Inc.*, No. C 13-03451 WHA, 2021 WL 6126961, at *3 (N.D. Cal. Dec. 28, 2021) (approving settlement that awarded "20.2% of the maximum recovery"); *Toolajian v. Air Methods Corp.*, No. 18-CV-06722-AGT, 2020 WL 8674094, at *10 (N.D. Cal. Apr. 24, 2020) (approving settlement that awarded "approximately 18% of the total potential recovery").

That $185 million settlement fund is non-reversionary. All money will be distributed to class members after payment of attorneys' fees and costs. Further, Defendants have agreed to pay the employer portion of the employment taxes due. And as discussed above, the releases tied to the settlement payments will be limited to wage-and-hour claims and will cut off on October 31, 2022.

Each class member's individual recovery will be calculated via the same formula using data regarding their length of employment, seasons worked, states in which they worked, the applicable state minimum wage rate, the overtime rate (when applicable), and the amount of wages paid (if any), and by then determining the pro rata amount owed. Kriegler Decl. at ¶¶ 5-12. All class members are treated equitably under Dr. Kriegler's model, and no class members will unfairly benefit at the expense of others. Class members will be notified of the work periods that, according to Defendants' records, they worked and will be given the opportunity to correct any purported discrepancies. Class members will be provided an opportunity to update mailing addresses or to request an electronic payment, but no claim form is needed. Unless a class member instructs otherwise, checks will go out to the last known address.

A sufficient amount of the fund will be devoted to payment of PAGA penalties. The proposed Settlement calls for $2,315,200 as the PAGA allocation, which is more than 1% of the overall settlement amount. That is a fair and reasonable amount given the wide discretion the Court has to reduce an onerous penalty award. *See* Cal. Lab. Code § 2699(e)(2); *Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp.3d 1058, 1099-100 (N.D. Cal. 2019) (reducing PAGA penalty award).

As important as the monetary relief is, the prospective relief is just as significant. For as long as anyone in baseball can remember, MLB's Uniform Player Contract has prohibited the MLB Clubs from paying minor leaguers wages outside of the championship season. MLB has agreed to rescind that contract provision. MLB will also advise the MLB Clubs that they must compensate minor league players in compliance with wage-and-hour laws in effect in Arizona and Florida during spring training, extended spring training, instructional leagues, and the championship season in those states, including any minimum wage laws that apply.[5]

In short, there is no way to characterize this result as anything less than outstanding. This *Churchill* factor strongly weighs in favor of approval.

### C. The stage of proceedings and amount of discovery completed heavily favors preliminary approval.

"Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Sandoval*, 2021 WL 5584761 at *7 (internal citations omitted). To say that this case is at an advanced stage would be an understatement. The parties had fought vigorously for over eight years. Litigation classes had been certified after three rounds of briefing before this Court and after a lengthy appeal. The parties took 137 depositions over multiple years. Broshuis Decl. at ¶ 4. The parties served over 4,000 production requests and over a thousand interrogatories. *Id.* Over a million pages of documents had been reviewed. *Id.* Expert discovery had been completed. Hundreds of pages of dispositive and *Daubert* motions had been fully briefed, argued and decided. Pre-trial materials (*i.e.*, witness and exhibit lists, a trial plan and trial briefs, jury instructions and verdict forms, all of which were heavily disputed) had been filed. The parties were just a few weeks from the trial date when they came to an accord. On these facts, there can be no concern that Class Counsel settled too early in the case for a quick pay-out or that settlement

---

[5] As discussed above, the individual Clubs are not subject to forward-looking injunctive relief under Rule 23(b)(2) because they are not part of the (b)(2) class. That is why the injunctive relief is directed at MLB, not the individual Clubs. Further, nothing in the settlement will require the payment of minimum wage or overtime where such payments are not required by applicable law.

1   discussions were ill-informed. Class Counsel fought hard for many years at great cost in terms of both

2   time and resources and achieved an historic result for their clients. This *Churchill* factor weighs heavily

3   in favor of preliminarily approving the settlement.

4   **D.  The experience and views of counsel favor preliminary approval.**

5   "'Great weight' is accorded to the recommendation of counsel, who are most closely

6   acquainted with the facts of the underlying litigation." *Nat'l Rural Telecommunications Coop. v.*

7   *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Indeed, "[p]arties represented by competent

8   counsel are better positioned than courts to produce a settlement that fairly reflects each party's

9   expected outcome in litigation." *Rodriguez*, 563 F.3d at 967.

10   All parties here were represented by sophisticated counsel with significant experience in class

11   actions—and significant experience in the industry at hand. The classes were represented by counsel

12   from two firms with decades of experience in complex litigation generally and class actions in

13   particular. *See* Broshuis Decl. at ¶ 24; Pouya Decl. at ¶ 6. Indeed, Class Counsel regularly work on

14   some of the most complex cases in the country.[6] One of the lead members of the team even had prior

15   experience as a minor league baseball player, so he knows first-hand what is at stake and has an

16   intimate understanding of the business. Broshuis Decl., Ex. 2 at 11. Class Counsel carefully evaluated

17   all aspects of the agreement and strongly believes that this settlement is fair and reasonable for class

18   members. *Id.* at ¶ 23. Class Counsel are of the firm opinion that they have obtained the best possible

19   outcome for the classes both in terms of monetary and non-monetary relief. *See* Broshuis Decl. at ¶¶

20   20-23. It will provide historic prospective changes to the player contract, and it will secure meaningful

21   compensation for class members. This *Churchill* factor therefore weighs in favor of approval.

22   **E.  Government participant and reaction of class members are inapplicable.**

23   The final two *Churchill* factors are neutral at this time. There is no government participant.

24   And the reaction of class members is best assessed at the final approval stage. *See Sandoval*, 2021 WL

25   5584761 at *7.

26   _____

27   [6] Class Counsel has provided updated firm resumes. *See* Broshuis Decl. Ex. 2; Pouya Decl. Ex. A.

28

**F.  Other factors all weigh in favor of approval.**

Many of the Rule 23(e)(2) factors overlap with the *Churchill* factors. Nevertheless, some are slightly distinct and will be further addressed, as will this District's Procedural Guidance for Class Action Settlements to the extent the guidelines are not encompassed within the *Churchill* and Rule 23(e)(2) factors.

***Adequacy of representation and non-collusive negotiations.*** The Court has found Class Counsel to be adequate on multiple occasions. ECF Nos. 236, 954. And Class Counsel has zealously represented the interests of class members throughout the over eight years of litigation—plowing immense resources into the war that was discovery, navigating a lengthy and successful appeal, successfully litigating extensive summary judgment proceedings, and preparing a complex and bitterly-fought case for a seven-week trial. The proposed settlement that was ultimately reached is the product of vigorous arm's-length bargaining, fueled by these hard-won battles throughout the litigation.[7] *See* Broshuis Decl. at ¶¶ 7-10, 20-23.

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution." *Rodriguez,* 563 F.3d at 965. That is precisely what took place here. After eight years of litigation, both sides were fully aware of their strengths and weaknesses when mediation began. The mediation was conducted before David Geronemus, a highly respected and experienced mediator, as well as the Honorable U.S. District Judge Jacqueline Scott Corley, an esteemed member of this bench. The hard-fought negotiations lasted close to a month, and entailed three full-day sessions with Mr. Geronemus—one of which lasted until midnight—and countless other informal meetings, phone calls, and emails. *See* Broshuis Decl. at ¶ 8. The Court is personally aware of how caustic the parties' dispute has been from the inception of this litigation, and that the case had reached the 11th hour before the parties' settlement negotiations even began. Given the

---

[7] One item mentioned in the District's Guidelines is information about class counsel's past comparable settlements, such as those involving "similar clients" and similar "issues." This case is *sui generis*, so there is no truly "comparable" settlement to compare. Yet a discussion of a selection of class counsel's previous class action settlements can be found at Broshuis Decl. Ex. 2 at 2-10, and Pouya Decl. Ex. A at 1-8.

1   lengthy and acrimonious history of this case, there can be no concern the settlement is collusive. This

2   litigation could not have been more adversarial. *See* 4 Newberg on Class Actions § 13:14 (5th ed.)

3   (courts are less likely to find collusion if settlement follows lengthy period of adversarial litigation

4   involving substantial discovery and negotiations are conducted by a third-party mediator).

5        These facts weigh in favor of preliminary approval as well. *See Wren v. RGIS Inventory Specialists*,

6   No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. C-06-05778

7   JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (proposed settlement presumed fair if

8   recommended by Class Counsel after arm's-length negotiations).

9        ***The proposed notice plan and "claims" process.*** Plaintiffs' proposed notice plan likewise

10  meets the Rule 23 standard. With regard to the form of notice, "[n]otice is satisfactory if it generally

11  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

12  investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th

13  Cir. 2009) (internal quotations omitted). The proposed form notice does just that. It provides details

14  regarding the litigation and the proposed settlement. *See generally* Proposed Notice. It details the

15  specific options available to Class Members, including their rights to object, obtain counsel of their

16  own choice, or opt out. *Id.* It informs class members of the allocation plan, the periods that a class

17  member worked according to available records and expert analysis, and details the steps that can be

18  taken if a class member believes that he worked during additional training seasons. *Id.* It provides

19  contact information for Class Counsel and a settlement website class members can access to obtain

20  important documents in the case and other information regarding the litigation and settlement and

21  discloses the anticipated petitions for fees, costs, and incentive awards. *Id.* It alerts class members that

22  they will be able to view an estimate of their anticipated payout via the settlement website before the

23  response deadline. *Id.* It provides instructions as to how class members can access the Court's case

24  docket in person or via PACER. It will be provided in both English and Spanish. *See* Intrepido-

25  Bowden Decl. ¶ 17. It provides the date of the final approval hearing and urges class members to

26  follow up to ensure the date has not changed. In short, the notice provides class members with

27  everything they need to make an informed decision about how and whether to object, opt out, obtain

28

**Motion for Preliminary Approval**

1   their monetary benefits under the settlement, or take other or no action at all. The proposed form of
2   notice is more than satisfactory.

3       With regard to the method of notice, Rule 23 requires "the best notice that is practicable
4   under the circumstances, including individual notice to all members who can be identified through
5   reasonable effort." Rule 23(c)(2)(B). The proposed method of distribution—via email and by first-
6   class mail—is indeed the "best notice practicable under the circumstances" of this case. Last year,
7   when class members were informed of their first opportunity to opt out, the Court approved of a
8   slightly less robust method of notice: by email and then supplemented by mail for class members
9   without known email addresses. *See* ECF No. 869. For the settlement notice, the administrator plans
10  to use both email and mail for everyone. *See* Intrepido-Bowden Decl. at ¶ 17. The administrator will
11  use last-known email addresses (which are used by MLB Clubs to communicate with players) to email
12  players and will use last-known mailing addresses to mail the notice to players. Given that the classes
13  are comprised of younger men born and raised in the age of computer technology, electronic
14  communications are well-suited for the case. *See* Rule 23(c)(2)(B) (expressly contemplating notice via
15  "electronic means"). Yet by also mailing a paper copy of the notice, the notice will assuredly reach as
16  many class members as is "practicable under the circumstances."

17      Finally, it is noteworthy that a second opt-out period is being permitted. The class members
18  already had a chance to opt out a year ago. Once a class member has an opportunity to opt out, there
19  is no requirement of a second chance to opt out at the settlement stage. *Low v. Trump Univ., LLC*, 881
20  F.3d 1111, 1121 (9th Cir. 2018). That Class Counsel negotiated for the more conservative course,
21  allowing a second chance to opt out even though one is not required, shows that Class Counsel are
22  exercising immense care in discharging their obligations to the class, which Class Counsel take
23  extremely seriously.

24      The proposed notice plan is fair and appropriate, and Plaintiffs asks that the Court approve it
25  and order dissemination of the proposed notice.

26      ***Class Counsel's proposed fee and cost award.*** Class Counsel plans to file their fee petition
27  by 30 days before the deadline to object or opt-out, which will provide further details about the

28

1    resources and costs expended by Class Counsel and the reasonableness of the fee sought. Although

2    the Settlement Agreement permits Class Counsel to seek up to 33% of the common fund as fees,

3    Class Counsel intends to petition for 30% of the common fund, along with reimbursement of their

4    incurred costs up to $5.5 million. While 25% is the benchmark for fees in the Ninth Circuit, a higher

5    rate may be awarded when merited. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

6    Here, awarding Class Counsel 30% of the fund would be well within the Court's discretion given the

7    particulars of this case. *See Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *1

8    (N.D. Cal. July 11, 2014) (awarding 29% of common fund since it was "consistent with the lodestar

9    and the success achieved, and in the acceptable range in the Ninth Circuit"); *McMorrow v. Mondelez

10   Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2022 WL 1056098, at *8 (S.D. Cal. Apr. 8, 2022) (awarding

11   33% of the common fund).

12         As the Court knows, this was no run-of-the-mill class action. It was a sui generis wage-and-

13   hour case brought by professional athletes under multiple state laws and the FLSA. Every issue was

14   fully contested, and nearly every issue was novel. There was no guarantee of a class being certified or

15   of favorable results on the merits, and no victory (no matter how small) came easily. Yet with

16   tremendous effort and great perseverance, Class Counsel successfully navigated an interlocutory

17   appeal and succeeded on several issues at summary judgment.

18         The result achieved is exceptional both in terms of the money benefits every class member

19   will receive and the prospective relief afforded to current and future minor league players. Under

20   those circumstances, a fee of 30% of the common fund is indeed proper, and is consistent with other

21   class action fee awards in similar cases. *E.g., In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944

22   JST, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016) (collecting cases and awarding fee of 30% of

23   $128 million settlement fund in antitrust case also litigated for eight years). A lodestar cross-check

24   confirms the reasonableness of Class Counsel's anticipated fee request. *See* Broshuis Decl. at ¶ 17

25   (attesting that the current lodestar is $30,434,615.20). In the fee petition, Class Counsel will provide

26   further details and support for the request.

27

28

**Motion for Preliminary Approval**

***Equitable treatment of class members and incentive awards.*** No class members will receive preferential treatment under the proposed settlement. All class members are subject to the same procedures. The settlement formula will be applied uniformly to every class member and uses Dr. Kriegler's estimate of hours worked based on the 25th percentile of survey respondents, with the individual payouts then modified on a pro rata basis. The amount of each class member's individual recoveries is objectively based on the class member's length of employment, the type of seasons worked, and the state(s) in which the class member worked. *See* Kriegler Decl. ¶¶ 5-12.

The proposed incentive awards are fair and well within the range of awards commonly given in litigation of this magnitude. Plaintiffs propose that the 40 class representatives be awarded $15,000 each, while the other five named plaintiffs who in the end did not serve as class representatives be awarded $7,500. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *17 (N.D. Cal. Apr. 3, 2013) ("The Court approves incentive awards of $15,000 to each of the 40 court-appointed class representatives, and $7,500 for each of eight additional named plaintiffs."). Each of these individuals invested significant time and effort into this case, including through discovery, depositions, trial preparation, and representing the interests of the class throughout the pendency of the litigation. While incentive awards in smaller cases are usually under $10,000, higher awards can be justified in cases involving larger settlement amounts, as here. *E.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (approving incentive awards of $120,000 and $80,000 in $415 million settlement); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving incentive award of $25,000 in $45 million settlement); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving incentive award of $50,000 in $67.5 million settlement). The total amount sought in incentive awards here is only .3% of the Maximum Settlement Amount. In the context of this sizeable and lengthy case, $15,000 for the class representatives is a modest amount, as is $7,500 for the other named Plaintiffs who provided similar benefits to the class without ultimately serving as class representatives. *See* 5 Newberg on Class Actions § 17:6 (5th ed.) ("[I]n some cases, a named plaintiff will not serve as a formal class

1    representative, but by virtue of having been named in the complaint, she may have undertaken some

2    of the tasks that would make her eligible for an incentive award.").

3         Moreover, "[i]ncentive awards are particularly appropriate in wage-and-hour actions where

4    plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers."

5    *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (approving $15,000

6    incentive awards). That has led this Court to approve of similar incentive awards in wage-and-hour

7    cases. *See Villalpando v. Exel Direct Inc.*, Case No. 3:13-cv-03091-JCS (Dec. 9, 2016) (ECF No. 351)

8    (approving of $15,000 incentive awards). The awards recognize the fact that the named Plaintiffs

9    provided invaluable assistance to Class Counsel in advancing the interests of the classes from day one.

10   Throughout the lengthy litigation, they provided critical factual background regarding their

11   employment, prepared for and sat for depositions, answered written discovery, provided numerous

12   declarations and most recently spent hours working with counsel to prepare to testify at trial. In short,

13   the litigation would not have been successful without the work that these men put into doing

14   something that no players had ever done before. They not only diligently served the class, but they put

15   their names and faces on a high-profile lawsuit against one of the most powerful, wealthy, and popular

16   institutions in the country—MLB and its constituent Clubs—in the face of possible retaliation by

17   future employers or public backlash.

18        **The scope of the releases.** The releases, which run through October 31, 2022, are tailored to

19   the wage-and-hour type claims pled (or that could have been pled) in the Second Consolidated

20   Amended Complaint. For the FLSA release, only those players who opted into the FLSA collective

21   are releasing FLSA claims. The release applies to MLB and all MLB Clubs. The scope of the releases

22   is therefore reasonably tethered to the consideration class members are receiving and does not go

23   beyond the scope of the present litigation. *See Sandoval*, 2021 WL 5584761, at *11 (explaining that the

24   Ninth Circuit allows all claims to be released based on the same "factual predicate as that underlying

25   the claims in the settled class action") (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

26        **The settlement administrator**. As explained above, Class Counsel received bids from three

27   possible class administrators before ultimately selecting JND—a respected and experienced class

28

**Motion for Preliminary Approval**

1   action administrator. *See* Broshuis Decl. at ¶ 13; *see generally* Intrepido-Bowden Decl. Dr. Kriegler will

2   assist JND by calculating the payments owed, which will ensure an accurate and equitable distribution.

3   Plaintiffs request that $450,000 be set aside to pay these administrative costs. Broshuis Decl. at ¶ 15.

4   **II.      The Court Should Maintain Certification of the Rule 23(b)(3) Class and Maintain**

5   **          Certification of the (b)(2) Class and FLSA Collective.**

6          The Court previously certified three (b)(3) classes. "If the court has certified a class prior to

7   settlement, it does not need to re-certify it for settlement purposes." 4 Newberg on Class Actions §

8   13:18 (5th ed.). Plaintiffs ask that the Court maintain certification of those (b)(3) classes with only

9   slight modifications. The Settlement Agreement calls for a Rule 23(b)(3) Class that is simply a

10  consolidation of the Arizona, Florida, and California classes, and calls for the date for inclusion to

11  extend through preliminary approval. Because there has been no material change in the scope of Rule

12  23(b)(3) Class as compared to the prior (b)(3) classes, and because the class representatives and Class

13  Counsel remain the same, the requirements of Rule 23(a) and (b)(3) continue to be satisfied. The Rule

14  23(b)(3) Class is consistent with the prior certification decisions of this Court and the Ninth Circuit.

15  Class Counsel remains just as able to represent the (b)(3) Class and the Court should maintain

16  certification of the Rule 23(b)(3) Class and re-appoint Korein Tillery, LLC and Pearson, Simon &

17  Warshaw, LLP as Class Counsel.

18         Similarly, Plaintiffs request that the Court maintain certification of the Rule 23(b)(2) Class,

19  which was certified by the Court on August 24, 2021. ECF No. 946. (The class definition can be

20  found in footnote 2, *supra*.) The parties do not request any changes to the (b)(2) Class, so the Court

21  need not re-certify it.

22         In the same vein, Plaintiffs request that the Court maintain certification of the FLSA

23  Collective. The parties do not request any departure from the Collective already certified.

24  **III.     The Court Should Set a Schedule for Final Approval.**

25         Plaintiffs request that the Court set a schedule for final approval, and propose the following:

26         •    Deadline for Defendants to provide updated class information to administrator: 10

27              business days after the Court grants preliminary approval;

28

- Deadline for administrator to disseminate notice: 45 days after receipt of updated class information from Defendants, or as soon as is practicable;
- Deadline for class members to opt out or object: 60 days after dissemination of notice;
- Deadline for motion for attorneys' fees and costs and for incentive awards: 30 days before notice period ends;
- Deadline for motion for final approval: 14 days after notice period ends;
- Hearing on motions for final approval and for attorneys' fees and costs: 35 days after motion for final approval filed.

## CONCLUSION

"At the preliminary approval stage, the court is simply determining whether it is 'likely' the substantive standards for settlement approval will be met at the final approval stage." 4 Newberg on Class Actions § 13:15 (5th ed.). The pertinent factors show that standard is easily met here. Plaintiffs request that the Court: (a) grant preliminary approval of the proposed class action settlement; (b) certify the proposed (b)(3) Settlement Class and maintain certification of the (b)(2) class and FLSA Collective; (c) re-appoint the 40 individuals identified *supra* (page ii) as class representatives; (e) re-appoint Korein Tillery, LLC and Pearson, Simon & Warshaw, LLP as Class Counsel; (g) appoint JND to act as the settlement administrator; (i) authorize the distribution of notice to the classes; and (j) set the above-proposed deadlines.

DATED: July 15, 2022                                  Respectfully submitted,

                                          */s/ Garrett R. Broshuis*

PEARSON, SIMON & WARSHAW LLP
CLIFFORD H. PEARSON
DANIEL L. WARSHAW
BOBBY POUYA
BENJAMIN E. SHIFTAN

KOREIN TILLERY, LLC
STEPHEN M. TILLERY (pro hac vice)
GARRETT R. BROSHUIS
MARC WALLENSTEIN (pro hac vice)
DIANE MOORE
*Plaintiffs Co-Lead Class Counsel*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on July 15, 2022, I electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system, which will send notification of such filing to all attorneys of record

4

registered for electronic filing.

5

6

*/s/ Garrett R. Broshuis*
Garrett R. Broshuis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28